LESLIE F. LEVY, ESQ., State Bar No. 104634
JEAN K. HYAMS, ESQ., State Bar No. 144425
DARCI E. BURRELL, ESQ., State Bar No. 180467
DICKSON LEVY VINICK BURRELL HYAMS LLP
180 Grand Avenue, Suite 1300
Oakland, CA  94612
Telephone:  (510) 318-7700
Facsimile:  (510) 318-7701
E-mail: leslie@dicksonlevy.com

W. DANIEL BOONE, ESQ., State Bar No.  46553
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway, Suite 200
Alameda, CA 94501
Telephone:  (510) 337-1001
Facsimile:  (510) 337-1023

Attorneys for Plaintiff

## UNITED STATES FEDERAL DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANI CHOPOURIAN,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>CATHOLIC HEALTHCARE WEST, MERCY<br>GENERAL HOSPITAL, AND DOES 1<br>THROUGH 20, inclusive<br><br><br>　　　　　　Defendants.<br>_____ | Case No.  2:09-cv-02972-GEB-DAD<br><br>**STIPULATION RE FILING OF SECOND<br>AMENDED COMPLAINT** |

The parties, through their undersigned counsel, hereby stipulate that Plaintiff may file a

Second Amended Complaint For Damages, a copy of which is attached hereto as Exhibit A.

///

///

///

It is further stipulated that Defendant waives notice and service of the amended complaint, service of which shall be deemed effective as of the date of the filing of this Stipulation.

Respectfully submitted,

Dated: February 16, 2010          DICKSON LEVY VINICK BURRELL HYAMS LLP

By: _/s/ Leslie F. Levy_____
LESLIE F. LEVY
Attorney for Plaintiff

Dated: February 16, 2010          LA FOLLETTE, JOHNSON, DE HASS, FESLER & AMES

By: __/s/ Judith Clark Martin_
JUDITH CLARK MARTIN
SCOTT H. CAVANAUGH
Attorneys for Defendant, CATHOLIC HEALTHCARE WEST dba MERCY GENERAL HOSPITAL

# EXHIBIT A

LESLIE F. LEVY, ESQ., State Bar No. 104634
JEAN K. HYAMS, ESQ., State Bar No. 144425
DARCI E. BURRELL, ESQ., State Bar No. 180467
DICKSON LEVY VINICK BURRELL HYAMS LLP
180 Grand Avenue, Suite 1300
Oakland, CA  94612
Telephone:  (510) 318-7700
Facsimile:  (510) 318-7701
E-mail: leslie@dicksonlevy.com

W. DANIEL BOONE, ESQ., State Bar No.  46553
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway, Suite 200
Alameda, CA 94501
Telephone:  (510) 337-1001
Facsimile:  (510) 337-1023

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANI CHOPOURIAN,<br><br>    Plaintiff,<br><br>vs.<br><br>CATHOLIC HEALTHCARE WEST,<br>MERCY GENERAL HOSPITAL, AND<br>DOES 1 THROUGH 20, inclusive<br><br>    Defendants. | Case No.  2:09-cv-02972-GEB-DAD<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

Plaintiff ANI CHOPOURIAN alleges as follows:

### I. NATURE OF THE ACTION

1. Plaintiff brings this lawsuit in response to acts of harassment and retaliation by Defendant and its employees and agents which resulted in her wrongful termination.

## II.   PARTIES

2.      Ani Chopourian is licensed by the State of California as a Physician's Assistant.  From approximately August 2006 to August 7, 2008, she worked in that capacity for Catholic Healthcare West, primarily in the operating room of the cardiac unit.

3.      Catholic Healthcare West ("CHW") is a non-profit organization that owns and runs various hospitals including the one at which Plaintiff worked. Plaintiff was employed by Catholic Healthcare West.   The organization is headquartered in San Francisco, California.

4.      Mercy General Hospital is an entity, business form unknown. Plaintiff worked primarily at Mercy General Hospital.  Plaintiff is informed and believes that Mercy General Hospital is owned and operated by CHW.

5.      Defendants Does 1 through 20, inclusive, are sued under fictitious names.  Their true names and capacities are unknown to Plaintiff.  When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and such Defendants caused Plaintiff's damages as herein alleged.

