JUDITH CLARK MARTIN, STATE BAR NO. 173557
DAVID L. DITORA, STATE BAR NO. 119252
MARY E. "MOLLY" GREENE, STATE BAR NO. 186205
**LA FOLLETTE, JOHNSON,**
**DE HAAS, FESLER & AMES**
655 University Avenue, Suite 119
Sacramento, California  95825
Phone:        (916) 563-3100
Facsimile:   (916) 565-3704
Email:        JCMartin@ljdfa.com
Email:        DDitora@ljdfa.com

Attorneys for Defendant,
CATHOLIC HEALTHCARE WEST dba
MERCY GENERAL HOSPITAL (erroneously
sued and served herein as CATHOLIC HEALTHCARE
WEST and MERCY GENERAL HOSPITAL)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANI CHOPOURIAN, | CASE NO.  2:09-CV-02972-KJM-KJN |
| Plaintiff, | **DEFENDANT CATHOLIC HEALTHCARE WEST'S FURTHER BRIEFING RE: SPECIFICITY OF EEOC COMPLAINT AND CAUSES OF ACTION IN SECOND AMENDED COMPLAINT** |
| v. | |
| CATHOLIC HEALTHCARE WEST, MERCY GENERAL HOSPITAL, AND DOES 1 through 20, inclusive, | **Date:          December 7, 2011**<br>**Time:          10:00 a.m.**<br>**Courtroom: 3** |
| Defendants. | |
| | **Judge: Honorable Kimberly J. Mueller**<br>**Trial Date: January 23, 2012 at 9:00 a.m.** |

Defendant CATHOLIC HEALTHCARE WEST ("CHW") filed a Motion in Limine (#6)

to prevent plaintiff from presenting evidence on claims that required exhaustion of administrative

remedies and were not contained in her EEOC complaint.  Plaintiff filed a brief in opposition.  The

court recognized the jurisdictional issue raised by CHW's motion and asked for further briefing

on the issue.  CHW maintains that plaintiff should be precluded from introducing evidence at trial

or making any argument relating to factual allegations on claims contained in her complaint that

1

1   were not sufficiently embraced by plaintiff's EEOC charge, to the extent exhaustion of
2   administrative remedies was required prior to bringing suit.[1]

3       The evidence that will be presented in this case will be somewhat complex in terms of
4   having multiple purposes of supporting one or more causes of action. As such, CHW's counsel
5   suggested at the motion in limine hearing relevant to this motion that perhaps a limiting instruction
6   on certain evidence would be more appropriate than excluding categories of evidence altogether.
7   But there remains a significant issue as to whether plaintiff's Second Amended Complaint
8   contains claims and factual allegations that were not included in her EEOC Charge. Because the
9   failure to exhaust administrative remedies is jurisdictional, it would be improper for a jury to hear
10  evidence and argument relating to incidents that plaintiff seeks to introduce in support of causes
11  of action that are barred for failure to exhaust such administrative remedies.

12      **A.**    **Plaintiff's Title VII Claims Require Exhaustion of Administrative Remedies**

13      Plaintiff's Second Amended Complaint raises nine causes of action, some of which plaintiff
14  has abandoned. The remaining causes of action are: Hostile Work Environment Based on Gender
15  [Discrimination - Title VII], Retaliation [Title VII]; Retaliation [42 U.S.C. § 1981]; Wrongful
16  Termination in Violation of Public Policy [including Title VII claims]; Intentional Infliction of
17  Emotional Distress; Failure to Provide Meal and Rest Periods; Interference with Prospective
18  Economic Relations; and Defamation. Essentially, much of this case consists of allegations of
19  sexual harassment, hostile work environment and retaliation (i.e. the alleged wrongful termination)
20  for allegedly opposing practices that are unlawful under Title VII, such as sexual harassment or
21  hostile work environment. Defendant recognizes that the same evidence may be used to support
22  plaintiff's common law causes of action (such as IIED, Failure to Provide Meal and Rest Periods,
23  Interference and Defamation), **but to the extent plaintiff's Title VII-based causes of action are**
24  **based on allegations not encompassed by her administrative complaint, she should be**
25  **precluded from introducing such evidence for the purposes of supporting these claims.**

26

27      [1] Whether the subject motion was procedurally appropriate will be addressed in response to this Court's
28  Order to Show Cause.

*Defendant Catholic Healthcare West's Further Briefing Re: Specificity of EEOC Complaint and Causes of Action in Second Amended Complaint* Case No.: 2:09-CV-02972-KJM-KJN

1    When a plaintiff wishes to file suit against an employer and allege Title VII violations, such

2 as sexual harassment, discrimination and hostile work environment as well as retaliation for

3 complaining about sexual harassment, discrimination or hostile work environment, she must first

4 exhaust her administrative remedies by filing a complaint with the EEOC within 180 days of the

5 alleged violations. (41 U.S.C. § 2000e-5(e)(1); *B.K.B. v. Maui Police Department*, 276 F.3d 1091,

6 1099 (9th Cir. 2002).)  That EEOC Charge must contain sufficient detail and factual allegations

7 to allow the EEOC to conduct an investigation. (*Rush v. McDonald's Corp.*, 996 F.2d 1104, 1111

8 (7th Cir. 1992).)

9    Allowing a complaint to encompass allegations outside the ambit of
10 the predicate EEOC charge would circumvent the EEOC's
investigatory and conciliatory role, as well as deprive the charged
party of notice of the charge....
11

12 (*B.K.B. v. Maui Police Department*, *supra*, 276 F.3d at p. 1099, quoting *Babrocky v. Jewel Food*

13 *Co.*, 773 F.2d 857, 863 (7th Cir.1985).)

14    "Generally a plaintiff may not bring claims under Title VII that were
not originally brought among the charges to the EEOC." *Harper v.*
15 *Godfrey Co.*, 45 F.3d 143, 147-48 (7th Cir.1995). This rule both
"afford[s] an opportunity for the EEOC to settle the dispute between
16 the employee and employer and put[s] the employer on notice of the
charge against it." *Id.* at 148. Nevertheless, this court has allowed
17 plaintiffs to proceed on claims not explicitly set forth in a charge of
discrimination if the claim is " 'like or reasonably related' to the
18 EEOC charges," and the claim in the complaint "reasonably [could]
be expected to grow out of an EEOC investigation of the charge[ ]."
19 *Id.* (citations omitted). For purposes of this standard, **"[t]he claims
are not alike or reasonably related unless there is a factual
20 relationship between them. This means that the EEOC charge
and the complaint must, at minimum, describe the *same conduct***
21 **and implicate the *same individuals*.** *Id.* (internal quotation marks
and citations omitted).
22

23 (*Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) [Italics in original,

bold emphasis added].)
24

25    Thus, if plaintiff's complaint contains factual allegations in support of her causes of action,

26 including allegations against various individuals, that were not embraced by her EEOC charge,

those allegations must be disregarded, and plaintiff should be prevented from introducing evidence
27

28 or offering argument at trial relating to such belated allegations in support of her causes of action.

3

1   For the ease of the court, the Second Amended Complaint, plaintiff's EEOC Charge, and

2   plaintiff's EEOC Intake Questionnaire are all submitted concurrent with this motion for a careful

3   review of each.  (See Exhibits "A," "B," and "C," respectively, attached to the Declaration of

4   Judith Clark Martin in Support of Re: Specificity of EEOC Complaint and Causes of Action in

5   Second Amended Complaint.)  The distinctions are apparent from the face of each document.

6   **B.      Plaintiff Has Made Allegations and Seeks to Introduce Evidence to Support
            Such Allegations that Were Not Contained in Her EEOC Complaint**

7

8          The relevant causes of action in the Second Amended Complaint are harassment,

9   discrimination and hostile work environment, as well as retaliation for complaining about

10  harassment, discrimination and hostile work environment.  (See Causes of Action Nos. 1 and 3,

11  as well as factual allegations in complaint.)  Plaintiff alleges a multitude of facts allegedly in

12  support of each of these causes of action.  The court must first decide if the *causes of action* were

13  properly encompassed by the EEOC Charge, and then determine whether the factual allegations

14  in the Second Amended Complaint are sufficiently similar or would have arisen out of an EEOC

15  investigation of plaintiff's claims as contained in the Charge.  If not, to the extent the Second

16  Amended Complaint is inconsistent with the EEOC Charge, the allegations, and evidence in

17  support of those allegations, must be excluded from trial. (*E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d

18  891, 899 (9th Cir. 1994).)

19         The EEOC Charge contains allegations of discrimination based on race, sex, national origin

20  and for retaliation.  As indicted below, however, the *factual bases* for these allegations are quite

21  different, and far more narrow, than those contained in the Second Amended Complaint.

22  **1.      Facts Contained in Plaintiff's EEOC Charge**

23         Plaintiff's EEOC charge is fairly brief.  She states when she was hired and her title.  She

24  claims she was subjected to "derogatory remarks concerning [her] race, national origin, and sex."

25  She claims to have been sexually harassed by "various doctors and employees."  There are no

26  specific facts pertaining to what comments were made, when they were made and by whom.

27  / / /

28

*Defendant Catholic Healthcare West's Further Briefing Re: Specificity of EEOC Complaint and Causes of
Action in Second Amended Complaint* Case No.: 2:09-CV-02972-KJM-KJN

1     Plaintiff complained about this conduct to her supervisor who allegedly did nothing.

2     Plaintiff claims she was "falsely accused of a number of allegations" on July 11, 2008.

3  There are no facts alleged as to what accusations were made or what they were regarding.  Again,

4  she claims her complaints of harassment at this meeting were ignored.

5     Plaintiff claims her termination on August 7, 2008 was for failing to appear for work on

6  a Sunday and not coming to an HR meeting without representation.  She claims she was not

7  informed she had to work on Sunday.  There is no specific date of this alleged failure to appear

8  for work, nor any other factual information about her work schedule.

9     Plaintiff then concludes she has been discriminated against because of her race, sex,

10 national origin and in retaliation for "engaging in protected activity."  The alleged protected

11 activity is not specified, and there are no *facts* contained in the EEOC Charge supporting a claim

12 for retaliation.  The only facts contained in the Charge are being subjected to derogatory remarks

13 concerning her race, national origin and sex.  The conclusion that plaintiff was "sexually harassed"

14 is not supported by any facts. (See, e.g. *Rush v. McDonald's Corp.*, *supra*, 996 F.2d 1104 at p.

