1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANI CHOPOURIAN,

11              Plaintiff,                    Civ. No. S-09-2972 KJM KJN

         vs.
12                                            ORDER

13   CATHOLIC HEALTHCARE WEST, et al.,

14              Defendants.

15   _____/

16              On November 8, 2011, the court heard argument on the parties' motions in

17   limine.  Lawrence Bohm and Erika Gaspar appeared for plaintiff; Judith Clark Martin and David

18   Ditora appeared for defendant.  At the court's request, the parties provided additional briefing

19   and information relating to some of the motions.  On December 7, 2011, the court heard

20   argument on defendant's motion in limine number six.  On that date, Lawrence Bohm and Erika

21   Gaspar appeared for plaintiff; David Ditora appeared for defendant.

22   I.  Plaintiff's Motions In Limine

23              The following motions have been decided based upon the record presently before

24   the court. Each ruling is made without prejudice and is subject to proper renewal, in whole or in

25   part, during trial.  If a party wishes to contest a pretrial ruling, it must do so through a proper

26   motion or objection, or otherwise forfeit appeal on such grounds.  *See* Fed. R. Evid. 103(a);

1

*Tennison v. Circus Circus Enters., Inc*., 244 F.3d 684, 689 (9th Cir. 2001) ("Where a district court makes a tentative in limine ruling excluding evidence, the exclusion of that evidence may only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial.") (alteration, citation and quotation omitted). In addition, unless otherwise stated below, challenges to expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) are denied without prejudice. Should a party wish to renew a *Daubert* challenge at trial, it should alert the court, at which point the court may grant limited voir dire the day before such expert may be called to testify.

    A. <u>Plaintiff's Motion In Limine One (</u>ECF No. 112)

        Plaintiff seeks to exclude evidence that she violated medical privacy laws by incorporating patient information into a log book of procedures, event reports, an infection log, and a journal she began to keep shortly before she was terminated.  She also asks to bar any testimony by Doris Frazier, defendant's expert on the Health Insurance Portability Accountability Act (HIPAA), about plaintiff's alleged violations of federal law.  Plaintiff avers she maintained these records in part because of her concerns about patient safety and care and has not disclosed the material except to her lawyers, who in turn provided it to defendant during discovery.  Declaration of Ani Chopourian, ECF No. 113 (Chopourian Decl.) ¶¶ 4-11.  She argues she is protected by the whistleblower provisions of HIPAA, the evidence is not relevant to any issue in the case, and is prejudicial.

        Defendant counters that plaintiff's actions were clear violations of HIPAA and of Mercy General's policies regarding patient information; that she is not entitled to whistleblower protection; and that Frazier is not a HIPAA expert *per se*, but rather an expert on how defendant handles HIPAA issues.  ECF No. 129 at 4-5.  Defendant argues that the information is relevant to its affirmative defenses of "after-acquired" evidence and the right to make business decisions.

        The court does not address defendant's argument about its affirmative defenses here.  Whether defendant may assert this defense is discussed below in connection with

plaintiff's motion in limine eight.  *See* pages 8-9 below.  If there was a violation of patient

privacy, it would be relevant as a defense to plaintiff's claim that defendant interfered with

plaintiff's prospective economic relations.

HIPAA includes privacy provisions that govern the use and disclosure of

protected health information.  *See Webb v. Smart Document Solutions, LLC*., 499 F.3d 1078,

1084 (9th Cir. 2007) (HIPAA emphasizes privacy, efficiency and modernization); 45 C.F.R.

§§160.103 (definitions), 164.502(a) (privacy provision); *see generally* 42 U.S.C. § 1320d-9(b)(3)

(defining HIPAA privacy regulation).  "As a general rule, HIPAA prohibits disclosure of private

medical data.  HIPAA reads, 'Except as otherwise permitted or required by this subchapter, a

covered entity may not use or disclose protected health information without an authorization.

. . .'" *Prescott v. County of Stanislaus*, 2011 WL 2119036, at *3 (E.D. Cal. May 23, 2011)

(quoting 45 C.F.R. 164.508(a)).  Protected information "includes all individually identifiable

health information maintained or transmitted in any form." *McEvoy v. Hillsborough County*,

2011 WL 1813014, at *6 (D. N.H.  May 5, 2011).  "Disclosure means the release, transfer,

provision of, access to or divulging in any other manner of information outside the entity holding

the information," while "use means, with respect to individually identifiable health information,

the sharing, employment, application, utilization, examination, or analysis of such information

within an entity that maintains such information."  45 CFR § 160.103.  Under HIPAA's privacy

provisions, a covered entity may use or disclose protected information to the individual and in a

few other defined situations.  45 CFR § 164.502(a)(1).

The regulations include a whistleblower provision: "a covered entity is not

considered to have violated the requirements of this subpart if a member of its workforce

disclosed protected health information" in the belief that the entity's conduct "violates

professional or clinical standards" or that the care provided by the covered entity "potentially

endangers one or more patients" and the disclosure is made to a health oversight agency or "to

/////

1 | an attorney retained by . . .the workforce member . . .for purposes of determining the legal

2 | options with regard to the conduct described" in that subdivision.  45 CFR § 164.502(j).