6.      Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned each and every defendant was the agent, servant, employee and/or representative of each and every other defendant and was, in doing the things complained of herein, acting within the scope of said agency, service, employment and/or representation, and that each and every defendant herein is jointly and severally responsible and liable to Plaintiff for the damages hereinafter alleged.

///

///

### III. JURISDICTION AND VENUE

7.      Venue is proper in this County as Defendant is headquartered in the City of San Francisco.

8.      The amount in controversy exceeds limited jurisdiction.

9.       As to those causes of action that require exhaustion of administrative remedies, Plaintiff has done so.  Plaintiff filed a complaint with the EEOC.  The EEOC issued a right to sue letter on March 27, 2009 which was received by the Plaintiff some days later.  She timely files this complaint.

10.      Plaintiff reserves her right to amend the Complaint to request punitive damages on the state law causes of action pursuant to California Code of Civil Procedure §425.14.

### IV. FACTUAL ALLEGATIONS

11.      Plaintiff Ani Chopourian began her employment as a physician's assistant at one of Defendant's hospitals in August 2006.  Primarily  she worked at Mercy General Hospital, although she also occasionally worked on call at San Juan General.  She is Armenian-American.

12.      On all performance evaluations received by Plaintiff, she has been determined to, at minimum, meet all expectations.

13.      From the beginning of her employment, Plaintiff was subjected to sexual and ethnic comments from coworkers and persons in supervisory positions such as the surgeons.

14.      Beginning in approximately October of 2006, various doctors made inappropriate and derogatory gender-based comments.  In particular, in surgery, Dr. Kaplon referred to Plaintiff as a "stupid chick" and referenced actions she took by saying that it was "just like a girl."

15.      In approximately the summer of 2007, Dr. Zhu joined the team of surgeons and began to subject Plaintiff to comments based on gender and national origin as well as sexual comments.

16.      Other surgeons also made frequent comments about Plaintiff's ethnicity.  Plaintiff

repeatedly complained about the behavior of Dr. Kaplon and Dr. Zhu.  Plaintiff is informed and believes that no action was taken in response to her complaints.

17.    In September 2007, Plaintiff was singled out, called in and given a verbal warning for a parking practice that  Defendant knew many other employees engaged in on a daily basis. Defendant did not subject other employees to any discipline for the same action.  Five months later, after Plaintiff had made additional complaints about ethnic and sexual comments as well as patient care, Defendants first wrote Plaintiff up for the parking issue that occurred in September of the previous year.

18.    On several occasions in late 2007, Dr. Zhu asked Plaintiff if she was "Al Qaeda." Plaintiff asked that such comments be stopped and reported them to management.

19.    Plaintiff is informed and believes that no action was taken by Defendants to stop the hostile environment created by the repeated remarks.

20.    The surgeons also made derogatory and offensive comments about Plaintiff's national origin, i.e. Armenian.

21.    Primarily in 2008, Defendant, through its agents, harassed Plaintiff and subjected her to unwarranted accusations and discipline in response to her complaints about illegal harassment and treatment of patients by the surgeons.  Plaintiff was falsely accused of sleeping in the lounge and not being in her room on time.  On one occasion, Plaintiff arrived at work very ill and vomiting.  Despite being fully aware of Plaintiff's inability to work due to illness, Plaintiff was accused of not being in the room assigned to her on time.  On at least two occasions, Plaintiff was given only a portion of the surgical instruments she requested and needed to perform her job.   Only after repeated requests for the complete set of instruments were they provided.

///

22.     In addition to the explicit sexually harassing and gender comments, Plaintiff contends that women were treated differently than men in terms of the tone and attitude taken towards them.

23.     The comments and attitudes expressed made the work environment hostile and difficult and had the potential to impact patient care as well.

24.     Throughout her tenure, Plaintiff has repeatedly complained to management employees, including Human Resources about behavior of surgeons that violated anti-discrimination laws and that put patients at risk.

25.     In July of 2008, Plaintiff was falsely accused and written up for allegedly failing to show up at work on a day that she was on call but had not been informed that she was needed. Upon first being notified that she was needed, Plaintiff went in.

26.     Plaintiff repeatedly complained about the fact that she and other Physician Assistants were not given lunch breaks. Plaintiff repeatedly requested that she be permitted lunch breaks for health reasons. Although lunch breaks could have been provided without compromising patient care, Defendants refused to take action to assure that employees got lunch breaks.