15 1111 ["I believe I have been discriminated against because of my race, Black" is too conclusory

16 to support a claim for racial discrimination.)

17    It is unclear whether plaintiff is complaining about "retaliation" consisting of being

18 terminated for failing to come to a meeting without representation or for failing to appear for work

19 on a Sunday without being informed she had to report for work.  Either way, however, this

20 "retaliation" is not actionable, as there is no allegation that either action was based on race, sex

21 or national origin.  It is unclear what protected activity plaintiff claims she engaged in that resulted

22 in the alleged retaliation.  Because the Charge is so factually devoid, it is insufficient to encompass

23 the specific factual allegations contained in the complaint, including retaliation.

24                **2.   Plaintiff's Intake Questionnaire**

25    Plaintiff argued in opposition to defendant's Motion in Limine No. 6 that the court could

26 consider her Intake Questionnaire for additional facts to support her claims.  (See e.g. *B.K.B. v.*

27 *Maui Police Department*, *supra*, 276 F.3d 1091 at p. 1102 as cited by plaintiff.)  While this is an

28

5

*Defendant Catholic Healthcare West's Further Briefing Re: Specificity of EEOC Complaint and Causes of*
*Action in Second Amended Complaint* Case No.: 2:09-CV-02972-KJM-KJN

accurate statement of some courts' interpretation, the Intake Questionnaire is not helpful.  Indeed, what is *lacking* in the Intake Questionnaire only highlights defendant's point that the Charge is insufficient to support all of the factual allegations in the Second Amended Complaint.  Again, the EEOC Charge (or Intake Questionnaire) and the Second Amended Complaint must, at a minimum, involve the same conduct and involve the same individuals. (*Peters v. Renaissance Hotel Operating Co.*, *supra*, 307 F.3d 535 at p. 550.)

Plaintiff lists in her Intake Questionnaire the following persons who she claims discriminated against her: Jean Scrafton, Renee Dodge, Doris Frazier, Denny Powell, Bonnie Book, Jim Andersen (incorrectly identified as Bill Andersen), Gladys Bakkar, Frank Slachman, M.D., John Dien, M.D., Henry Xhu, M.D. (incorrectly identified as Dr. Zhu) and Mark Taylor, M.D. (Note: Several of these alleged perpetrators are *not* listed as witnesses for the plaintiff.)

Plaintiff claims that the basis for her claim of discrimination is race, sex, national origin and "retaliation." She also claims "hostile work environment, wrongful termination and retaliation for complaining about work environment and lack of lunch breaks, harassment."  Although plaintiff argued in her opposition to defendant's Motion in Limine No. 6 that "work environment" encompassed "patient safety," this is an unreasonable expansion of the allegations in the EEOC Intake Questionnaire.

The specific dates and incidents are listed as follows:

> July 11, 2008: I was called into HR, falsely accused of a # of allegations.  During the meeting, my concerns regarding my complaints about the work environment were ignored.  They wanted me to sign their document to accept the charges which I refused.  I signed a disclosure statement.

(Exhibit "C" at p. 2, ¶ 5.)  The persons responsible for this issue were Renee Dodge, Jean Scrafton and Bonnie Book.

> August 4, 2008: Accused falsely again to facilitate termination.  Accused of not showing up to work on a Sunday and of not coming to HR meeting.  I did not go to this meeting as Sister Claire Dalton told me not to without her there to represent me.  They terminated me on August 7th because of this and because of the fabrication of document[s] by Jean Scrafton.  All that was proven in the EDD Appeal court date where I showed documents and phone logs

*Defendant Catholic Healthcare West's Further Briefing Re: Specificity of EEOC Complaint and Causes of Action in Second Amended Complaint* Case No.: 2:09-CV-02972-KJM-KJN

1    showing that this was created by Jean Scrafton so she could terminate
2    me.

3    (*Ibid.*)  Actions plaintiff believes were discriminatory include:

4    Wrongful termination; fabrication of data to create case against me
     for speaking out; denial of representation; denial of lunch breaks and
5    breaks; never addressing my complaints bur rather retaliating.

6    (*Ibid.*)  Plaintiff claims the reasons given to her for the acts she considered discriminatory were:

7    Supervisors Renee Dodge and Jean Scrafton & Gladys Baaker [sic]
     terminated me for not going to an HR meeting without
8    representatitive when I was told by Sister Claire Dalton in
     Administration to not go without her presence. <u>And</u> terminated
9    because Jean Scrafton fabricated documents and facts to terminate
     me.
10

11   (*Id.* at p. 3, ¶ 6.)

12        What is notably *absent* from this Intake Questionnaire are any facts of the underlying

13   alleged sexual discrimination or sexual harassment.  The only *facts* are related to these two

14   meetings on July 11, 2008 and August 4, 2008 where plaintiff claims she was "falsely accused"

15   regarding not coming into work on a Sunday and denied representation. The Intake Questionnaire

16   also does not indicate names or descriptions of others who were treated differently in support of

17   racial, sexual or gender harassment.  There is nothing about patient safety in the Intake

18   Questionnaire.  There is nothing about retaliation for opposing sexual harassment or sexual

19   discrimination.  Further, plaintiff has abandoned her claims for racial and national origin

20   discrimination. There are also no *facts* relating to the alleged denial of lunch breaks or breaks in

21   general, or how that would support a claim of sexual harassment or discrimination based on sex.

22   For example, plaintiff does not allege that male employees were given their breaks, but females

23   were not. Similarly, there is no claim that sexual harassment occurred during breaks. The Intake

24   Questionnaire, even if considered by the court, is insufficient to support many of the allegations

25   contained in the Second Amended Complaint.

26   / / /

27   / / /

28
                                                    7

### 3. Plaintiff's Second Amended Complaint

Plaintiff's Second Amended Complaint contains many more factual allegations in far broader areas and encompassing far broader issues than the EEOC Charge **or** the Intake Questionnaire.  It is these allegations, and more importantly, the evidence that will allegedly support them, which should be excluded as beyond the scope of plaintiff's EEOC Complaint or even what would reasonably have come out of an investigation on plaintiff's EEOC Complaint.  The differences are highlighted below.

#### a. Consistent Allegations

Plaintiff's Second Amended Complaint does contain some *consistent* allegations when compared to the EEOC Charge.  For example, plaintiff claims she was "subjected to sexual and ethnic comments from coworkers and persons in supervisory positions, such as surgeons." (Exhibit "A," at ¶ 13.)  She was also subjected to "inappropriate and derogatory gender-based" comments.  (Exhibit "A," at ¶ 14.)

Plaintiff believes no action was taken in response to her complaints about these inappropriate comments.  (Exhibit "A," at ¶ 16.)

Plaintiff claims she was written up for failing to show up for work on a day she was on call but not informed to present to work.  (Exhibit "A," at ¶ 25.)

Plaintiff alleges she continually complained about not receiving lunch breaks.  (Exhibit "A," at ¶ 26.)  While this is consistent, there are no facts alleged in the EEOC Charge or the Intake Questionnaire that would support a claim for sexual harassment or discrimination based on sex related to this allegation.  (While such evidence may support a claim under plaintiff's seventh cause of action, a limiting instruction should be considered that the jury is not to consider this retaliation for sexual harassment or discrimination, as such is outside the scope of the EEOC Charge.)

The August 1, 2008 meeting is referenced in the complaint and described similarly as in the EEOC Charge with regard to plaintiff's allegation, albeit with more detail.  (Exhibit "A," at ¶¶ 28-31.)

With regard to plaintiff's hostile work environment claim based on gender, plaintiff makes general allegations that "sexual comments and jokes were made, gender-based comments permeated the workplace, as did comments and questions about her (and others['']) ethnicity/national origin, often at the expense of Plaintiff who found the atmosphere to be both offensive and demeaning." (Exhibit "A," at ¶ 41.) While consistent with the EEOC Charge, it is equally vague as to what was said, when and by whom. Thus, it is questionable whether an EEOC investigation would have revealed any such comments or identified persons who allegedly made such comments.

Plaintiff claims she was retaliated against (including her termination) for complaining about and opposing the "hostile work environment." There are no facts specifically pled pertaining to such hostile work environment, but presumably, it is based on what is contained in the EEOC Charge; i.e. derogatory remarks concerning her race, national origin, and sex. Otherwise, this allegation would be inconsistent with the EEOC Charge.

### b.    Inconsistent Allegations

Paragraph 14 of plaintiff's Second Amended Complaint makes specific reference to Dr. Kaplon as being one who made inappropriate and derogatory comments, when his name is notably *absent* from plaintiff's EEOC Charge *and* the Intake Questionnaire.

Plaintiff specifies an incident in September, 2007 wherein she claims to have been "singled out" for a parking practice in which others engaged regularly. She claims that after she complained of ethnic and sexual comments and "patient care," she was written up for this parking issue. (Exhibit "A," at ¶ 17.) No such facts, nor the date, nor the reference to "patient care" are referenced or even implied in plaintiff's EEOC Charge or the Intake Questionnaire.

Plaintiff claims Dr. Xhu asked plaintiff if she was "Al Qaeda" in "late" 2007. (Exhibit "A," at ¶ 18.) Not only is this allegation absent from her EEOC Charge, but she has abandoned her claim for national origin or racial discrimination, and as such, evidence of such comments should be excluded. The same holds true for the allegations in paragraph 20 of plaintiff's Second

9

*Defendant Catholic Healthcare West's Further Briefing Re: Specificity of EEOC Complaint and Causes of Action in Second Amended Complaint* Case No.: 2:09-CV-02972-KJM-KJN

1  Amended Complaint regarding surgeons making derogatory comments about plaintiff's national

2  origin.

3       Plaintiff further alleges she was harassed and subjected to unwanted accusations and

4  discipline for complaining about "illegal harassment and treatment of patients by the surgeons."

5  (See Exhibit "A," at ¶ 21.)  She claims she was falsely accused of sleeping in the lounge and not

6  being in the OR on time, being falsely accused of not being in the room on time when she was ill,

7  and initially being given only a portion of instruments required to perform her job, though they

8  were ultimately provided.  (*Ibid.*)  *None of these allegations is contained in plaintiff's EEOC*

9  *Charge*, nor can it be reasonably inferred that an EEOC investigation on the claims that *were*

10 contained in the Charge would have uncovered such facts.