3 |          Given the dearth of authority presented by either party, the court declines on the

4 | current record to determine whether plaintiff's transfer of patient information into her journal

5 | and reports constitutes use or disclosure of protected information.  *But see Vaughn v. Epworth*

6 | *Villa*, 537 F.3d 1147, 1153 n.4 (10th Cir. 2008), *cert. denied*, 129 S.Ct. 1528 (2009).   It

7 | similarly declines to decide whether plaintiff is entitled to claim the protection of the

8 | whistleblower provisions on these facts.  The court will allow defendant to present evidence that

9 | plaintiff incorporated patient information into her journal and reports and then removed those

10 | documents from Mercy General, and that these actions violated defendant's policies regarding

11 | patient confidentiality and information.  This evidence does not create a risk of unfair prejudice

12 | nor will it confuse the jury by forays into HIPAA regulations.  *See United States v. Hankey*, 203

13 | F.3d 1160, 1172 (9th Cir. 2000) ("[r]elevant evidence is inherently prejudicial; but it is only

14 | unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant

15 | matter under Rule 403. . . . [T]he use of Rule 403 must be cautious and sparing.").

16 |          B.  Plaintiff's Motion In Limine Two (ECF No. 109)

17 |          Plaintiff seeks to exclude any evidence regarding a meal break waiver that she

18 | purportedly signed.  Defendant argues it could not locate the signed waiver, but offers a blank

19 | form and deposition testimony suggesting that plaintiff must have signed such a waiver.

20 | Defendant has not established a sufficient foundation for the admission of any blank waiver form

21 | or for any testimony that plaintiff signed such a waiver.  *See Burrows v. Orchid Island Trs., LLC*.

22 | 2010 WL 2179108, at *2 (S.D. Cal. May 28, 2010).

23 |          C.  Plaintiff's Motion In Limine Three (ECF No. 103)

24 |          Plaintiff seeks to bar admission of any evidence that she made claims of sexual

25 | harassment against Kaiser, a former employer; filed a lawsuit against Kaiser alleging wrongful

26 | termination; or that she lied about why she left Kaiser.  Defendant argues that if plaintiff was

1  disciplined at and terminated from Kaiser, as she claimed in an unidentified lawsuit, she should

2  have included this information on her application to Mercy.

3         Under Rule 404(a) of the Federal Rules of Evidence, character evidence is not

4  admissible to prove action in conformity with the character trait unless it is relevant to show

5  something other than propensity.  Generally, evidence of prior lawsuits is excluded under Rule

6  404(a) because it shows a propensity to sue.  *Rodriguez v. Chertoff*, 2008 WL 4693395, at *3 (D.

7  Ariz. Oct. 22, 2008) (evidence of prior complaint not admissible to show that plaintiff was

8  hyper-sensitive individual; defendant did not bear burden of showing sufficient similarity to

9  instant suit to support permissible purpose).

10         Citing to *Gastineau v. Fleet Mortgage*, 137 F.3d 490 (7th Cir. 1998), defendant

11  argues that the evidence of a prior lawsuit demonstrates a modus operandi, specifically, that

12  plaintiff claims she is subject to discriminatory conduct "when things don't go her way."  ECF

13  No. 128 at 5.  In *Gastineau*, however, the defendant presented very specific information that the

14  plaintiff, who claimed sexual harassment, had presented a forged document in a prior suit, also

15  claiming sexual harassment, similar to the forged document presented in the current suit.  In this

16  case, defendant has presented absolutely no information about the prior lawsuit and so has not

17  shown that it fits within one of the permissible purposes under Rule 404(b).

18         Defendant also claims that the suit alleging termination is also part of its

19  affirmative defense of after-acquired evidence.  As noted above, the court will address the

20  defense of after acquired evidence below.

21       D.  <u>Plaintiff's Motion In Limine Four</u> (ECF No. 120)

22         Plaintiff seeks to exclude evidence of her "private life," claiming there is little

23  evidence that she shared details of her sex life at work and that, even if she did, such evidence is

24  presumptively inadmissible.  *See* Fed. R. Evid. 412.  Defendant argues that the evidence is

25  admissible to rebut plaintiff's hostile work environment showing, but concedes that such

26  evidence is subject to Rule 412, which restricts the admission of evidence of an alleged victim's

1    sexual behavior or predisposition in civil and criminal cases.  *See B.K.B. v. Maui Police*

2    *Department*, 276 F.3d 1091, 1104 (9th Cir. 2002).  Defendant said it will file a Rule 412 motion

3    within two weeks of trial.

4            E.  Plaintiff's Motion In Limine Five (ECF No. 108)

5            Plaintiff seeks to exclude the testimony of David Moore, a forensic document

6    examiner, who reviewed plaintiff's journals and drew several conclusions about the entries.

7    Because the court does not have sufficient information to determine whether Moore's testimony

8    addresses those portions of the journals the court finds relevant, *see* pages 12-13 below, the court

9    grants the motion without prejudice to defendant's right to offer Moore as a witness, after

10   alerting court and counsel in sufficient time to allow for voir dire outside the jury's presence.

11           F.  Plaintiff's Motion In Limine Six (ECF No. 110)

12           Plaintiff seeks to exclude evidence she claims was not timely disclosed, including

13   materials from her personnel files from earlier employment, slides from a HIPAA training

14   session, and the files created when she sought privileges at two Mercy facilities after her

15   termination.  She argues that had she been given all the privileging files before her deposition of

16   the person most knowledgeable about the privileging, she would have conducted the deposition

17   differently and that she would have deposed additional people who provided information to the

18   committee.  She also argues she would have conducted additional depositions about the HIPAA

19   training.