27.     Plaintiff also repeatedly complained about issues regarding patient care particularly resulting from Dr. Kaplon's treatment of the patients and staff during surgery and of the failure to have an M.D. assist at all times as required by law.

28.     On or about August 1, 2008, Plaintiff had been informed that HR would meet with her regarding her complaints the following week. Despite having earlier been assured by a person with authority that she could bring someone to the meeting with her, she was now told that she was not able to bring anyone.

29.     On or about August 1, 2008, Plaintiff picked up her schedule for the month of August.

According to the schedule she received that day, she was on call for August 3, 2008 at Mercy. There was no indication on the schedule she received that she was required to report on Sunday for floor coverage, just that she was to call in to determine need.  On Saturday night, August 2, 2008, according to procedure,  Plaintiff called the PM assignment recording to see if she was needed, as she was on call.  There was nothing on the outgoing message that indicated that she was needed on August 3, 2008.

30.     After approximately 3 p.m. on Sunday August 3, 2008, Plaintiff received a call from the hospital asking why she was not present. Plaintiff explained that she had called in and that there was no instruction to report.

31.     On August  7, 2008, Defendants terminated Plaintiff allegedly for failing to report to work on Sunday, August 3, 2008.

32.     Plaintiff applied for unemployment.  Defendants objected to Plaintiff's unemployment claiming that she was fired for misconduct.  Plaintiff is informed and believes that Defendants' agents misrepresented the facts to the Administrative Law Judge.   The Judge made a determination that Plaintiff did not deliberately disobey a lawful and reasonable instruction of the employer, nor did she substantially breach an important duty or obligation owed the employer.   The ALJ decision went on to state that Plaintiff " was not discharged for misconduct connected to her most recent work."  Plaintiff was granted unemployment benefits.

33.     In approximately August of 2009 Plaintiff began new employment with a different employer.  Her employment required her to obtain privileges at CHW hospitals.  Plaintiff was initially informed that there would not be a problem and that her national certification was not required.

34.     Subsequently, Plaintiff was told by a CHW employee that she could not receive

1   privileges until she obtained her national certification.

2       35.    The requirement of having a current national certification was not a requirement

3          when

4   Plaintiff was employed by Defendant.

5       36.    Plaintiff is informed and believes that the requirement was not applied to her in a

6   equitable and fair manner and was applied in an attempt to interfere with her ability to carry out the

7

8   duties or her current employment.  Plaintiff is informed and believes that there were other

9   physician's assistants that were working with privileges at CHW hospitals or were hired and given

10  privileges that did not have the national certification and were permitted to continue working for an

11  extended period fo time without the certification.

12

13      37.    As a result of the actions of Defendant, its employees and its agents, Plaintiff has

14  suffered and continues to suffer, significant emotional and psychological distress, past and ongoing

15  loss of income and benefits, damage to her reputation and her career.

16                          **FIRST CAUSE OF ACTION**
                **Hostile Work Environment Based on Gender and National Origin/Ethnicity**
17                              **42 U.S.C. § 2000e**

18      38.    Plaintiff realleges and incorporates herein by reference every allegation stated herein.

19      39.    42 U.S.C. § 2000e protects against discrimination against an employee on the basis of

20  her sex as well as her ethnicity and national origin..

21

22      40.    Discrimination on the basis of sex, includes, but is not limited to, sexual harassment,

23  gender based harassment and the creation or maintenance of a hostile work environment based on

24  gender.

25      41.    As set forth above, during Plaintiff's employment with Defendants, she was subjected

26  to a hostile work environment in which sexual comments and jokes were made, gender-based

27

28

comments permeated the workplace, as did comments and questions about her (and others) ethnicity/national origin, often at the expense of Plaintiff who found the atmosphere to be both offensive and demeaning.

42.     Defendants failed to take all reasonable steps to prevent and redress discrimination and harassment against Plaintiff.

43.     As a result of this conduct and Defendants' failure to prevent and/or halt  the conduct, Plaintiff has suffered damages as set forth herein.

44.     In doing the things alleged herein, Defendants' conduct was despicable, and Defendants acted towards Plaintiff with malice, oppression, and fraud and with a willful and conscious disregard of Plaintiff's rights, thus entitling Plaintiff to punitive damages.