11      Plaintiff claims women were treated differently than men in the "tone" and "attitude"

12 towards them.  (Exhibit "A," at ¶ 22.)  There is no such allegation in the EEOC Charge.  In fact,

13 plaintiff had the opportunity to state similar or disparate treatment in the Intake Questionnaire,

14 which portion of the Questionnaire she left blank.  Exhibit "C" at p. 3, ¶ 7.)

15      Plaintiff claims the comments and attitudes had the "potential" to impact patient care.

16 (Exhibit "A," at ¶ 23.)  No such allegation or complaint is contained in the EEOC Charge or the

17 Intake Questionnaire.

18      Plaintiff claims she complained about surgeons' behavior that "violated anti-discrimination

19 laws" and that "put patients at risk."   Neither plaintiff's EEOC Charge nor the Intake

20 Questionnaire contain any mention of patients being at risk.  **Patient care is not mentioned at**

21 **all.**  Indeed, plaintiff makes a very specific allegation in paragraph 27 of her Second Amended

22 Complaint:

23              Plaintiff also repeatedly complained about issues regarding patient
              care particularly resulting from Dr. Kaplon's treatment of the patients
24              and staff during surgery and of the failure to have an M.D. assist at
              all times as required by law.
25

26 (*Id.* at ¶ 27.)  Not only is Dr. Kaplon not mentioned at all in plaintiff's EEOC paperwork, but

27 nothing about his treatment (or any physicians' treatment) of patients or staff, nor any facts to

28

*Defendant Catholic Healthcare West's Further Briefing Re: Specificity of EEOC Complaint and Causes of*
*Action in Second Amended Complaint* Case No.: 2:09-CV-02972-KJM-KJN

1   support such allegations is included in the Charge or the Intake Questionnaire.  Indeed, even

2   plaintiff's Second Amended Complaint is quite conclusory on this issue with no foundational facts

3   alleged.  Certainly, no reasonable investigation would have revealed this complaint, as there were

4   no facts or even conclusions raised in the EEOC Charge on the issue of patient care, on Dr.

5   Kaplon or on failing to have an "M.D. assist" at all times.  These factual allegations are far beyond

6   the scope of the EEOC Charge and Intake Questionnaire, and thus, such evidence and argument

7   must be excluded from trial to the extent it is offered to support plaintiff's Title VII claims.

8       Notably, plaintiff indicates in her Second Amended Complaint that the retaliation consisted

9   of the written warnings (perhaps regarding the parking situation which was not contained in the

10  EEOC Charge), making false allegations about plaintiff's *performance*, which is *not* addressed

11  anywhere in the EEOC Charge, her attendance, and her termination.  The attendance issue and the

12  termination are included in the EEOC Charge, but there is nothing about the parking situation,

13  written warnings or allegations about plaintiff's performance contained in her EEOC Charge or

14  Intake Questionnaire.  Therefore, such evidence and argument must be precluded at trial in support

15  of plaintiff's Title VII harassment, discrimination and retaliation causes of action.

16      **c.**    **Post-Termination Actions**

17      Plaintiff also alleges that CHW retaliated against her again by requiring her to obtain a

18  national certification as a prerequisite for obtaining privileges at Mercy San Juan Medical Center

19  in 2009.  (Exhibit "A," at ¶¶ 33-36; 90-92.)  There is nothing contained in plaintiff's Second

20  Amended Complaint about the actual denial of privileges in 2010.  Moreover, there is nothing in

21  plaintiff's EEOC Charge regarding disparate treatment for requirements for privileges at the

22  hospital.  This makes sense, since plaintiff's request for privileges did not occur until more than

23  a year after she was terminated.  It also makes sense that the denial of privileges, or the

24  requirements for privileges, cannot therefore form the basis of plaintiff's wrongful termination,

25  harassment or retaliation claims.  Plaintiff should thus be prevented from presenting such evidence

26  in support of her sexual harassment, sexual discrimination and retaliation causes of action, and

27  from arguing that such evidence supports her Title VII claims.

28

*Defendant Catholic Healthcare West's Further Briefing Re: Specificity of EEOC Complaint and Causes of Action in Second Amended Complaint* Case No.: 2:09-CV-02972-KJM-KJN

1    **C.    Claims and Factual Allegations Beyond the Scope of the EEOC Charge Should**
2    **Be Excluded**

3         To the extent plaintiff's EEOC Charge includes *facts* that support a claim for discrimination

4    based on sex and/or sexual harassment, evidence of those facts may also be introduced at trial to

5    attempt to establish the elements of that claim.  Both Title VII and case law mandate, however,

6    that facts and issues outside the scope of the EEOC Charge are beyond the jurisdiction of the

7    court.  If plaintiff's complaint contains *incidents* which are not contained in the EEOC Charge,

8    the court lacks jurisdiction to adjudicate such claims, unless a reasonable EEOC investigation

9    would have uncovered those incidents.  (*E.E.O.C. v. Farmer Bros. Co.*, *supra*, 31 F.3d at p. 899.)

10   Again, "[w]hen an employee seeks judicial relief for *incidents* not listed in his [or her] original

11   charge to the EEOC, the judicial complaint nevertheless *may* encompass any discrimination *like*

12   *or reasonably related to* the allegations of the EEOC charge." (*Ibid.*, fn 5, quoting *Oubichon v.*

13   *North American Rockwell Corp.* (9th Cir.1973) 482 F.2d 569, 571 [Emphasis added].)

14   Importantly, the EEOC Charge and the civil complaint must "**describe the same conduct and**

15   **implicate the same individuals.**" (*Peters v. Renaissance Hotel Operating Co.*, *supra*, 307 F.3d

16   at p. 550 [Emphasis added].)

17        There are distinct factual differences between plaintiff's EEOC Charge and her Intake

18   Questionnaire when compared with her Second Amended Complaint.  Plaintiff should therefore

19   be precluded from introducing any evidence regarding the issues and/or facts in her complaint that

20   are *not* contained in her EEOC Complaint, as outlined in detail above.

21        For example, plaintiff alleges in her Second Amended Complaint that women are treated

22   differently than men.  Her EEOC Charge makes no such allegation, and there are no facts

23   contained in the Charge or the Intake Questionnaire that would lead a reasonable investigation to

24   uncover facts related to disparate treatment of men and women in the workplace, or complaints

25   about it.  Because plaintiff made no such factual allegations in her EEOC Charge, she should be

26   precluded from making any reference or introducing any evidence at trial regarding disparate

27   treatment of men and women.  The same is true for allegations regarding Dr. Kaplon's treatment

28

12

1  of the plaintiff and the alleged "patient care" issues.  Plaintiff made no such complaints to the

2  EEOC, and therefore, such evidence cannot be introduced to support her claims for sexual

3  harassment, sexual discrimination or retaliation under Title VII.

4        **D.**     **Plaintiff's "Continuing Violation" or "Continuing Retaliation" Claim is Barred for Failure to Exhaust Administrative Remedies[2]**

5

6        Another significant issue related to the deficiencies of plaintiff's EEOC Charge is

7  plaintiff's claim that the retaliation "continued" in the form of post-termination requirements for

8  privileges at the hospital and indeed, denial of those privileges.  Defendant acknowledges that

9  plaintiff has a separate common-law cause of action for interference, and that plaintiff will

10 introduce this evidence to try to support the elements of such a cause of action.  **Plaintiff should**

11 **be precluded, however, from offering such evidence as a basis for a "continuing violation"**

12 **or continuing retaliation of plaintiff's Title VII causes of action, as it was not contained in**

13 **EEOC Charge, and a new EEOC Charge was not brought to address these new and discreet**

14 **acts of alleged retaliation.**  Therefore, such evidence should be accompanied by a limiting

15 instruction at a minimum regarding what it can be considered for, and plaintiff's counsel should

16 be precluded from arguing that a continuing violation or continuing act of retaliation occurred,

17 given that plaintiff did not exhaust her administrative remedies regarding these alleged acts of

18 retaliation.  This evidence should only be allowed for the purpose of supporting an alleged

19 interference claim.

20       Indeed, one of plaintiff's arguments at the hearing on the Motions in Limine, which piqued

21 defendant's concern, was that CHW's actual denial of privileges in 2010, two years after she was

22 terminated, showed a pattern of harassment and retaliation which would constitute a "continuing

23 violation."  She also argued that it would have been "futile" to bring a second EEOC complaint.

24 Neither excuse frees her from the requirement of exhausting administrative remedies

25

26 [2] CHW recognizes the court requested supplemental briefing specifically regarding defendant's MIL #6, but the court's order also requested briefing on the *issue* of failure to exhaust administrative remedies.  To the extent

27 plaintiff seeks to introduce evidence of these later acts as an alleged continuing violation or additional retaliation, the failure to exhaust argument also applies to them.  Therefore, this discussion is also included in this

28 supplemental briefing.

13

1   encompassing these later acts if indeed plaintiff intends to offer such evidence in support of her

2   retaliation claims (i.e. retaliation for filing this Title VII lawsuit or for objecting to harassment in

3   the workplace, or as indicating disparate treatment based on sex, etc.).

4         Plaintiff's arguments misconstrue the continuing violation theory. This denial of privileges

5   constitutes a new, *discreet* act of alleged discrimination or retaliation for which a new EEOC

6   Charge should have been filed.  Because plaintiff did not file such a Charge, she did not exhaust

7   her administrative remedies prior to bringing this new claim, and she must be precluded from

8   offering such evidence in support of a continuing violation or retaliation claim to the extent she

9   intends to argue the continuing retaliation was due to filing her Title VII lawsuit, for objecting to

10   harassment or any other Title VII violation.

11         The "continuing violation" theory is generally used to reach *back* in time to allow evidence

12   of *past* discrimination in order to show an ongoing pattern.  "The continuing violation theory

13   allows a plaintiff to reach back to get relief for an act of discrimination that occurred outside the

14   statute of limitations by linking it as one continuous act with a discriminatory act that took place

15   within the limitations period." (*Place v. Abbott Laboratories*, 215 F.3d 803, 807 (7th Cir. 2000).)