20           The motion is denied as to the personnel materials defendant obtained by

21   subpoena.  *SEC v. Strauss*, 2009 WL 3459204, at *11 (S.D.N.Y. Oct. 28, 2009) (party has an

22   obligation to obtain materials from third parties on his own, even if it requires a subpoena).  It is

23   also denied as to the HIPAA training slides, to the extent they may remain relevant after the

24   court's ultimate ruling on the entirety of plaintiff's motion in limine one.

25           As to the privileging files, the record shows that in plaintiff's March 2011

26   requests for documents, she asked for "any and all documents created after Plaintiff's

termination regarding plaintiff" and "any and all documents regarding Plaintiff's attempt to be

recertified after her termination."  It appears that in June 2011, shortly before the discovery

cutoff, she requested "the contents of any file maintained in conjunction with the clinical

privileges of Plaintiff including but not limited to applications for privileges, notification of

denial of privileges, and MEC's decision regarding privileging."  ECF No. 110 at 2-3; ECF No.

146 at 10-15; *compare* ECF No. 122 at 2.  In response to some of these requests, defendant

asserted that the documents had been provided.  ECF No. 146 at 11.  On July 29, defendant

wrote to plaintiff, noting it had believed that all of plaintiff's privileging files had been

consolidated, but that it had learned the day before that there were four separate files, which it

hoped to provide shortly.  *Id*. at 17.  It offered to postpone the scheduled deposition of Donna

Sakach, the person most knowledgeable about the privileging process.  *Id*. at 18.  It ultimately

provided the files to plaintiff on August 26, 2011, after discovery in this case had closed.  *Id*. at

20; *see* ECF No. 58 (ordering all depositions to be completed by August 5, 2011).

Under Rule 26(e)(1)(A) of the Federal Rules of Civil Procedure, a party must

supplement or correct a discovery response if it learns that the disclosure or response was

incorrect or incomplete.  If a party fails to provide information under Rule 26(e), the court may

prevent the party from using that information or impose other sanctions "unless the failure was

substantially justified or is harmless."

Although plaintiff's more specific request for the privileging files may have come

close to the end of discovery, plaintiff earlier asked for "any and all documents created after

Plaintiff's termination regarding Plaintiff."  Defendant objected that the request was overbroad,

but also responded that the material had previously been produced.  ECF No. 146 at 11.

Defendant does not now identify the documents it earlier produced or suggest that the request

was too obscure for it to determine that the privileging files were covered.  Defendant has not

shown that its failure to timely supplement the discovery was "substantially justified."

/////

1    The court does not enter a preclusion order lightly, but on the current record

2 defendant has not made an adequate showing of harmlessness. *See United States v. Sumitomo*

3 *Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365, 1369 (9th Cir. 1980); *Churchill v. U.S.*, 2011 WL

4 444849, at *5 (E.D. Cal. Feb. 8, 2011) (a party may avoid exclusion if it shows that the untimely

5 disclosure was harmless; several factors should be considered: (1) prejudice or surprise to the

6 party against whom the evidence is offered; (2) ability of the party to cure the prejudice; (3)

7 likelihood of disruption of the trial; (4) bad faith or willfulness in failing to disclose). The court

8 grants the motion to exclude the privileging files.

9    G.  Plaintiff's Motion In Limine Seven (ECF No. 105)

10    Plaintiff seeks to preclude defendant from offering "cumulative witnesses,"

11 particularly others who worked in the cardiac unit where plaintiff was employed. Defendant

12 counters that it should be able to present witnesses who can describe the work atmosphere as part

13 of its showing that a reasonable person would not have been offended. *See, e.g., Brooks v. City*

14 *of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (abusiveness and pervasiveness must be

15 objectively and subjectively apparent). This motion will be denied, subject to focused objections

16 at trial.

17    H.  Plaintiff's Motion In Limine Eight (ECF No. 106)

18    Plaintiff argues that defendant should not be able to amend its answer to include

19 the defense of after-acquired evidence. Defendant says its answer includes this defense, even

20 though it did not use the term "after-acquired evidence," because it alleges "the termination of

21 plaintiff was justifiable, and within the terms and conditions of the contract of employment

22 between the parties" and "plaintiff was guilty of willful misconduct about matters referred to in

23 the Second Amended Complaint, and that such willful misconduct on the part of plaintiff

24 proximately or concurrently contributed to the happening of the loss or damage complained of

25 by plaintiff. . . ." ECF No. 23 at 16 ¶¶ 23, 24.

26 /////

1          In *McKennon v. Nashville Banner Publishing Co*., 513 U.S. 352 (1995), a

2    wrongful discharge case, the employer learned during discovery that plaintiff had violated

3    company policy and so argued that plaintiff could not prevail on her discrimination claim

4    because she would have been discharged had the company been aware of her misconduct.   The

5    Supreme Court said that "the employer could not have been motivated by knowledge it did not

6    have and it cannot now claim that the employee was fired for the non-discriminatory reason."

7    *Id*. at 359.  It recognized, however, that evidence of the employee's wrong-doing was

8    nevertheless relevant and "bears on the specific remedy to be ordered."  *Id*. at 361.  "Where an

9    employer seeks to rely on after-acquired evidence of wrongdoing, it must first establish that the

10   wrongdoing was of such severity that the employee would have been terminated on those

11   grounds alone if the employer had known of it at the time of the discharge."  *Id*. at 362-63.