Wherefore, Plaintiff requests relief as set forth below.

**SECOND CAUSE OF ACTION**
**National Origin Harassment and Discrimination**
**42 USC §1981**

45.     Plaintiff realleges and incorporates each and every fact alleged herein.

46.     42 U.S.C. §1981 protects against harassment or the creation of a hostile work environment on the basis of  ethnic origin/race.

47.     As set forth above, during Plaintiff's employment with Defendants, she was subjected to a hostile work environment in which jokes and negative ethnic comments and comments based on national origin were made by co-workers and those who supervised her.  Plaintiff  found the atmosphere to be both offensive and demeaning.

48.     Defendants failed to take all reasonable steps to prevent and redress discrimination and harassment against Plaintiff.

49.     As a result of this conduct and Defendants' failure to prevent and/or halt the conduct,

Plaintiff has suffered damages as set forth herein.

50.     In doing the things alleged herein, Defendants' conduct was despicable, and Defendants acted towards Plaintiff with malice, oppression, and fraud and with a willful and conscious disregard of Plaintiff's rights, thus entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff requests relief as set forth below.

### THIRD CAUSE OF ACTION
### Retaliation in Violation of 42 U.S.C. § 2000e-3(a)

51.     Plaintiff realleges and incorporates each and every fact alleged herein.

52.     Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3(a)) makes it unlawful for an employer to discriminate against any employee because she has opposed any practice made unlawful under Title VII.

53.     As described above, Plaintiff was subject to derogatory and demeaning jokes and comments based on gender.

54.     Plaintiff repeatedly complained about the comments of the surgeons and coworkers as well as their behavior.  These complaints were made to Plaintiff's supervisors, persons in management and the Human Resources Department at Mercy General Hospital.

55.     Plaintiff also complained about Defendants' failure and refusal to take action to address and remedy hostile work environment.

56.     Plaintiff is informed and believes that Defendants retaliated against Plaintiff because she made complaints about, and opposed, the hostile work environment.

57.     The retaliation included, but was not limited to the following: writing Plaintiff up, issuing written warnings to Plaintiff, making false allegations about Plaintiff's performance, including but not limited to her attendance, and ultimately terminating Plaintiff.

58.     As a result of Defendants' conduct, Plaintiff has suffered damages as set forth herein.

59.     In doing the acts alleged herein, Defendants' conduct was despicable, and Defendants acted towards Plaintiff  with malice, oppression, fraud and with a willful and conscious disregard of her rights, thus entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff requests relief as set forth below.

## FOURTH  CAUSE OF ACTION
### Retaliation – Violation of 42 U.S.C. § 1981

60.     Plaintiff realleges and incorporates each and every fact alleged herein

61.     42 U.S.C. §1981 makes it unlawful for an employer to discriminate against any employee because she has opposed any practice made unlawful under the statute.  As described above, Plaintiff was subject to derogatory and demeaning jokes and comments based on gender, ethnicity and national origin.

62.     Plaintiff repeatedly complained about the comments of the surgeons and coworkers as well as their behavior.  These complaints were made to Plaintiff's supervisors, persons in management and the Human Resources Department at Mercy General Hospital.

63.     Plaintiff also complained about Defendants' failure and refusal to take action to address and remedy hostile work environment.

64.     Plaintiff is informed and believes that Defendants retaliated against Plaintiff because she made complaints about, and opposed, the hostile work environment.

65.     The retaliation included, but was not limited to the following: writing Plaintiff up, issuing written warnings to Plaintiff, making false allegations about Plaintiff's performance, including but not limited to her attendance, and ultimately terminating Plaintiff.

66.     As a result of Defendants' conduct, Plaintiff has suffered damages as set forth herein.

67.     In doing the acts alleged herein, Defendants' conduct was despicable, and Defendants acted towards Plaintiff  with malice, oppression, fraud and with a willful and conscious disregard of

her rights, thus entitling Plaintiff to punitive damages.

## FIFTH CAUSE OF ACTION
### Wrongful Termination in Violation of Public Policy

68.   Plaintiff realleges and incorporates each and every fact alleged herein.

69.   It is against the public policy of the State of California to terminate an employee on account that employee's opposition to practices prohibited by state or federal law or the state or federal constitution.