16   Generally, acts of sexual harassment and discrimination are the subject of a continuing violation,

17   as the first offensive remark or touch may not become harassing until a pattern develops. (*Id.* at

18   p. 808.)  It makes little sense when applied to discreet acts which could immediately be construed

19   as discriminatory, if indeed they are discriminatory, such as termination, transfer, failure to hire,

20   etc. (*Ibid.*)

21         There are two distinct acts in question on this issue.  One is alleged in the Second Amended

22   Complaint, and one has been raised in argument.  Neither is contained in the EEOC Charge, and

23   no later EEOC Charge was filed.  They are: the alleged requirement in 2009 of certification prior

24   to granting privileges, and the actual denial of privileges in 2010, two years after plaintiff's

25   termination.  Neither can support a claim for sexual harassment, sexual discrimination or

26   retaliation, and indeed, the claim pertaining to a certification requirement is wholly irrelevant.

27   / / /

28

14

1        **1.      The Certification Requirement is Irrelevant, and Administrative Remedies Were Not Exhausted**

3        Plaintiff claims in her Second Amended Complaint, filed in February, 2010, that in August,

4   2009 (after her termination) when she inquired about obtaining privileges at "CHW hospitals,"

5   she was told a national certification was not required.  She claims she was later told that a national

6   certification *was* required to obtain privileges, but that this requirement was not applied equally.

7   (Exhibit "A" at ¶¶ 33-36.)  There is, however, no evidence, nor even any allegation, that plaintiff

8   was actually *denied* privileges *because* she did not have a national certification.  This hearsay

9   statement of what she was allegedly told is therefore irrelevant.

10       Moreover, plaintiff claims this certification requirement was imposed upon her in an effort

11  to interfere with her ability to obtain a job after her termination.  (Exhibit "A" at ¶¶ 91, 92.)  The

12  cause of action for interference does not require exhaustion of administrative remedies.  Plaintiff

13  should be precluded, however, from offering such evidence for the purpose of supporting a

14  continuing violation theory of retaliation, or a new act of retaliation, as plaintiff did not file any

15  charge with the EEOC regarding these alleged acts.  Therefore, to the extent plaintiff wishes to

16  show continued retaliation or discrimination under Title VII by virtue of the alleged imposition

17  of a certification as a prerequisite to privileging, plaintiff failed to exhaust her administrative

18  remedies, and such claims and evidence should be excluded. (*E.E.O.C. v. Farmer Bros. Co.*,

19  *supra*, 31 F.3d at p. 899.)

20       **2.      Plaintiff Failed to Exhaust Her Administrative Remedies with Regard to Actual Denial of Privileges**

22       Although not stated in her Second Amended Complaint, plaintiff has argued, specifically

23  at the hearing on the motions in limine, not only that the denial of privileges is relevant to her

24  interference claim, but that it shows a pattern of retaliation and discrimination with regard to her

25  Title VII claims.  This would be an improper use of such evidence, because again, plaintiff failed

26  to exhaust her administrative remedies.  With regard to Title VII, the denial of privileges

27  constitutes a separate, distinct act.  Thus, if plaintiff wished to show that it was done in retaliation

28

1  for complaining about Title VII issues, she must have filed a separate complaint with the EEOC,

2  which she failed to do. *Place v. Abbott Laboratories*, *supra*, illustrates this point.

3      In *Place*, plaintiff's retaliation claim was founded on two events: a transfer in October 1991

4  to a different position, and (after plaintiff had been out on disability leave for some months) the

5  company's insistence in May 1992 that she undergo an independent medical examination as a

6  prerequisite to returning to work.  Her refusal to undergo the independent medical examination

7  ultimately led to her termination in December 1992.  Plaintiff claimed that the two acts illustrated

8  a continuing violation of discrimination under Title VII.  The court ruled that the continuing

9  violation theory did not apply, as these were distinct acts which the plaintiff would immediately

10  realize were discriminatory, if in fact they were.  As such, each requires a separate EEOC

11  complaint to be filed within the proper limitations period.  Because plaintiff failed to file an EEOC

12  Charge claiming disparate treatment or discrimination based on the denial of privileges, she must

13  be precluded from introducing any evidence, or making any arguments, that the denial of

14  privileges constituted a continuing retaliation, i.e. for filing her Title VII claims or opposing

15  sexual harassment in the workplace, or disparate treatment based on sex.

16      **3.      Plaintiff's "Futility" Argument is Irrelevant and Does Not Exempt Her
           from the Requirement of Exhausting Administrative Remedies**

17

18      Although absent from the Second Amended Complaint, plaintiff also argued at the hearing

19  on the motions in limine that it would have been "futile" to file an EEOC Charge or, perhaps more

20  importantly, to exhaust the internal administrative remedies available to her through hospital

21  bylaws when her privileges were denied.  While CHW does not intend to re-submit the arguments

22  and authority contained in support of its Motion in Limine No. 7, it is relevant to this court's

23  question of jurisdiction and exhaustion of remedies when comparing the Second Amended

24  Complaint to the EEOC Charge and Intake Questionnaire, especially in light of the fact plaintiff

25  utterly failed to exhaust any administrative remedies pertaining to these later claims of alleged

26  retaliation in the form of denial of privileges.  Again, defendant is concerned with the *purpose* to

27  which certain evidence will be used, and the arguments that will be made, at trial.  Plaintiff should

28

16

*Defendant Catholic Healthcare West's Further Briefing Re: Specificity of EEOC Complaint and Causes of
Action in Second Amended Complaint* Case No.: 2:09-CV-02972-KJM-KJN

1  be precluded from offering evidence of the denial of privileges for the purpose of establishing a

2  continuing violation when administrative remedies were not exhausted as to any such claim.

3       Plaintiff argue these later acts occurred *because* plaintiff filed her Title VII lawsuit.  As

4  argued above, there can be no question that the requirement of national certification or the denial

5  of privileges, both of which occurred well after plaintiff's termination, constitute separate and

6  discreet acts of alleged discrimination. (*Place v. Abbott Laboratories*, *supra*, 215 F.3d 803.) Thus,

7  at a minimum, if plaintiff intends to use this evidence in support of a continuing violation theory

8  of Title VII discrimination or retaliation, she must have filed a complaint with the EEOC within

9  180 days of the alleged violations. (41 U.S.C. § 2000e-5(e)(1); *B.K.B. v. Maui Police Department*,

10  *supra*, 276 F.3d at p. 1099.) Because she failed to do so, such claims are barred, and the *evidence*

11  should be precluded *for that purpose*.  Again, CHW recognizes plaintiff maintains a common law

12  cause of action for interference for which this evidence may come in, and as such, CHW's counsel

13  suggested a limiting instruction regarding the use and applicability of such evidence, as well as

14  an order preventing plaintiff's counsel from making the precise arguments they offered at the

15  hearing on the motions in limine.

16       Plaintiff's "futility" argument fails, as it did in *Stiefel v. Bechtel Corporation*, 624 Fed.3d

17  1240 (9th Cir. 2010).  The plaintiff in *Stiefel* also brought post-termination claims, without

18  exhaustion of internal remedies, claiming that it would have been futile to attend roll calls as

19  required for rehire, because he had been told by other employees that he would never be rehired

20  without a full medical release.  The plaintiff's "futile gesture" argument failed, as he did not

21  establish the reason he did not attend the roll calls was personal commitments.  He also testified

22  that others were accommodated with disabilities.  In this case, plaintiff offered no explanation that

23  it would have been futile to follow the procedures outlined in the letter denying her privileges.

24  Indeed, in *Place v Abbott Laboratories*, *supra*, the court recognized that had the plaintiff simply

25  followed the employer's requirements, she probably would have gotten her job back.  In this case,

26  plaintiff simply made a subjective and tactical decision to not pursue the administrative remedies

27  / / /

28

*Defendant Catholic Healthcare West's Further Briefing Re: Specificity of EEOC Complaint and Causes of Action in Second Amended Complaint* Case No.: 2:09-CV-02972-KJM-KJN

1   and instead go directly to court.   (See plaintiff's letter to Dr. Wood giving up on appeal of

2   privileges due to termination of employment from RAS, attached as Exhibit "D" to the Declaration

3   of Judith Clark Martin, filed herewith.)   This improper procedure requires the preclusion of

4   evidence of these later incidents of alleged retaliation to support any Title VII claims.

5   **E.    Conclusion**

6   CHW requests that the court order that plaintiff be precluded from offering evidence at trial

7   of alleged discriminatory, harassing or retaliatory acts that were not adequately encompassed by

8   her EEOC Charge.

9   Dated: November 17, 2011                     LA FOLLETTE, JOHNSON,
                                                  DE HAAS, FESLER & AMES
10

11

12                                               By:  _/s/ Judith Clark Martin_____
                                                     JUDITH CLARK MARTIN
13                                                   DAVID L. DITORA
                                                     MARY E. GREENE
14                                                   Attorneys for Defendant,
                                                     CATHOLIC   HEALTHCARE   WEST
15                                                   dba MERCY GENERAL HOSPITAL
                                                     (erroneously sued and served herein as
16                                                   CATHOLIC   HEALTHCARE   WEST
                                                     and MERCY GENERAL HOSPITAL)
17                                                   655 University Avenue, Suite 119
                                                     Sacramento, CA 95825
18                                                   (916) 563-3100
                                                     (916) 565-3704 Facsimile
19                                                   Email: JCMartin@ljdfa.com
                                                     Email: DDitora@ljdfa.com
20                                                   Email: MGreene@ljdfa.com

21

22

23

24

25

26

27

28

1  JUDITH CLARK MARTIN, STATE BAR NO. 173557
   DAVID L. DITORA, STATE BAR NO. 119252
2  MARY E. "MOLLY" GREENE, STATE BAR NO. 186205
   **LA FOLLETTE, JOHNSON,**
3  **DE HAAS, FESLER & AMES**
   655 University Avenue, Suite 119
4  Sacramento, California  95825
   Phone:       (916) 563-3100
5  Facsimile:   (916) 565-3704
   Email:       JCMartin@ljdfa.com
6  Email:       DDitora@ljdfa.com