12          Cases discussing the defense suggest it should be specially pleaded.  *See, e.g.,*

13   *Red Deer v. Cherokee County, Iowa*, 183 F.R.D. 642, 653 (N.D. Iowa 1999) (after-acquired

14   evidence is affirmative defense which must be pleaded);  *Doyle v. Gonzales*, 2011 WL 2607167,

15   at *1 (E.D. Wash. July 1, 2011) (defendant sought permission to amend answer to include

16   affirmative defense of after acquired evidence); *Stubbs v. Regents of University of California*,

17   2007 WL 1532148, at *8 (E.D. Cal. May 25, 2007) (defense must be pleaded).

18          The court's pretrial scheduling order set a deadline of June 2010 for amendments

19   to pleadings, noting that any attempt to amend after that date must rest on a showing of good

20   cause.   ECF No. 20 at 1.

21          Under Rule 16(b) of the Federal Rules of Civil Procedure, a pretrial scheduling

22   order shall not be modified except upon a showing of good cause.  *Johnson v. Mammoth*

23   *Recreations, Inc*., 975 F.2d 604, 607-08 (9th Cir. 1992).  Only if the court determines that the

24   party seeking amendment has shown good cause will it consider whether amendment is

25   appropriate under Rule 15.  *Id*. at 608; *Hood v. Hartford Life and Accident Ins. Co*., 567

26   F.Supp.2d 1221, 1224 (E.D. Cal. 2008).  In *Johnson,* the Ninth Circuit described Rule 16(b)'s

9

good cause standard as focusing on "the diligence of the party seeking the amendment."  It

recognized that while "the existence or degree of prejudice to the party opposing the

modification might supply additional reasons to deny a motion, the focus is upon the moving

party's reasons . . .  If that party was not diligent, the inquiry should end." *Id.* at 609 (citation

omitted); *see also Ultimax Cement Manufacturing Corp. v. CTS Cement Manufacturing*, 587

F.3d 1339, 1354 (9th Cir. 2010) ("'good cause' has been defeated by undue delay in moving to

amend . . .").  In this case, it appears defendant learned that plaintiff had used patient information

in her journals during her deposition in March 2010.  It has not demonstrated that it acted with

diligence in seeking to amend.

      I.  <u>Plaintiff's Motion In Limine Nine</u> (ECF No. 107)

Plaintiff seeks a more complete description of defendant's trial exhibits.   This

should be resolved by the parties' exchange of exhibits twenty eight days before trial.

      J.  <u>Plaintiff's Motion In Limine Ten</u> (ECF No. 111)

Plaintiff seeks to use portions of videotaped depositions during opening statement

and to use still pictures from the videos for illustrative purposes, as well as pictures from the

cardiac unit at Mercy General and timelines and other demonstrative evidence.

The parties are directed to select still pictures of witnesses to be used at trial,

which will be added to the binders the court provides to jurors.  Plaintiff will not be allowed to

use deposition testimony in any form during opening statement, *Carpenter v. Forest Meadows*

*Owners Ass'n.*, 2011 WL 3207778, at *7 (E.D. Cal. July 27, 2011), but may use pictures from

the cardiac unit and a timeline so long as she has provided copies of what she intends to use

during the exchange of exhibits, and subject to any objections by defendant made prior to

opening.

/////

/////

/////

10

II.  Defendant's Motions In Limine

    A.  Defendant's Motion In Limine One (ECF No. 75)

        Defendant seeks to exclude a number of "event reports" prepared by plaintiff, arguing that they are hearsay.  It argues that only two such reports were included in its computerized event reporting system (IVOS) and so, absent evidence that the additional reports were submitted to supervisors, the additional reports cannot constitute verbal acts.  Defendant concedes that it provided these reports to plaintiff in discovery, but contends that this was inadvertent, as it had originally received the forms from plaintiff's former counsel, as shown by the Bates stamps.  It also argues that plaintiff acknowledges she did not submit all the reports to her supervisors.

        Plaintiff counters that defendant has not shown that the reports were not entered into the computerized system or that they originally came from plaintiff's counsel.

        Defendant has not established a sufficient foundation for the court to conclude that plaintiff's handwritten reports would not necessarily have been transferred to defendant's computerized system: it has offered only the declaration of its counsel, who does not demonstrate first hand familiarity with the system.  In light of plaintiff's reliance on portions of Doris Frazier's deposition showing the inadequacies of the system's search function and the limitations of the actual searches run, it is possible that these reports were made a part of the reporting system.  *Compare United States v. Diaz-Lopez*, 625 F.3d 1198, 1200 (9th Cir. 2010), *cert. denied*, 131 U.S. 2918 (2011) (foundation for evidence of database search sufficient when agent testified he was familiar with the process of searching the records and the government's record keeping practices).  Any complaints entered into the system are verbal acts and as such are not hearsay.  *United States v. Faulkner*, 439 F.3d 1221, 1226 (10th Cir. 2006) (verbal acts, which are statements themselves affecting the rights of the parties or are circumstances affecting their rights).

/////

Similarly, defendant has not shown that it received the documents exclusively from plaintiff's counsel.  That plaintiff's counsel provided the documents as part of its initial disclosures does not preclude the fact that plaintiff may have submitted them to defendant's personnel office as well and kept copies.