70.   This public policy is embodied in, among other places, California Govt. Code § 12940, et seq, Labor Code Section 1102.5, the California Constitution, 42 USC §1981, 42 U.S.C. § 2000e and the federal constitution.

71.   As set forth above, Defendant terminated Plaintiff because of her complaints about gender discrimination/harassment, national origin/ethnic discrimination, failure to receive appropriate breaks and lunch and patient care.

72.   As a result of Defendants' conduct,  Plaintiff has suffered damages as set forth herein.

73.   Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with an improper and evil motive amounting to malice.

WHEREFORE, Plaintiff requests relief as set forth below.

## SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

74.   Plaintiff realleges and incorporates each and every fact alleged herein

75.   The conduct set forth herein above was extreme and outrageous and an abuse of the authority and position of Defendants and its supervisory employees. Said conduct was intended to cause severe emotional distress, or was done in conscious disregard of the possibility of causing

such distress.

76.     Said conduct exceeded the inherent risks of employment and was not the sort of conduct normally expected to occur in the workplace. Defendants and its agents abused their positions of authority toward Plaintiff, and engaged in conduct intended to humiliate and demean Plaintiff and to convey the message that Plaintiff was powerless to defend her rights. Defendants abused its authority and directly injured Plaintiff by its ratification of the actions of the doctors and others actions toward Plaintiff by failing to protect and in violating the rights Plaintiff had to not be discriminated against or harassed on the basis of her gender or national origin, to protest the harassment and discrimination or to make complaints about her working conditions and patient care. Furthermore, Defendants falsely accused Plaintiff of failing to show up for work and terminated her based on false accusations, thus causing severe emotional distress.

77.     Following the termination, Plaintiff is informed and believes that Defendants interfered with her attempts to seek new employment.

78.      The foregoing conduct did in fact cause Plaintiff to suffer extreme emotional distress.

79.     As a result of said conduct,  Plaintiff has suffered damages as set forth herein.

80.     Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with an improper and evil motive amounting to malice.

WHEREFORE, Plaintiff requests relief as set forth below.

## SEVENTH CAUSE OF ACTION
### Failure to Provide Adequate Meal and Rest Periods (Premium Wages)

81.     Plaintiff realleges and incorporates each and every fact alleged herein.

82.     Plaintiff regularly worked in excess of 5 and 10 hours a day without being afforded

meal period of at least one half-hour each in which she was relieved of all duties, as required by Labor Code §§226.7 and 512 and the Wage Orders.

83.    Plaintiff also regularly worked without taking 10 minute breaks, as required by the Wage Orders.

84.    Additionally, errors were made by Defendant's agents in Plaintiff's paychecks. Although she submitted corrections, she was never paid the corrected amount.

85.    Because Defendants failed to afford proper meal periods, they are liable to Plaintiff for 1 hour for each meal period of additional pay at the regular rate of compensation for each occasion that the proper meal periods were not provided, pursuant to Labor Code §226.7 and the Wage Orders.

86.    Because Defendants failed to afford proper rest periods, they are liable to Plaintiff for 1 hour of additional pay at the regular rate of compensation for each occasion that the proper break period was not provided, pursuant to Labor Code §226.7 and the Wage Orders.

87.    Labor Code §201 requires an employer who terminates an employee to pay compensation due and owing to said employee immediately upon termination.  Labor Code §203 provides that if an employer willfully fails to pay compensation promptly upon termination, as required by §201, the employer is liable for waiting time penalties in the form of continued compensation for up to 30 work days.

88.    Defendants willfully failed and refused, and continue to willfully fail and refuse, to timely pay compensation and wages, including unpaid rest break pay and meal period pay to Plaintiff whose employment was terminated.  As a result, Defendants are liable to Plaintiff for waiting time penalties, together with interest thereon and attorneys' fees and costs, pursuant to California Labor Code §203.

89.     As a proximate result of Defendants' conduct, Plaintiff is entitled to premium pay as set forth above in an amount according to proof at the time of trial.

WHEREFORE, Plaintiff requests relief as set forth below.

### EIGHTH CAUSE OF ACTION
### Interference with Prospective Economic Relations

90.     Plaintiff realleges and incorporates each and every fact alleged herein.

91.     Plaintiff is informed and believes and based thereon alleges that at all times relevant hereto, that Defendant unfairly and inequitably imposed a requirement of national certification on Plaintiff in order for her to receive privileges at Defendant's hospitals as required by her new employment.   Said imposition interfered with Plaintiff's ability to perform the scope of tasks required by her new employment, had a detrimental impact on her ability to carry out the full array of tasks at her new job and resulted in economic loss and emotional distress.