7  Attorneys for Defendant,
   CATHOLIC HEALTHCARE WEST dba
8  MERCY GENERAL HOSPITAL (erroneously
   sued and served herein as CATHOLIC HEALTHCARE
9  WEST and MERCY GENERAL HOSPITAL)

10

11                          UNITED STATES DISTRICT COURT

12                         EASTERN DISTRICT OF CALIFORNIA

13

14  ANI CHOPOURIAN,                    )    CASE NO.  2:09-CV-02972-KJM-KJN
                                       )
15              Plaintiff,             )    **DECLARATION OF JUDITH CLARK**
                                       )    **MARTIN IN SUPPORT OF DEFENDANT**
16  v.                                 )    **CATHOLIC HEALTHCARE WEST'S**
                                       )    **FURTHER BRIEFING RE: SPECIFICITY**
17  CATHOLIC HEALTHCARE WEST,)         **OF EEOC COMPLAINT AND CAUSES OF**
    MERCY GENERAL HOSPITAL, AND )      **ACTION IN SECOND AMENDED**
18  DOES 1 through 20, inclusive,      )    **COMPLAINT**
                                       )
19              Defendants.            )    **Date:        December 7, 2011**
                                       )    **Time:        10:00 a.m.**
20                                     )    **Courtroom: 3**
                                       )
21                                     )    **Judge: Honorable Kimberly J. Mueller**
    ───────────────────────────────    )    **Trial Date: January 23, 2012 at 9:00 a.m.**
22

23        I, Judith Clark Martin, declare as follows:

24        1.      I am an attorney with LaFollette, Johnson, DeHaas, Fesler & Ames, attorneys of

25  record for the defendant, CATHOLIC HEALTHCARE WEST, dba MERCY GENERAL

26  HOSPITAL, in the above-captioned matter.  I am primarily responsible for handling this matter

27  and have been from its inception.

28

                                              1
   ────────────────────────────────────────────────────────────────────────
   *Declaration of Judith Clark Martin in Support of Defendant Catholic Healthcare West's Further Briefing Re: Specificity
   of Eeoc Complaint and Causes of Action in Second Amended Complaint* Case No.: 2:09-CV-02972-KJM-KJN

2.      I have personal knowledge of the facts contained herein, and if called to testify thereto, I could and would do so competently.

3.      In response to this Court's order following the hearing on the parties' Motions in Limine, CHW submits its further briefing regarding the specificity of plaintiff's EEOC Complaint and the allegations contained in the Second Amended Complaint. CHW seeks to exclude evidence pertaining to claims that are outside the scope of the EEOC Complaint.

4.      Although these documents are already before the court in various exhibits, CHW submits the EEOC Charge of Discrimination, the Intake Questionnaire and the Second Amended Complaint for the convenience of the Court in considering this motion.

5.      Attached hereto as Exhibit "A" is a true and correct copy of plaintiff's Second Amended Complaint, filed in this court on or about February 16, 2010.

6.      Attached hereto as Exhibit "B" is a true and correct copy of the Charge of Discrimination filed by plaintiff with the California Department of Fair Employment and Housing to be presented to the EEOC. This Charge was filed on February 3, 2009.

7.      Attached hereto as Exhibit "C" is a true and correct copy of the Equal Employment Opportunity Commission Intake Questionnaire filled out and filed by plaintiff on February 3, 2009.

8.      Attached hereto as Exhibit "D" is a true and correct copy of a letter from plaintiff to Dr. Wood, dated June 23, 2010 explaining her decision to forego an appeal of the privileging decision.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct to the best of my own personal knowledge. Executed this 17th day of November, 2011 at Sacramento, California.

_/s/ Judith Clark Martin_
Judith Clark Martin
Attorneys for defendant CATHOLIC HEALTHCARE
WEST dba MERCY GENERAL HOSPITAL

2

# EXHIBIT "A"

1    LESLIE F. LEVY, ESQ., State Bar No. 104634
     JEAN K. HYAMS, ESQ., State Bar No. 144425
2    DARCI E. BURRELL, ESQ., State Bar No. 180467
     DICKSON LEVY VINICK BURRELL HYAMS LLP
3    180 Grand Avenue, Suite 1300
     Oakland, CA 94612
4    Telephone: (510) 318-7700
     Facsimile: (510) 318-7701
5    E-mail: leslie@dicksonlevy.com
6
7    W. DANIEL BOONE, ESQ., State Bar No. 46553
     Weinberg, Roger & Rosenfeld
8    1001 Marina Village Parkway, Suite 200
     Alameda, CA 94501
9    Telephone: (510) 337-1001
     Facsimile: (510) 337-1023
10
11    Attorneys for Plaintiff

12
13            **IN THE UNITED STATES DISTRICT COURT**
14            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

15    ANI CHOPOURIAN,        )   Case No. 2:09-cv-02972-GEB-DAD
16                ) 
          Plaintiff,        )   **SECOND AMENDED COMPLAINT FOR**
17                )   **DAMAGES AND DEMAND FOR JURY TRIAL**
18    vs.               )
               )
19    CATHOLIC HEALTHCARE WEST,    )
     MERCY GENERAL HOSPITAL, AND   )
20    DOES 1 THROUGH 20, inclusive     )
               )
21           Defendants.      )

22
23      Plaintiff ANI CHOPOURIAN alleges as follows:
24                **I.**    **NATURE OF THE ACTION**
25      1.      Plaintiff brings this lawsuit in response to acts of harassment and retaliation by
26    Defendant and its employees and agents which resulted in her wrongful termination.
27
28

## II.   PARTIES

2.      Ani Chopourian is licensed by the State of California as a Physician's Assistant.  From approximately August 2006 to August 7, 2008, she worked in that capacity for Catholic Healthcare West, primarily in the operating room of the cardiac unit.

3.      Catholic Healthcare West ("CHW") is a non-profit organization that owns and runs various hospitals including the one at which Plaintiff worked. Plaintiff was employed by Catholic Healthcare West.   The organization is headquartered in San Francisco, California.

4.      Mercy General Hospital is an entity, business form unknown. Plaintiff worked primarily at Mercy General Hospital.  Plaintiff is informed and believes that Mercy General Hospital is owned and operated by CHW.

5.      Defendants Does 1 through 20, inclusive, are sued under fictitious names.  Their true names and capacities are unknown to Plaintiff.  When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and such Defendants caused Plaintiff's damages as herein alleged.

6.      Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned each and every defendant was the agent, servant, employee and/or representative of each and every other defendant and was, in doing the things complained of herein, acting within the scope of said agency, service, employment and/or representation, and that each and every defendant herein is jointly and severally responsible and liable to Plaintiff for the damages hereinafter alleged.

///

///

### III. JURISDICTION AND VENUE

7.      Venue is proper in this County as Defendant is headquartered in the City of San Francisco.

8.      The amount in controversy exceeds limited jurisdiction.

9.      As to those causes of action that require exhaustion of administrative remedies, Plaintiff has done so. Plaintiff filed a complaint with the EEOC. The EEOC issued a right to sue letter on March 27, 2009 which was received by the Plaintiff some days later. She timely files this complaint.

10.     Plaintiff reserves her right to amend the Complaint to request punitive damages on the state law causes of action pursuant to California Code of Civil Procedure §425.14.

### IV. FACTUAL ALLEGATIONS

11.     Plaintiff Ani Chopourian began her employment as a physician's assistant at one of Defendant's hospitals in August 2006. Primarily she worked at Mercy General Hospital, although she also occasionally worked on call at San Juan General. She is Armenian-American.

12.     On all performance evaluations received by Plaintiff, she has been determined to, at minimum, meet all expectations.

13.     From the beginning of her employment, Plaintiff was subjected to sexual and ethnic comments from coworkers and persons in supervisory positions such as the surgeons.

14.     Beginning in approximately October of 2006, various doctors made inappropriate and derogatory gender-based comments. In particular, in surgery, Dr. Kaplon referred to Plaintiff as a "stupid chick" and referenced actions she took by saying that it was "just like a girl."

15.     In approximately the summer of 2007, Dr. Zhu joined the team of surgeons and began to subject Plaintiff to comments based on gender and national origin as well as sexual comments.

16.     Other surgeons also made frequent comments about Plaintiff's ethnicity. Plaintiff

1   repeatedly complained about the behavior of Dr. Kaplon and Dr. Zhu.  Plaintiff is informed and

2   believes that no action was taken in response to her complaints.

3         17.    In September 2007, Plaintiff was singled out, called in and given a verbal warning for

4   a parking practice that  Defendant knew many other employees engaged in on a daily basis.

5   Defendant did not subject other employees to any discipline for the same action.  Five months later,

6   after Plaintiff had made additional complaints about ethnic and sexual comments as well as patient

7   care, Defendants first wrote Plaintiff up for the parking issue that occurred in September of the

8   previous year.

9         18.    On several occasions in late 2007, Dr. Zhu asked Plaintiff if she was "Al Qaeda."

10  Plaintiff asked that such comments be stopped and reported them to management.

11        19.    Plaintiff is informed and believes that no action was taken by Defendants to stop the

12  hostile environment created by the repeated remarks.

13        20.    The surgeons also made derogatory and offensive comments about Plaintiff's national

14              origin, i.e. Armenian.

15        21.    Primarily in 2008, Defendant, through its agents, harassed Plaintiff and subjected her

16  to unwarranted accusations and discipline in response to her complaints about illegal harassment and

17  treatment of patients by the surgeons.  Plaintiff was falsely accused of sleeping in the lounge and not

18  being in her room on time.  On one occasion, Plaintiff arrived at work very ill and vomiting.  Despite

19  being fully aware of Plaintiff's inability to work due to illness, Plaintiff was accused of not being in

20  the room assigned to her on time.  On at least two occasions, Plaintiff was given only a portion of

21  the surgical instruments she requested and needed to perform her job.   Only after repeated requests

22  for the complete set of instruments were they provided.

23  ///

22.    In addition to the explicit sexually harassing and gender comments, Plaintiff contends that women were treated differently than men in terms of the tone and attitude taken towards them.

23.    The comments and attitudes expressed made the work environment hostile and difficult and had the potential to impact patient care as well.

24.    Throughout her tenure, Plaintiff has repeatedly complained to management employees, including Human Resources about behavior of surgeons that violated anti-discrimination laws and that put patients at risk.