To the extent plaintiff agrees she did not provide the reports to a supervisor or to Human Resources, defendant's objection is well-taken.  However, defendant relies on portions of plaintiff's deposition that do not definitively show plaintiff's failure to give certain reports to her supervisors.  *See, e.g.,* ECF No. 75-1 at 44 (plaintiff assumes she did not give particular report to medical staffing, but doesn't address whether she sent it to Human Resources).  At the same time, plaintiff does clearly admit she did not submit the following reports to Human Resources or to a supervisor:  a report dated April 8, 2007, Bates-stamped P000183; a report dated May 2007, Bates-stamped P000184; a report dated July 11, 2007, Bates-stamped P000185-187; a report dated August 10, 2007, Bates-stamped P000188; and an undated report, Bates-stamped P000222-P000223.  Defendant's motion with respect to these five reports is well taken.  This ruling does not preclude plaintiff from offering evidence of verbal complaints and from using these reports to refresh her recollection, if the proper foundation is laid.  *See* ECF No. 75-1 at 43 (whenever plaintiff documented an incident in writing, she told Jean about it).

B.  Defendant's Motion In Limine Two (ECF No. 86)

Defendant asks the court to exclude plaintiff's journals and case logs that she began to keep approximately a month before her termination.  At the hearing on these motions, defendant withdrew its objection to those portions of the journals referring to patient safety, but argued that the sections dealing with affairs between employees and incidents of female employees fondling male employees and physicians at the hospital are not relevant.  Defendant also seeks to exclude plaintiff's written comments about her supervisor's alcoholism and drinking on the job.  It argues that the documents are hearsay, not relevant, and prejudicial.  Plaintiff contends they are admissible as verbal acts, because they prompted defendant to

retaliate by denying her privileges when the documents were produced.  Plaintiff also argues the documents may be used for a variety of non-hearsay uses.

Hearsay is an out of court statement offered to prove the truth of that statement. FED. R. EVID. 801(c).  However, if the significance of the statement is the fact that it was made, rather than its truth, the statement is not hearsay.  *Stuart v. UNUM Life Ins. Co. of America*, 217 F.3d 1145, 1154 (9th Cir. 2000) (admission of group insurance policy); *United States v. Henderson*, 626 F.3d 326, 333-34 (6th Cir. 2010) (victim's offer to help FBI not admissible to show his information was truthful, but rather to show why defendant retaliated against him). Defendant concedes that plaintiff told her supervisors and HR representatives that she was recounting incidents of harassment in her journal, but notes she refused to produce the journal until her deposition.  ECF No. 86 at 2.  Plaintiff theorizes that defendant denied her privileges based on the production of the journal and thus argues its existence and production shows the denial of privileges was part of the Title VII retaliation.

Under Title VII, an employer may not take an adverse employment action against an employee for participating in any investigation of or opposing any practice made illegal by Title VII.  *Surrell v. California Water Service Co.*, 518 F.3d 1097, 1107 (9th Cir. 2008);  *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996).  Action taken after the end of the employment relationship may still constitute retaliation if it "'is related to or arises out of the employment relationship.'"  *Hashimoto v. Dalton*, 118 F.3d 671, 675 (9th Cir. 1997) (quoting *Passer v. American Chemical Soc.*, 935 F.2d 322, 330 (D.C. Cir. 1991)) (dissemination of negative employment reference); *Pieszak v. Glendale Adventist Medical Center*, 112 F.Supp.2d 970, 994 (C.D. Cal. 2000) (failure to forward documents to Medical Board).  To the extent that the journal records instances of sex-based talk or employee sexual relationships, it may be deemed relevant to plaintiff's claim of a hostile work environment.  *See Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 332 (4th Cir. 2003) (discussion of sexual exploits); *Barclay v. Mercy Health Services-Iowa*, 2009 WL 2462296, at *12 (N.D. Iowa Aug. 12, 2009)

1   (sexual discussion condoned by management).  Its production during discovery may be deemed

2   protected activity, which renders the keeping of the journal a verbal act.  *Compare Glover v.*

3   *South Carolina Law Enforcement Div.,* 170 F.3d 411, 413 (4th Cir. 1999).   Plaintiff's

4   description of her supervisor's drinking, however, has no relationship to any Title VII claim and

5   therefore would not be admissible.

6           C.  Defendant's Motion In Limine Three (ECF No. 79)

7                   Defendant seeks to exclude any findings issued by the Administrative Law Judge

8   (ALJ) who presided over a hearing related to plaintiff's claim for unemployment benefits.

9   Plaintiff says she does not intend to offer the findings, but rather may seek to use some of the

10  documents or testimony from the hearing to impeach defendant's witnesses.  Defendant counters

11  that the impeachment would be improper because there is no transcript of the proceedings.

12  Defendant also says the nature of the hearing should not be disclosed, but has not clearly

13  explained how it would be prejudiced by the jury's learning of this.  *See Hankey*, 203 F.3d at

14  1172.

15                  To the extent this motion is based on the ALJ's findings, it is granted; to the

16  extent it is based on potential impeachment, the court cannot resolve it in a vacuum and will rely

17  on the parties to make appropriate objections at trial.

18          D.  Defendant's Motion In Limine Four (ECF No. 80).

19                  This unopposed motion to redact patient information from trial exhibits is

20  granted.