92.     Defendants failed to act with reasonable care, acted with conscious disregard for the rights of Plaintiff, or intentionally and knowingly imposed qualifications on Plaintiff with the intent of interfering with her job duties.

93.     As a result of Defendants' interference with Plaintiff's prospective economic relations, Plaintiff has suffered economic loss and significant emotional distress.

94.     Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with an improper and evil motive amounting to malice.

WHEREFORE, Plaintiff requests relief as set forth below.

### NINTH CAUSE OF ACTION
### Defamation

95.     Plaintiff realleges and incorporates each and every fact alleged herein.

96.     Plaintiff is informed and believes Defendant and its agents and employees, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and/or intentionally caused external publications of defamation, of and concerning Plaintiff, to third persons and to the community.   These false and defamatory statements included express and implied statements: accusations that Plaintiff failed to show up for work as scheduled and that Plaintiff lied in her representation that she was never informed that she was to report to work on August 3, 2008. These and other similar false statements expressly and impliedly stated that Plaintiff was dishonest and unethical.

97.     While the precise dates of these publications are not known to Plaintiff, except as herein alleged, these publications were made on or after August 1, 2008 and were made to employees, and recipients in the community.  Plaintiff hereby seeks damages for these publications and all foreseeable republications discovered up to the time of trial.

98.     During the above-described time-frame, Defendants conspired to, and in fact, did negligently, recklessly, and/or intentionally cause excessive and unsolicited publication of defamation, of and concerning Plaintiff, to third persons, who had no need or desire to know.  Those third person(s) to whom these Defendants published this defamation are believed to include, but are not limited to, other agents and employees of Defendant, and the community, all of whom are known to Defendant, and its agents and employees, but unknown at this time to Plaintiff.

99.     The defamatory publications consisted of knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation.

100.     Plaintiff is informed, believes and fears that these false and defamatory per se statements will continue to be published by Defendants and will be foreseeably republished by their

recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal reputations.  Plaintiff also seeks redress in this action for all foreseeable republications, including her own compelled self-publication of these defamatory statements.

101.    The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendant, and its agents and employees, but unknown to Plaintiff at this time.

102.    None of Defendants' defamatory publications against Plaintiff referenced above are true.

103.    The above defamatory statements were understood as assertions of fact, and not as opinion.

104.    Each of these false defamatory per se publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendant, and its agents and employees, to cause further damage to Plaintiff's professional and personal reputation, and to cause her to be fired.

105.    Defendants published these statements knowing them to be false and unsubstantiated by any independent investigation.

106.    The above complained-of publications by Defendant, and its agents were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, her reputation, employment and employability. Defendant and its agents published these statements, not with an intent to protect any interest intended to be protected by any privilege, but

with negligence, recklessness and/or an intent to injure Plaintiff and destroy her reputation.

107.   As a result of the publication and republication of these defamatory statements by Defendant, and its agents, Plaintiff has suffered injury to her personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

108.   Defendants committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights.  All actions of Defendant, and its agents and employees, herein alleged were known, ratified and approved by the Defendant and its agents and employees.

## REQUEST FOR RELIEF

Plaintiff hereby requests the following relief:

1. Compensatory damages on all causes of action against all Defendants.

2. Punitive damages on the First, Second, Third and Fourth Causes of Action.

3. Attorney's fees and costs pursuant to applicable statute.

4. Costs of suit.

5. Any other relief that this court deems proper.

DATED: February 16, 2010                **DICKSON LEVY VINICK BURRELL HYAMS LLP**

                                        BY: _____ /s/ *Leslie F. Levy* _____
                                        LESLIE F. LEVY
                                        Attorneys for Plaintiff

1

## DEMAND FOR JURY TRIAL

2

   Plaintiff hereby demands a trial by jury for each and every claim for which she has a right to

3

jury trial.

4

DATED: February 16, 2010          **DICKSON LEVY VINICK BURRELL HYAMS LLP**

5

6

7

BY: _____ /s/ *Leslie F. Levy* _____
LESLIE F. LEVY

8

Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28