25.    In July of 2008, Plaintiff was falsely accused and written up for allegedly failing to show up at work on a day that she was on call but had not been informed that she was needed. Upon first being notified that she was needed, Plaintiff went in.

26.    Plaintiff repeatedly complained about the fact that she and other Physician Assistants were not given lunch breaks.  Plaintiff repeatedly requested that she be permitted lunch breaks for health reasons.  Although lunch breaks could have been provided without compromising patient care, Defendants refused to take action to assure that employees got lunch breaks.

27.    Plaintiff also repeatedly complained about issues regarding patient care particularly resulting from Dr. Kaplon's treatment of the patients and staff during surgery and of the failure to have an M.D. assist at all times as required by law.

28.    On or about August 1, 2008, Plaintiff had been informed that HR would meet with her regarding her complaints the following week.  Despite having earlier been assured by a person with authority that she could bring someone to the meeting with her, she was now told that she was not able to bring anyone.

29.    On or about August 1, 2008, Plaintiff picked up her schedule for the month of
       August.

According to the schedule she received that day, she was on call for August 3, 2008 at Mercy. There was no indication on the schedule she received that she was required to report on Sunday for floor coverage, just that she was to call in to determine need.  On Saturday night, August 2, 2008, according to procedure,  Plaintiff called the PM assignment recording to see if she was needed, as she was on call.  There was nothing on the outgoing message that indicated that she was needed on August 3, 2008.

30.     After approximately 3 p.m. on Sunday August 3, 2008, Plaintiff received a call from the hospital asking why she was not present. Plaintiff explained that she had called in and that there was no instruction to report.

31.     On August  7, 2008, Defendants terminated Plaintiff allegedly for failing to report to work on Sunday, August 3, 2008.

32.     Plaintiff applied for unemployment.  Defendants objected to Plaintiff's unemployment claiming that she was fired for misconduct.  Plaintiff is informed and believes that Defendants' agents misrepresented the facts to the Administrative Law Judge.   The Judge made a determination that Plaintiff did not deliberately disobey a lawful and reasonable instruction of the employer, nor did she substantially breach an important duty or obligation owed the employer.   The ALJ decision went on to state that Plaintiff " was not discharged for misconduct connected to her most recent work."  Plaintiff was granted unemployment benefits.

33.     In approximately August of 2009 Plaintiff began new employment with a different employer.  Her employment required her to obtain privileges at CHW hospitals.  Plaintiff was initially informed that there would not be a problem and that her national certification was not required.

34.     Subsequently, Plaintiff was told by a CHW employee that she could not receive

1    privileges until she obtained her national certification.

2        35.     The requirement of having a current national certification was not a requirement

3                  when

4    Plaintiff was employed by Defendant.

5        36.     Plaintiff is informed and believes that the requirement was not applied to her in a

6    equitable and fair manner and was applied in an attempt to interfere with her ability to carry out the

7

8    duties or her current employment.  Plaintiff is informed and believes that there were other

9    physician's assistants that were working with privileges at CHW hospitals or were hired and given

10    privileges that did not have the national certification and were permitted to continue working for an

11    extended period fo time without the certification.

12        37.     As a result of the actions of Defendant, its employees and its agents, Plaintiff has

13    suffered and continues to suffer, significant emotional and psychological distress, past and ongoing

14

15    loss of income and benefits, damage to her reputation and her career.

16                      **FIRST CAUSE OF ACTION**
**Hostile Work Environment Based on Gender and National Origin/Ethnicity**

17                                **42 U.S.C. § 2000e**

18        38.     Plaintiff realleges and incorporates herein by reference every allegation stated herein.

19        39.     42 U.S.C. § 2000e protects against discrimination against an employee on the basis of

20    her sex as well as her ethnicity and national origin..

21

22        40.     Discrimination on the basis of sex, includes, but is not limited to, sexual harassment,

23    gender based harassment and the creation or maintenance of a hostile work environment based on

24    gender.

25        41.     As set forth above, during Plaintiff's employment with Defendants, she was subjected

26    to a hostile work environment in which sexual comments and jokes were made, gender-based

27

28

comments permeated the workplace, as did comments and questions about her (and others)

ethnicity/national origin, often at the expense of Plaintiff who found the atmosphere to be both

offensive and demeaning.

42.    Defendants failed to take all reasonable steps to prevent and redress discrimination

and harassment against Plaintiff.

43.    As a result of this conduct and Defendants' failure to prevent and/or halt  the conduct,

Plaintiff has suffered damages as set forth herein.

44.    In doing the things alleged herein, Defendants' conduct was despicable, and

Defendants acted towards Plaintiff with malice, oppression, and fraud and with a willful and

conscious disregard of Plaintiff's rights, thus entitling Plaintiff to punitive damages.

Wherefore, Plaintiff requests relief as set forth below.

## SECOND CAUSE OF ACTION
### National Origin Harassment and Discrimination
### 42 USC §1981

45.    Plaintiff realleges and incorporates each and every fact alleged herein.

46.    42 U.S.C. §1981 protects against harassment or the creation of a hostile work

environment on the basis of ethnic origin/race.

47.    As set forth above, during Plaintiff's employment with Defendants, she was subjected

to a hostile work environment in which jokes and negative ethnic comments and comments based on

national origin were made by co-workers and those who supervised her.  Plaintiff  found the

atmosphere to be both offensive and demeaning.

48.    Defendants failed to take all reasonable steps to prevent and redress discrimination

and harassment against Plaintiff.

49.    As a result of this conduct and Defendants' failure to prevent and/or halt the conduct,

1    Plaintiff has suffered damages as set forth herein.

2        50.     In doing the things alleged herein, Defendants' conduct was despicable,

3    and Defendants acted towards Plaintiff with malice, oppression, and fraud and with a willful and

4    conscious disregard of Plaintiff's rights, thus entitling Plaintiff to punitive damages.

5        WHEREFORE, Plaintiff requests relief as set forth below.

6
                              **THIRD CAUSE OF ACTION**
7                    **Retaliation in Violation of 42 U.S.C. § 2000e-3(a)**

8        51.     Plaintiff realleges and incorporates each and every fact alleged herein.

9
         52.     Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3(a)) makes it unlawful
10
     for an employer to discriminate against any employee because she has opposed any practice made
11
12   unlawful under Title VII.

13       53.     As described above, Plaintiff was subject to derogatory and demeaning jokes and

14   comments based on gender.

15       54.     Plaintiff repeatedly complained about the comments of the surgeons and coworkers as
16
     well as their behavior.  These complaints were made to Plaintiff's supervisors, persons in
17
18   management and the Human Resources Department at Mercy General Hospital.

19       55.     Plaintiff also complained about Defendants' failure and refusal to take action to

20   address and remedy hostile work environment.

21       56.     Plaintiff is informed and believes that Defendants retaliated against Plaintiff because

22   she made complaints about, and opposed, the hostile work environment.

23       57.     The retaliation included, but was not limited to the following: writing Plaintiff up,
24
     issuing written warnings to Plaintiff, making false allegations about Plaintiff's performance,
25
26   including but not limited to her attendance, and ultimately terminating Plaintiff.

27       58.     As a result of Defendants' conduct, Plaintiff has suffered damages as set forth herein.

28

59.     In doing the acts alleged herein, Defendants' conduct was despicable, and Defendants acted towards Plaintiff with malice, oppression, fraud and with a willful and conscious disregard of her rights, thus entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff requests relief as set forth below.

### FOURTH CAUSE OF ACTION
### Retaliation – Violation of 42 U.S.C. § 1981

60.     Plaintiff realleges and incorporates each and every fact alleged herein

61.     42 U.S.C. §1981 makes it unlawful for an employer to discriminate against any employee because she has opposed any practice made unlawful under the statute.  As described above, Plaintiff was subject to derogatory and demeaning jokes and comments based on gender, ethnicity and national origin.

62.     Plaintiff repeatedly complained about the comments of the surgeons and coworkers as well as their behavior.  These complaints were made to Plaintiff's supervisors, persons in management and the Human Resources Department at Mercy General Hospital.

63.     Plaintiff also complained about Defendants' failure and refusal to take action to address and remedy hostile work environment.

64.     Plaintiff is informed and believes that Defendants retaliated against Plaintiff because she made complaints about, and opposed, the hostile work environment.

65.     The retaliation included, but was not limited to the following: writing Plaintiff up, issuing written warnings to Plaintiff, making false allegations about Plaintiff's performance, including but not limited to her attendance, and ultimately terminating Plaintiff.

66.     As a result of Defendants' conduct, Plaintiff has suffered damages as set forth herein.

67.     In doing the acts alleged herein, Defendants' conduct was despicable, and Defendants acted towards Plaintiff with malice, oppression, fraud and with a willful and conscious disregard of

SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
Case No.  2:09-cv-02972-GEB-DAD

1  her rights, thus entitling Plaintiff to punitive damages.

2          **FIFTH CAUSE OF ACTION**
3       **Wrongful Termination in Violation of Public Policy**

4          68.   Plaintiff realleges and incorporates each and every fact alleged herein.

5          69.   It is against the public policy of the State of California to terminate an employee on

6  account that employee's opposition to practices prohibited by state or federal law or the state or

7  federal constitution.

8          70.   This public policy is embodied in, among other places, California Govt. Code §
9
10  12940, et seq, Labor Code Section 1102.5, the California Constitution, 42 USC §1981, 42 U.S.C. §
11  2000e and the federal constitution.

12          71.   As set forth above, Defendant terminated Plaintiff because of her complaints about

13  gender discrimination/harassment, national origin/ethnic discrimination, failure to receive

14  appropriate breaks and lunch and patient care.

15          72.   As a result of Defendants' conduct,  Plaintiff has suffered damages as set forth herein.
16
17          73.   Defendants engaged in the acts alleged herein maliciously, fraudulently, and
18  oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with an improper and
19  evil motive amounting to malice.

20          WHEREFORE, Plaintiff requests relief as set forth below.

21          **SIXTH CAUSE OF ACTION**
22       **Intentional Infliction of Emotional Distress**

23          74.   Plaintiff realleges and incorporates each and every fact alleged herein

24          75.   The conduct set forth herein above was extreme and outrageous and an abuse of the

25  authority and position of Defendants and its supervisory employees. Said conduct was intended to

26  cause severe emotional distress, or was done in conscious disregard of the possibility of causing

27

28

such distress.