21          E.  Defendant's Motion In Limine Five (ECF No. 81)

22                  This motion to bifurcate the trial on punitive damages is denied.

23          F.  Defendant's Motion In Limine Six (ECF No. 82)

24                  Defendant seeks an order "precluding plaintiff from presenting any evidence on

25  claims that were not included in her administrative complaint to the EEOC.  This includes claims

26  of retaliation, claims related to patient care, and specific evidence irrelevant to the vague factual

1  allegations in her administrative EEOC complaint."  ECF No. 82 at 1.  The exhaustion

2  requirement applies to plaintiff's Title VII claims only; whether or not her complaints about

3  meal and rest breaks or patient care were included is not relevant as her state causes of action are

4  not subject to the EEOC's jurisdiction.

5          As more fully discussed below, this motion is not properly brought in limine.

6  Nevertheless, because of its jurisdictional implications, the court requested further briefing.

7          The Supreme Court has held "that filing a timely charge of discrimination with

8  the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a

9  statute of limitations, is subject to waiver, estoppel, and equitable tolling."  *Zipes v. TransWorld*

10  *Airlines, Inc*., 455 U.S. 385, 393 (1982).  Despite this language, the Ninth Circuit maintains that

11  "[t]o establish federal subject matter jurisdiction, [plaintiff] was required to exhaust her EEOC

12  administrative remedies before seeking federal adjudication of her claims."  *EEOC v. Farmer*

13  *Bros. Inc*., 31 F.3d 891, 899 (9th Cir. 1994).  The Ninth Circuit acknowledges *Zipes*, recognizes

14  that some of its own cases have found the exhaustion requirement to be a condition precedent

15  rather than jurisdictional, but says "our case  law also holds that substantial compliance with the

16  presentment of discrimination complaints to an appropriate administrative agency *is* a

17  jurisdictional requisite."  *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001)

18  (emphasis in original).  Other authority differentiates between the timeliness, which is subject to

19  waiver, estoppel and equitable tolling, and the ultimate filing.  *Surrell v. California Water*

20  *Service Co*., 518 F.3d at 1104 ("Title VII's timeliness provision is entirely separate from Title

21  VII's jurisdictional provisions and 'does not speak in jurisdictional terms or refer in any way to

22  the jurisdiction of the district courts.'"); *EEOC v. Hotspur Resorts Nevada, Ltd*., 2011 WL

23  4737409, at *2 (D. Nev. Oct. 5, 2011) (filing an EEOC complaint is jurisdictional, but the timely

24  filing is not).

25          "Subject matter jurisdiction extends to all claims of discrimination that fall within

26  the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be

expected to grow out of the charge." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003).  To determine what is related, a court must consider "'the alleged basis of the discrimination, dates of discriminatory acts specified with the charge, perpetrators of the discrimination named in the charge, and any locations at which the discrimination is alleged to have occurred.'" *Id.* at 644.  A court may also consider the EEOC intake questionnaire in determining what was exhausted.  *B.K.B. v. Maui Police Dept.*, 276 F.3d at 1101.  This court must construe the language of the EEOC charges liberally in determining their scope.  *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir. 2002).

The exhaustion requirement is not rigid, however, for  "[e]ven when an employee seeks judicial relief for claims not listed in the original EEOC charge, the complaint 'nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge.'" *Freeman v. Oakland Unified School District*, 291 F.3d 632, 636 (9th Cir. 2002) (quoting *Oubichon v. North Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973)).  The Ninth Circuit has also said that "subject matter jurisdiction extends over allegations of discrimination that either 'fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.'" *Id.* (quoting *B.K.B. v. Maui Police Dept.*, 276 F.3d at 1100 (emphasis in original)).

In her EEOC complaint filed in February 2009, plaintiff said "throughout my employment I was subjected to derogatory remarks concerning my . . . sex.  Additionally, I was continuously sexually harassed.  The offending persons were various doctors & employees." ECF No. 82-1 at 4.  She also said she was falsely accused of several things and terminated for not reporting for work on a Sunday when she had not been scheduled.  Finally, she said "I believe I have been discriminated against because of my . . . sex (female), . . . and in retaliation for engaging in protected activity . . . ." *Id.*   On the questionnaire, she answered the question "I believe that I was discriminated against by the following organization(s)," by checking the box
/////

1 "employer" and then by listing a number of individuals, but not Dr. Kaplon, who is mentioned in

2 the Second Amended Complaint.

3        On this record, the court cannot say plaintiff failed to exhaust her hostile work

4 environment claim.  The Second Amended Complaint alleges that plaintiff was "subjected to a

5 hostile work environment in which sexual comments and jokes were made, gender-based

6 comments permeated the workplace . . . often at the expense of Plaintiff who found the

7 atmosphere to be both offensive and demeaning."  ECF No. 19 ¶ 41.  It also alleges that

8 "Plaintiff repeatedly complained about the comments of the surgeons and coworkers as well as

9 their behavior" and "about Defendants' failure and refusal to take action and address and remedy

10 hostile work environment," but that defendant responded by retaliating against her in many

11 ways.  *Id*. ¶¶ 54-57.  These claims are encompassed within her EEOC complaint and intake

12 questionnaire: plaintiff alleges she was sexually harassed and subjected by derogatory comments

13 by "various doctors and employees," facts which are related to the claims in the SAC and which

14 would have been uncovered by a reasonable investigation.  *See Vasquez v. County of Los*

15 *Angeles*, 349 F.3d at 645.  Similarly, in her intake questionnaire, plaintiff says she believes she

16 was retaliated against for complaining about the work environment.  ECF No. 139 at 5.  The

17 retaliation claims in the SAC are consonant with this allegation.