76.     Said conduct exceeded the inherent risks of employment and was not the sort of conduct normally expected to occur in the workplace. Defendants and its agents abused their positions of authority toward Plaintiff, and engaged in conduct intended to humiliate and demean Plaintiff and to convey the message that Plaintiff was powerless to defend her rights. Defendants abused its authority and directly injured Plaintiff by its ratification of the actions of the doctors and others actions toward Plaintiff by failing to protect and in violating the rights Plaintiff had to not be discriminated against or harassed on the basis of her gender or national origin, to protest the harassment and discrimination or to make complaints about her working conditions and patient care. Furthermore, Defendants falsely accused Plaintiff of failing to show up for work and terminated her based on false accusations, thus causing severe emotional distress.

77.     Following the termination, Plaintiff is informed and believes that Defendants interfered with her attempts to seek new employment.

78.     The foregoing conduct did in fact cause Plaintiff to suffer extreme emotional distress.

79.     As a result of said conduct, Plaintiff has suffered damages as set forth herein.

80.     Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with an improper and evil motive amounting to malice.

WHEREFORE, Plaintiff requests relief as set forth below.

### SEVENTH CAUSE OF ACTION
**Failure to Provide Adequate Meal and Rest Periods (Premium Wages)**

81.     Plaintiff realleges and incorporates each and every fact alleged herein.

82.     Plaintiff regularly worked in excess of 5 and 10 hours a day without being afforded

1  meal period of at least one half-hour each in which she was relieved of all duties, as required by

2  Labor Code §§226.7 and 512 and the Wage Orders.

3      83.    Plaintiff also regularly worked without taking 10 minute breaks, as required by the

4  Wage Orders.

5      84.    Additionally, errors were made by Defendant's agents in Plaintiff's paychecks.

6

7  Although she submitted corrections, she was never paid the corrected amount.

8      85.    Because Defendants failed to afford proper meal periods, they are liable to Plaintiff

9  for 1 hour for each meal period of additional pay at the regular rate of compensation for each

10  occasion that the proper meal periods were not provided, pursuant to Labor Code §226.7 and the

11  Wage Orders.

12      86.    Because Defendants failed to afford proper rest periods, they are liable to Plaintiff for

13

14  1 hour of additional pay at the regular rate of compensation for each occasion that the proper break

15  period was not provided, pursuant to Labor Code §226.7 and the Wage Orders.

16      87.    Labor Code §201 requires an employer who terminates an employee to pay

17  compensation due and owing to said employee immediately upon termination.  Labor Code §203

18  provides that if an employer willfully fails to pay compensation promptly upon termination, as

19  required by §201, the employer is liable for waiting time penalties in the form of continued

20  compensation for up to 30 work days.

21

22      88.    Defendants willfully failed and refused, and continue to willfully fail and refuse, to

23  timely pay compensation and wages, including unpaid rest break pay and meal period pay to

24  Plaintiff whose employment was terminated.  As a result, Defendants are liable to Plaintiff for

25  waiting time penalties, together with interest thereon and attorneys' fees and costs, pursuant to

26  California Labor Code §203.

27

28

89.     As a proximate result of Defendants' conduct, Plaintiff is entitled to premium pay as set forth above in an amount according to proof at the time of trial.

WHEREFORE, Plaintiff requests relief as set forth below.

**EIGHTH CAUSE OF ACTION**
**Interference with Prospective Economic Relations**

90.     Plaintiff realleges and incorporates each and every fact alleged herein.

91.     Plaintiff is informed and believes and based thereon alleges that at all times relevant hereto, that Defendant unfairly and inequitably imposed a requirement of national certification on Plaintiff in order for her to receive privileges at Defendant's hospitals as required by her new employment.   Said imposition interfered with Plaintiff's ability to perform the scope of tasks required by her new employment, had a detrimental impact on her ability to carry out the full array of tasks at her new job and resulted in economic loss and emotional distress.

92.     Defendants failed to act with reasonable care, acted with conscious disregard for the rights of Plaintiff, or intentionally and knowingly imposed qualifications on Plaintiff with the intent of interfering with her job duties.

93.     As a result of Defendants' interference with Plaintiff's prospective economic relations, Plaintiff has suffered economic loss and significant emotional distress.

94.     Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with an improper and evil motive amounting to malice.

WHEREFORE, Plaintiff requests relief as set forth below.

**NINTH CAUSE OF ACTION**
**Defamation**

95.     Plaintiff realleges and incorporates each and every fact alleged herein.

96.     Plaintiff is informed and believes Defendant and its agents and employees, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and/or intentionally caused external publications of defamation, of and concerning Plaintiff, to third persons and to the community.   These false and defamatory statements included express and implied statements: accusations that Plaintiff failed to show up for work as scheduled and that Plaintiff lied in her representation that she was never informed that she was to report to work on August 3, 2008. These and other similar false statements expressly and impliedly stated that Plaintiff was dishonest and unethical.

97.     While the precise dates of these publications are not known to Plaintiff, except as herein alleged, these publications were made on or after August 1, 2008 and were made to employees, and recipients in the community.  Plaintiff hereby seeks damages for these publications and all foreseeable republications discovered up to the time of trial.

98.     During the above-described time-frame, Defendants conspired to, and in fact, did negligently, recklessly, and/or intentionally cause excessive and unsolicited publication of defamation, of and concerning Plaintiff, to third persons, who had no need or desire to know.  Those third person(s) to whom these Defendants published this defamation are believed to include, but are not limited to, other agents and employees of Defendant, and the community, all of whom are known to Defendant, and its agents and employees, but unknown at this time to Plaintiff.

99.     The defamatory publications consisted of knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation.

100.    Plaintiff is informed, believes and fears that these false and defamatory per se statements will continue to be published by Defendants and will be foreseeably republished by their

1  recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal

2  reputations.  Plaintiff also seeks redress in this action for all foreseeable republications, including

3  her own compelled self-publication of these defamatory statements.

4       101.    The defamatory meaning of all of the above-described false and defamatory

5  statements and their reference to Plaintiff, were understood by these above-referenced third person

6  recipients and other members of the community who are known to Defendant, and its agents and

7

8  employees, but unknown to Plaintiff at this time.

9       102.    None of Defendants' defamatory publications against Plaintiff referenced above are

10  true.

11       103.    The above defamatory statements were understood as assertions of fact, and not as

12  opinion.

13       104.    Each of these false defamatory per se publications (as set forth above) were

14

15  negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any

16  alleged conditional privilege (which Plaintiff denies existed), since the publications, and each of

17  them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in

18  order to justify the illegal and cruel actions of Defendant, and its agents and employees, to cause

19  further damage to Plaintiff's professional and personal reputation, and to cause her to be fired.

20       105.    Defendants published these statements knowing them to be false and unsubstantiated

21

22  by any independent investigation.

23       106.    The above complained-of publications by Defendant, and its agents were made with

24  hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good

25  name, her reputation, employment and employability. Defendant and its agents published these

26  statements, not with an intent to protect any interest intended to be protected by any privilege, but

27

28

1  with negligence, recklessness and/or an intent to injure Plaintiff and destroy her reputation.

2     107.   As a result of the publication and republication of these defamatory statements by

3  Defendant, and its agents, Plaintiff has suffered injury to her personal, business and professional

4  reputation including suffering embarrassment, humiliation, severe emotional distress, shunning,

5  anguish, fear, loss of employment, and employability, and significant economic loss in the form of

6  lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an

7  amount according to proof.

8     108.   Defendants committed the acts alleged herein recklessly, maliciously, fraudulently,

9  and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive

10  amounting to malice (as described above), and which abused and/or prevented the existence of any

11  conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of

12  Plaintiff's rights.  All actions of Defendant, and its agents and employees, herein alleged were

13  known, ratified and approved by the Defendant and its agents and employees.

### REQUEST FOR RELIEF

Plaintiff hereby requests the following relief:

1. Compensatory damages on all causes of action against all Defendants.

2. Punitive damages on the First, Second, Third and Fourth Causes of Action.

3. Attorney's fees and costs pursuant to applicable statute.

4. Costs of suit.

5. Any other relief that this court deems proper.

DATED: February 16, 2010         **DICKSON LEVY VINICK BURRELL HYAMS LLP**

                                 BY:   _/s/ Leslie F. Levy_
                                       LESLIE F. LEVY
                                       Attorneys for Plaintiff

1

## DEMAND FOR JURY TRIAL

2        Plaintiff hereby demands a trial by jury for each and every claim for which she has a right to

3   jury trial.

4   DATED: February 16, 2010              **DICKSON LEVY VINICK BURRELL HYAMS LLP**

5

6

7                                    BY: _____ /s/ Leslie F. Levy _____
                                     LESLIE F. LEVY
8                                    Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "B"

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 555-2009-00419 |

| California Department Of Fair Employment & Housing | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Ani Chopourian | (310) 650-7603 | 04-21-1966 |

| Street Address | City, State and ZIP Code |
|---|---|
| Post Office Box 189446, Sacramento, CA 95818 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| CATHOLIC HEALTHCARE WEST | 500 or More | (916) 453-4545 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 3400 Data Drive,  Rancho Cordova, CA 95670 | | **RECEIVED** |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | **FEB 03 2009** | |

| Street Address | City, State and ZIP Code |
|---|---|
| | **EEOC - OLO** |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 08-01-2006 | 08-07-2008 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired on or about August 1, 2006.  My job title was Surgical Physician Assistant Cardiac Surgery.

Throughout my employment I was subjected to derogatory remarks concerning my race, national origin, and ~~sex~~ *&c.*  Additionally, I was continuously sexually harassed.  The offending persons were various doctors. *&employees*.

Throughout my employment I complained many times of this conduct to my supervisor, Jean Scrafton.  No action was ever taken on any of my complaints.

On more than one occasion, including on or about July 11, 2008, I was falsely accused of a number of allegations.  My complaints of harassment during the accusatory meeting were ignored.

On or about August 7, 2008 I was terminated for failing to appear for work on a Sunday and for not coming to an HR meeting alone, without a representative.  I was not informed that I was scheduled to work on Sunday.