18        The court declines to decide at this time whether the 2010 denial of privileges as

19 retaliation for plaintiff's production of her journal is reasonably related to the 2009 EEOC

20 complaint.[1]  The evidence concerning the denial of privileges is admissible in connection with

21 plaintiff's claim of interference with prospective economic relations; the court will reevaluate the

22 connection if necessary during trial.  *See Chung v. Pomona Valley Community Hospital*, 667

23 F.2d 788, 792 (9th Cir. 1982).

24 /////

25

26        [1] A right to sue letter was issued on March 27, 2009.  ECF No. 82-1 at 6.

G.  <u>Defendant's Motion In Limine Seven</u> (ECF No. 83)

Defendant asks the court to dismiss plaintiff's eighth cause of action, interference with economic relations stemming from defendant's denial of plaintiff's application for hospital privileges, because plaintiff failed to exhaust internal remedies.  Plaintiff complains that this also is a substantive motion, not properly raised as a motion in limine and argues that the denial of privileges is relevant not only to her eighth cause of action, but also to her claim of retaliation.

Plaintiff is correct that this is a substantive motion, not properly raised at this stage.  Defendant's reliance on the pretrial scheduling order is unavailing: in that order, the court said that "non-trial worthy issues could be eliminated *sua sponte* '[i]f the pretrial conference discloses that no material facts are in dispute and that the undisputed facts entitle one of the parties to judgment as a matter of law."  ECF No. 20 at 2.  This motion presents no clear set of undisputed facts.  Indeed, the motion is, as plaintiff argues, a substantive motion disguised as a motion in limine, which the court "may . . . summarily deny."  *Id*.

The motion also fails on its merits.  In California, a medical professional may seek damages for the withdrawal or denial of privileges only after she has exhausted the hospital's internal review procedure and has been successful in a mandamus action in setting aside the denial.  *Westlake v. Community Hospital v. Superior Court*, 17 Cal.3d 465, 468 (1976).  It is defendant's burden to show an adequate remedy was available to plaintiff.  *Id*. at 477.  An adequate procedure must provide a right to be heard and a decision rendered through a fair and sufficient process.  *Payne v. Anaheim Memorial Hospital*, 130 Cal.App.4th 729, 739-40 (2005).

Defendant has provided a copy of a letter from a Dr. Wood, denying plaintiff's application for privileges, advising plaintiff she had a right "under the Medical Staff Rules and Regulations to challenge the MEC's recommendation by requesting a review."  ECF No. 83-1 at 22.  It continued, "to exercise this right, you must file a written grievance (i.e., a letter objecting to the recommended action and requesting an interview) with the MEC . . . ."  *Id*.

> If you do submit a grievance, the MEC . . . shall conduct an interview.   The purpose of the interview is to allow both you and the MEC the opportunity to discuss the situation and to produce evidence in support of their respective positions.  At the direction of the MEC, you will be given an opportunity to submit information to the MEC. . . prior to or at the time of the interview.
>
> Please note that any meeting requested by you does not constitute a hearing under Article VII of the Medical Staff Bylaws and the procedural rules therein do not apply.

ECF No. 83-1 at 22-23.  The letter said it enclosed a different provision of the bylaws, which defendant has not provided here.  This letter is insufficient to show that an adequate remedy was available for plaintiff to appeal the denial of privileges.  Defendant has not borne its burden.

   H.  Defendant's Motion In Limine Eight (ECF No. 84)

      Defendant claims that plaintiff is estopped from pursuing her causes of action for interference with economic advantage and defamation because, during settlement and again during the preparation of the pretrial statement, she said she might drop these claims.  As defendant has made no showing of prejudice, this motion is denied.

   I.  Defendant's Motion In Limine Nine (ECF No. 85)

      Defendant seeks to preclude plaintiff from presenting evidence that she was not provided adequate meal and rest breaks, arguing that plaintiff is exempt from this requirement under California Labor Code §512(b) and 5 California Code of Regulations § 11040.  Plaintiff counters that this, too, is a substantive motion and offers a copy of a letter to plaintiff classifying her as non-exempt.  ECF No. 131 at 9, 14.

      Defendant has not shown that the facts on this issue are undisputed: plaintiff's submission raises a triable issue about plaintiff's status.  The court declines to resolve this substantive dispute disguised as an evidentiary motion prior to trial.

   J.  Defendant's Motion In Limine 10 (ECF No. 100)

      Defendant objects to plaintiff's numerous designations of portions of videotaped depositions she seeks to present at trial.  In response, plaintiff agrees she will not present

testimony from several of the witnesses and argues that the portions she still seeks to present are statements of a party opponent under Rule 801(d)(2) of the Federal Rules of Evidence.   Without seeing the portions she seeks to offer, however, the court cannot determine whether the witness was in fact acting in a representative capacity.

The parties are directed to provide the portions of the depositions they seek to offer, with the requested portions highlighted and the counter designations highlighted in a different color, accompanied by objections, by **January 9, 2012.**

K.  Defendant's Motion In Limine 11 (ECF No. 101)

Defendant seeks to exclude testimony from other employees who believe plaintiff's termination was wrong.  This is denied without prejudice to renewal by specific objection at trial.