I believe I have been discriminated against because of my race, sex (female), national origin, and in retaliation for engaging in protected activity, in violation of the statute.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| x Feb 3 2009      X _____<br>Date      Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

# EXHIBIT "C"

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**INTAKE QUESTIONNAIRE**

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. Answer all questions as completely as possible and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.

FEB 0.3 2009

**1.   Personal Information**

Last Name: CHOPOURIAN       First Name: ANI       MI:

EEOC-OLO

Street or Mailing Address: PO BOX 189446

City: SACRAMENTO   County:       State: CA   ZIP: 95818

Phone Numbers: Home: (310) 650 7603   Work: ( )

Cell: (310) 650 7603   Email Address: anichopourian@yahoo.com.

Date of Birth: 04-21-66   Sex: Male   Female: ✓   Do You Have a Disability? Yes ☐ No ✓

Please answer each of the next three questions. i. Are you Hispanic or Latino?   Yes ☐   No ✓

ii. What is your Race? Please choose all that apply. ☐ American Indian or Alaska Native   ☐ Asian

☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ✓ White

iii. What is your National Origin? Armenian

Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:

Name: RICHARD PRESS   Relationship: FRIEND

Address: 1831 F. STREET   City: SACRAMENTO   State: CA Zip Code: 95811

Home Phone: (916) 363 3956 Other Phone: (916) 447-3413

I believe that I was discriminated against by the following organization(s): (Check those that apply)

Employer ✓   Union ___   Employment Agency ✓   Other (Please Specify) Supervisors: Jean Scrafton, Rene Dudg Doctor, Frank, Dennytt reps. HR: Bonnie Book, Bill Andersen

**2.   Organization Contact Information**

Organization #1 Name: CHW (Catholic Healthcare West)   Perioperative: Gladys Baaker Surgeons: Frank Slachman, John Dien, Henry Zhu, Mark Taylor

Address: 3400 Data Drive   County:

City: Rancho Cordova   State: Ca   Zip: 95670   Phone: (916) 453 4545 / 453 4553

Type of Business: HOSPITAL   Job Location if different from Org. Address: ① 4001 J St Sacramento Ca 95819 ② 6501 Coyle Ave Carmichael

Human Resources Director or Owner Name: Bonnie Book, Bill Andersen   Phone: Ca 95608

Number of Employees in the Organization at All Locations: Please Check (√) One

Less Than 15 ☐   15 - 100 ☐   101 - 200 ☐   201 - 500 ☐   More 500 ✓

Organization #2 Name:

Address:   County:

City:   State:   Zip:   Phone: ( )

**Type of Business:** _____ **Job Location if different from Org. Address:** _____

**Human Resources Director or Owner Name:** _____ **Phone:** _____

**Number of Employees in the Organization at All Locations: Please Check (√) One**

Less Than 15 ☐   15 - 100 ☐   101 - 200 ☐   201 - 500 ☐   More 500 ☐

3. **Your Employment Data (Complete as many items as you can)**

Date Hired: 8/1/06    Job Title At Hire: *Surgical Physician Assistant Cardiac Surgery.*

Pay Rate When Hired: 52 50    Last or Current Pay Rate: 57.60

Job Title at Time of Alleged Discrimination: *Surgical Physician Assistant Cardiac Surgery.*

Name and Title of Immediate Supervisor: *Jean Scratton & Renee Dodge*

If Applicant, Date You Applied for Job _____ Job Title Applied For

*Jean Scratton was removed from Supervisor position after what she did to me.*
*per chief of Cardiac Surgery*
*Allen Morris.*

4. **What is the reason (basis) for your claim of employment discrimination?**

FOR EXAMPLE, if you are over the age of 40 and feel you were treated worse than younger employees or you have other evidence of discrimination, you should check (√) AGE. If you feel that you were treated worse than those not of your race or you have other evidence of discrimination, you should check (√) RACE. If you feel the adverse treatment was due to multiple reasons, such as your sex, religion and national origin, you should check all three. If you complained about discrimination, participated in someone else's complaint or if you filed a charge of discrimination and a negative action was threatened or taken, you should check (√) RETALIATION.

Race ☒ Sex ☒ Age ☐   Disability ☐   National Origin ☐   Color ☐   Religion ☐   Retaliation ☒ Pregnancy ☐

Other reason (basis) for discrimination (Explain). *Hostile work environment, wrongful termination*
*& retaliation for complaining about work environment*
*& lack of lunch breaks. Harassment.*

5. **What happened to you that you believe was discriminatory?  Include the date(s) of harm, action(s) and include the name(s) and title(s) of the persons who you believe discriminated against you.  (Example: 10/02/06 -**
Written Warning from Supervisor, Mr. John Soto)

A) Date: July 11 2008   Action: *I was called into HR, falsely accused of a # of Allegations*
*During the meeting, my concerns regarding my complaints*
*about the work environment were ignored. They wanted me to sign their document to say*
Name and Title of Person(s) Responsible: *the charges which I refused. I signed a rebuttal statement.*
*Renee Dodge director CVER, Jean Scratton Assistant,*

B) Date: Aug 4 2008   Action: *Boss HR me. Accused falsely again to facilitate termination.*
*Accused of not showing up to work on a Sunday & of not coming to HR meet*
Name and Title of Person(s) Responsible: *without a representative in order to terminate me. One*
*I did not go to this meeting as Sister Claire DalPinto told me not to without her there to*
Describe any other actions you believe were discriminatory: *represent me on Aug 7th because of this & because of the*
*fabrication of document by Jean Scratton*

↳ wrongful termination    *All that was proven in the*
*Fabrication of data to create a*    *EDD Appeal court date where I showed*
*case against me for speeding*    *documents & phone logs showing that*
*out.*    *this was created by Jean Scratton*
*Denial of representation.*    *So she could terminate me.*
*Denial of lunch breaks & breaks*
*Never addressing my complaints but rather retaliating.*

(Attach additional pages if needed to complete your response.)

3

6.  What reason(s) were given to you for the acts you consider discriminatory? By whom? Title?

Supuvisers Renee Dodge & Jean Scrotten & Gladys Banker (heiopue service terminated me for not going to an HR meeting without a representative when I was told by sister Clara Dalton in Admin tration to not go without her presence. I terminated because Jean Scrotten fabricated documents & facts to terminate me.

7.  Name and describe others who were in the same situation as you. Explain any similar or different treatment. Who was treated worse, who was treated better, and who was treated the same? Provide race, sex, age, national origin, religion, and/or disability status of comparator if known and if connected with your claim of discrimination. Add additional sheets if needed.

Full Name                    Job Title                    Description
1. _____
2. _____
3. _____

Answer questions 8-10 only if you are claiming discrimination based on disability. If not, skip to question 11.

8.  Please check all that apply:        ☐  Yes, I have an actual disability
                                         ☐  I have had an actual disability in the past
                                         ☐  No disability but the organization treats me as if I am disabled

9.  If you are alleging discrimination because of your disability, what is the name of your disability? How does your disability affect your daily life or work activities, e.g., what does your disability prevent or limit you from doing, if anything? (Example: lifting, sleeping normally, breathing normally, pulling, walking, climbing, caring for yourself, working, etc.).

10. Did you ask your employer for any assistance or change in working condition because of your disability?

Yes ☐  No ☐

Did you need this assistance or change in working condition in order to do your job?

Yes ☐  No ☐

If "YES", when? _____ To whom did you make the request? Provide full name of person _____ How did you ask (verbally or in writing)? _____

Describe the assistance or change in working condition requested?

4

11. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and indicate what they will say. Add additional pages if necessary.

NAME         JOB TITLE         ADDRESS & PHONE NUMBER

A. Betty Devitt    RN (nurse)      916 - 208 - 3082 (cell)
(no longer works for cttw)      825 Chapel Drive
                                 Vineland New Jersey  08361

NAME         JOB TITLE         ADDRESS & PHONE NUMBER

B. Gordon Poe    CV Tech
(no longer works for cttw)      gordon1poe.@netzero.com

NAME         JOB TITLE         ADDRESS & PHONE NUMBER

C. Frances Earle    RN       (H) 916 - 780 - 6416
                              (cell) 916 - 770 - 9423

12. Have you filed a charge previously in this matter with EEOC or another agency?   Yes ☐   No ☑

13. If you have filed a complaint with another agency, provide name of agency and date of filing:


14. Have you sought help about this situation from a union, an attorney, or any other source?

Yes ☐   No ☑  - If yes, from whom and when?  Provide name of organization, name of person you spoke with and date of contact. Results, if any?




Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.  If you would like to file a charge of job discrimination, you must do so within either 180 or 300 days from the day you knew about the discrimination.  The amount of time you have depends on whether the employer is located in a place where a state or local government agency has laws similar to the EEOC's laws.  If you do not file a charge of discrimination within the time limits, you will lose your rights.  If you want to file a charge, you should check Box 1, below.  If you would like more information before deciding whether to file a charge or you are worried or have concerns about EEOC's notifying the employer, union, or employment agency about your filing a charge, you may wish to check Box 2, below.

Box 1

☒   I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.  I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, or retaliation for opposing discrimination.

Box 2

☐   I want to talk to an EEOC employee before deciding whether to file a charge of discrimination.  I understand that by checking this box, I have not filed a charge with the EEOC.  I also understand that I could lose my rights if I do not file a charge in time.

5

_Signature_                    2 · 3 · 09
                               **Today's Date**

**PRIVACY ACT STATEMENT:** This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:

1. FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08).
2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a)
3. PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. The providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge of discrimination. It is not mandatory that this form be used to provide the requested information.

# EXHIBIT "D"

June 23, 2010, 8:55 AM

Dear Dr. (Jack) Wood, DO, FACEP/Chief of Staff:

RE: MEC decision for clinical privileges /Letter dated June 8,
2010

I was originally going to appeal your denial of privileging.
However, on Monday June 21st, due to my prior termination from
Mercy and the inability to perform my duties at Mercy for Dr.
Kevin Elliott, my job was terminated.

Given the current situation, there is no legitimate reason to appeal
the denial of privileging, and will leave this matter to my legal
team to handle as part of my pending law suit.

This letter was faxed and also e-mailed to Victoria Rivera.


Sincerely,

Ani Chopourian PA-C



005129