L.  Defendant's Motion In Limine 12 (ECF No. 102)

Defendant seeks to preclude plaintiff from presenting evidence of wage loss after August 31, 2009, when she was hired by RAS.  It continues that even though plaintiff lost that job in June 2010, almost certainly as the result of the denial of privileges at Mercy General and Mercy San Juan, she failed to pursue internal remedies.  As noted above, in connection with defendant's motion in limine seven, defendant has not borne its burden of showing that any adequate remedies were available, so to the extent this motion is based on a failure to exhaust, it is denied.

Defendant also cites *Stanchfield v. Hamer Toyota, Inc*., 37 Cal.App.4th 1495, 1502 (1995).  In that case, the court examined the duty to mitigate damages "in the context of a discharged employee who, after finding and accepting comparable employment, loses the position because of his or her own conduct"; it concluded that a jury considering the discharged employee's duty to mitigate damages "may properly take into account that employee's failure to retain comparable employment once it has been secured."  *Id*.  Defendant argues that *Stanchfield* supports an order limiting plaintiff's ability to present evidence of wage loss.  Plaintiff counters

that the denial of privileges, which led to her termination from RAS, was part of defendant's continued retaliation against her.  The court declines to resolve the disputed evidence on the question of plaintiff's failure to mitigate on a motion in limine, but will instead leave the resolution of the question to the jury.  *Carpenter v. Forest Meadows Owners Ass'n.*, 2011 WL 3207778, at *10 (E.D. Cal. July 27, 2011).

III.  The Order To Show Cause

On November 10, 2011, the court issued an order, directing defendant's counsel Judith Martin to show cause why she should not be sanctioned for filing motions in limine 3, 7 and portions of 12, which are substantive motions as noted above.  ECF No. 145.  Ms. Martin has responded that she did not act in bad faith, but rather filed the motions because she believed they raised valid evidentiary issues.

A motion in limine should not be used to prevent a party from pursuing the theories supporting its causes of action.  *ABC Beverage Corp. & Subsidiaries v. United States*, 2008 WL 5424174, at *2 (W.D. Mich. Dec. 4, 2008).  Another court has rejected the use of such motions as "preemptive weapons. . . which . . . endeavor to strike in shotgun fashion at whole topics and sources of prospective evidence . . ." and, as such, "would effectively serve as a form of advance trial of substantive portions of the case, or indeed as a substitute for the trial itself."  *TVT Records v. Island Def Jam Music Group*, 250 F.Supp.2d 341, 344 (S.D.N.Y. 2003).  Although counsel should be aware of this body of law, this court acknowledges that the pretrial scheduling order does not unmistakably preclude the filing of such broad motions; it warns only that substantive motions disguised as motions in limine may be summarily denied.  After careful consideration, the court therefore concludes that Ms. Martin did not act in bad faith, vexatiously, wantonly, or for oppressive reasons.  *See Chambers v. NASCO, Inc*, 501 U.S. 32, 44 (1991).

/////

/////

/////

IT IS THEREFORE ORDERED that:

1.  Plaintiff's motion in limine one (ECF No. 112) is denied in part and granted in part, with the limitations on permissible evidence identified in the body of this order, with further resolution of this motion deferred until trial;

2.  Plaintiff's motion in limine two (ECF No. 109) is granted, based on the record before the court;

3.  Plaintiff's motion in limine three (ECF No. 103) is granted, based on the record before the court;

4.  Plaintiff's motion in limine four (ECF No. 104) is granted, without prejudice to defendant's filing a motion under Rule 412 of the Federal Rules of Evidence;

5.  Plaintiff's motion in limine five (ECF No. 108) is granted without prejudice to defendants offering Moore for voir dire prior to his being called to testify at trial;

6.  Plaintiff's motion in limine six (ECF No. 110) is granted, based on the record before the court;

7.  Plaintiff's motion in limine seven (ECF No. 105) is denied without prejudice;

8.  Plaintiff's motion in limine eight (ECF No. 106) is granted;

9.  Plaintiff's motion in limine nine (ECF No. 107) is denied without prejudice pending the parties' exchange of exhibits;

10.  Plaintiff's motion in limine ten (ECF No. 111) is denied insofar as plaintiff seeks to use portions of depositions in opening statement but granted in other respects, subject to the parties' agreement, as discussed in the body of this order;

11.  Defendant's motion in limine one (ECF No. 75) is granted in part and denied in part, as discussed in the body of this order;

12.  Defendant's motion in limine two (ECF No. 86) is granted as to plaintiff's written comments about her supervisor's alcoholism and drinking on the job, and otherwise denied, based on the record before the court;

13.  Defendant's motion in limine three (ECF No. 79) is granted in part and denied in part, as discussed in the body of the order;

14.  Defendant's motion in limine four (ECF No. 80) is granted;

15.  Defendant's motion in limine five (ECF No. 81) is denied;

16.  The ruling on defendant's motion in limine six (ECF No. 82) is denied without prejudice;

17.  Defendant's motion in limine seven (ECF No. 83) is denied;

18.  Defendant's motion in limine eight (ECF No. 84) is denied;

19.  Defendant's motion in limine nine (ECF No. 85) is denied;

20.  Ruling on defendant's motion in limine ten (ECF No. 100) is deferred pending the parties' further submissions as directed in the body of this order;

21.  Defendant's motion in limine eleven (ECF No. 101) is denied without prejudice;

22.  Defendant's motion in limine twelve (ECF No. 102) is denied; and

23.  The order to show cause issued November 2, 2011 is discharged.

DATED:  December 20, 2011.

_____
UNITED STATES DISTRICT JUDGE