LAWRANCE A. BOHM, (SBN 208716)
BOHM LAW GROUP
4600 Northgate Blvd
Suite 210
Sacramento, CA 95834
Telephone: (916) 927-5574
Facsimile: (916) 927-2046

Gregory R. Davenport (SBN 154403)
THE LAW OFFICES OF GREGORY R. DAVENPORT
3031 West March Lane, Suite 334 East
Stockton, California 95219
Telephone: (209) 955-1999
Facsimile: (209) 475-4951

ERIKA M. GASPAR, (SBN 238117)
LAW OFFICE OF ERIKA M. GASPAR
2121 Natomas Crossing Drive, Suite 200-399
Sacramento, CA 95834
Telephone (916) 749-0278
Facsimile (916) 647-0535

Attorneys for Plaintiff
ANI CHOPOURIAN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANI CHOPOURIAN,<br><br>                Plaintiff,<br><br>        v.<br><br>CATHOLIC HEALTHCARE WEST,<br>MERCY GENERAL HOSPITAL, AND<br>DOES 1 through 20, inclusive,<br><br>                Defendants. | Case No.  2:09-CV-02972-KJM-KJN<br><br>**PLAINTIFF'S TRIAL BRIEF**<br><br>Trial Date:        January 23, 2012<br>Time:              9:00 a.m.<br>Court Room:    3<br><br>Judge:          Hon. Kimberley J. Mueller |

        Plaintiff, ANI CHOPOURIAN, respectfully submits the following Trial Brief pursuant

to this Court's Final Pretrial Order of November 3, 2011 (Doc. 115).

1

Chopourian v. Catholic Healthcare West, et al.                                    Lawrance A. Bohm, Esq.
Case No. 2:09-CV-02972-KJM-KJN                                              Gregory R. Davenport, Esq.
PLAINTIFF'S TRIAL BRIEF                                                              Erika M. Gaspar, Esq.

1

## I.      BRIEF STATEMENT OF THE CASE

Catholic Healthcare West operates a nationally recognized cardiac surgery facility in downtown Sacramento's Mercy General Hospital.  However, since at least 2006, Mercy General Hospital has been concealing a problem it claims it cannot control.  A hostile and unsafe working environment for employees and patients that is tolerated, minimized and ignored at every level of management.  Rather than address the problem, hospital management bullies, discredits and intimidates employees who speak out against the unlawful environment with the purpose of forcing resignation.

The hostile and unsafe environment in Mercy General Hospital is manifested and maintained by a small group of surgeons and hospital staff.  The unlawful behavior includes persistent bullying, verbal abuse, throwing objects, punching objects, passive aggressive behavior, humiliation, pranks, physical touching, misogynist remarks, ethnic slurs, unwelcome sexually graphic discussion, denying and interrupting rest breaks, and defamation.  Oral and written complaints from staff concerning the unsafe environment were ignored and disavowed.

Plaintiff's frequent complaints eroded indifference to reprisal.  Trumped up corrective action concerning a common workplace practice signified an intent to terminate Plaintiff if she persisted in her complaints about the workplace.  After additional complaints from Plaintiff, management took action and concocted false statements of poor job performance.  When Plaintiff refused to quit managers fabricated a final incident where Plaintiff was falsely accused of breaking an unwritten and indefinite rule.  By the time of her termination, Plaintiff's complaints were willfully ignored.  After her termination, Defendant placed false information concerning Plaintiff's job performance in her personnel file.  Immediately after her termination, Defendant managers slandered Plaintiff by repeating the false statements about Plaintiff to the cardiac surgery department.

2

Chopourian v. Catholic Healthcare West, et al.
Case No. 2:09-CV-02972-KJM-KJN
PLAINTIFF'S TRIAL BRIEF

Lawrance A. Bohm, Esq.
Gregory R. Davenport, Esq.
Erika M. Gaspar, Esq.

The termination of Plaintiff's employment caused extreme and severe emotional and economic distress.   Constant anxiety, worry, stress and other powerful emotions plagued Plaintiff as she struggled to keep her home and search for replacement employment.   After months of unemployment and diligent search Plaintiff found replacement employment at RAS, a large provider of radiologic services in the Sacramento area.   Plaintiff was employed by RAS to work with another hospital owned and operated by Defendant Catholic Healthcare West.   The new employment opportunity relieved some of the economic stress of termination; however, the stigma and patent injustice of her termination did not resolve.

After her termination, Plaintiff initiated this legal action to recover the emotional and economic harm caused by her termination.   If she had chosen not to pursue this action, she could have kept her new employment at RAS.   Instead, Catholic Healthcare West further retaliated against Plaintiff by publishing additional false information about her commitment to patient confidentiality and the circumstances surrounding her termination from Mercy General Hospital. The publication of false information caused Plaintiff to lose her privileges at the hospital where she worked for RAS.   Without her privileges, Plaintiff could no longer work for RAS and her employment ended.

Since losing her employment at RAS, Plaintiff has been unable to find new employment. After an exhaustive search for new employment, the inescapable conclusion is that Plaintiff's reputation has been destroyed to a point where she has no reasonable likelihood of being hired. The price for her pursuit of justice has been steep.   Plaintiff regularly experiences acute onset of anxiety, mortification, shock, sadness, anger, humiliation, frustration, depression, sleep disturbance, grief and various physical problems.   The pressure caused by her tremendous financial losses adds to her emotional suffering.

Chopourian v. Catholic Healthcare West, et al.
Case No. 2:09-CV-02972-KJM-KJN
PLAINTIFF'S TRIAL BRIEF

Lawrance A. Bohm, Esq.
Gregory R. Davenport, Esq.
Erika M. Gaspar, Esq.

## II.   CLAIMS ASSERTED

Plaintiff claims Catholic Healthcare West engaged in unlawful conduct including, (1) failure to provide meal and rest breaks as required by law, (2) hostile work environment based on gender, (3) retaliation in violation of Title VII, (4) wrongful termination in retaliation for protected activities of Health & Safety and Labor Code provisions, (5) defamation, (6) intentional interference with prospective economic advantage and (7) intentional infliction of emotional distress.

## III.   RELEVANT FACTS

Ani Chopourian was employed as a Physician Assistant by Defendant CHW Mercy General Hospital in the Cardio Vascular Operating Rooms (CVOR) from August 2006 to August 2008.  In California, Physician Assistants are allied health medical professionals regulated by the Physicians Practices Act.   (See California Business and Professions Code Section 3500 *et seq.*) A graduate of Yale University School of Medicine Physician Associates Program in 1999, Ms. Chopourian has been nationally certified by the National Commission on Certification of Physician Assistants since initially obtaining her license in 1999.

As a Physician Assistant in the CVOR, Plaintiff's job responsibilities included the treatment and care for patients undergoing a variety of open heart surgeries including, but not limited to the following procedures:

- Coronary Artery Bypass;

- Aortic/Mitral Valve Replacement;

- Congenital Heart Defect Repair.

In furtherance of this work, Plaintiff supported heart surgery procedures by providing a number of important functions including vein/artery harvesting, retraction of the sternum, and other

4

Chopourian v. Catholic Healthcare West, et al.
Case No. 2:09-CV-02972-KJM-KJN
PLAINTIFF'S TRIAL BRIEF

Lawrance A. Bohm, Esq.
Gregory R. Davenport, Esq.
Erika M. Gaspar, Esq.

technical functions to assist the heart surgeon.  During her employment Plaintiff worked with numerous different heart surgeons in four different operating rooms in two separate facilities.

### A.     Complaints

Within months of her employment, in or about October 2006, Ms. Chopourian spoke to her supervisor Jean Scrafton about the fact that she was not getting her meal breaks.  She explained that as a result of not being able to eat within the first five hours of her shift, she would feel lightheaded and was concerned her performance was being affected.  Ms. Chopourian also made a written complaint about this fact in an "Event Report."

In addition to her complaints about lunch breaks, Plaintiff submitted at least **16 written complaints** to hospital managers concerning the working conditions in the hospital including failure to provide required meal breaks, unsafe surgical conditions, bullying, mismanaged care during surgery, verbal abuse by one of the heart surgeons, mistreatment by a coworker as well as other issues.   Plaintiff's final complaint was submitted July 31, 2008 (8 days before her termination) and was stamped received by human resources.

### B.  Plaintiff's Termination

According to the schedule for August 2008 given to Plaintiff regarding on-call assignments, there was no indication Ms. Chopourian would be required to provide post-surgical rounds on Sunday August 3.  On Saturday night, August 2, 2008, according to procedure, Plaintiff called the PM assignment recording to see if she was needed, as she was on call. There was nothing on the outgoing message indicating she was needed on August 3, 2008.  On Sunday August 3, 2008, Plaintiff received a call from the hospital asking why she was not present to provide post-surgical floor coverage.  Plaintiff explained that she was not aware floor coverage was required.  Plaintiff offered to come in to provide coverage, but was told not to do so; that coverage was already and her presence was no longer required.  On August 7, 2008, Defendants

5

terminated Plaintiff for failing to report to work on Sunday, August 3, 2008.

### C.  Plaintiff's Subsequent Employment

On August 1, 2009, almost a year after her termination from Defendant's employ, Plaintiff secured a position as a Physician Assistant with Radiological Associates of Sacramento Medical Group, Inc..  A condition of employment was that she would obtain privileging at Mercy General Hospital.  Plaintiff was originally informed by Mercy that there would be no problem obtaining privileging.  She was then informed that she would need national certification to obtain privileging.  Plaintiff studied for and took the exam, then renewed her application.

### D.  Plaintiff's Deposition and Subsequent Denial of Privileges

In the interim, Plaintiff's first deposition for her pending lawsuit against Catholic Healthcare West was taken on March 15, 2010.  During the deposition, Defendant's counsel questioned Plaintiff about documents she recently produced in response to discovery requests and concluded on the record that Plaintiff had violated medical privacy laws.  Plaintiff was never investigated for such a violation, assessed civil penalties or charged with criminal violation.  In May 2010, Plaintiff was informed that her credentialing privileges were being held up because of allegations that she violated patient privacy laws.

Plaintiff was denied privileges on June 8, 2010 and subsequently lost her job at RAS on June 21, 2010.  Although Plaintiff has submitted hundreds of applications and had numerous job interviews, she has been unable to secure another job.

## IV.   LEGAL ANALYSIS OF CLAIMS

### A.  Failure to provide adequate meal and rest breaks

Under California law, Catholic Healthcare West is required to provide its employees with an uninterrupted meal break of at least 30 minutes within the first five hours of their shift or pay the employee an additional hour at the employee's regular rate

6

Chopourian v. Catholic Healthcare West, et al.
Case No. 2:09-CV-02972-KJM-KJN
PLAINTIFF'S TRIAL BRIEF

Lawrance A. Bohm, Esq.
Gregory R. Davenport, Esq.
Erika M. Gaspar, Esq.

of compensation for each work day that the meal period is not provided.  (Labor Codes §§ 512, 226.7)

Labor Codes § 226.7 states:

> (a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

> (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

Labor Code § 512 states:

> (a) An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes….

> Pursuant to IWC wage orders, employees are entitled to an unpaid 30-minute, duty-free meal period after working for five hours and a paid 10-minute rest period per four hours of work. …. An employee forced to forgo his or her meal period similarly loses a benefit to which the law entitles him or her. While the employee is paid for the 30 minutes of work, the employee has been deprived of the right to be free of the employer's control during the meal period. *Murphy v Kenneth Cole Productions* (2006) 40 Cal 4th 1094, 1104.

> Further, Plaintiff is entitled to a full day's wage for each day, up to 30 days, that she is required to wait for payment from Catholic Healthcare West, provided that CHW's failure to pay was "willful."(Labor Codes § 203)

Labor Codes § 203 states:

> (a) If an employer willfully fails to pay …any wages of an employee who is discharged…., the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

7

Chopourian v. Catholic Healthcare West, et al.
Case No. 2:09-CV-02972-KJM-KJN
PLAINTIFF'S TRIAL BRIEF

Lawrance A. Bohm, Esq.
Gregory R. Davenport, Esq.
Erika M. Gaspar, Esq.

Catholic Healthcare West "willfully fails to pay if it intentionally failed to pay, or refused to pay Ms. Chopourian as required. *See Ghory v. Al-Lahham* (1989) 209 Cal.App.3d 1487, 1492. ("As used in Lab C, § 203 … "willful" means that the employer intentionally failed or refused to perform an act which was required to be done.")

Plaintiff is entitled to seek recovery of wages and penalties through a private civil action under Labor Code § 218 for Defendant's failure to provide meal breaks. *See Cuadra v. Millan* (1998) 17 Cal.4th 855, 858; *Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 946 ("if an employer fails to pay wages in the amount, time, or manner required by contract or statute, the employee may seek administrative relief by filing a wage claim with the commissioner or, in the alternative, may seek judicial relief by filing an ordinary civil action for breach of contract and/or for the wages prescribed by statute.")

Plaintiff routinely worked 8-10 hour shifts and was often denied meal breaks or forced to take them near the end of her shift.  Plaintiff repeatedly complained about not getting her meal breaks.  Every witness deposed by Plaintiff confirmed they were aware of Plaintiff's complaints about not receiving her lunch breaks.  In fact, Plaintiff complained so frequently that she became known as a complainer, "not a team player," a "prima donna" regarding her lunch breaks.

**B.  Hostile Work Environment/Sexual Harassment in Violation of Title VII**

Under federal law, Catholic Healthcare West is liable for discriminating against Plaintiff with respect to the terms, conditions, or privileges of her employment, because of her gender .if Plaintiff proves that it is more likely than not that a hostile work environment based on gender existed. (Title VII, 42 U.S.C. § 2000e et. seq.)  Discrimination on the basis of sex, includes, but is not limited to, sexual harassment, gender based harassment and the creation or maintenance of a hostile work environment based on gender.  *See Meritor Savings Bank v. Vinson* (1986) 477 U.S. 57, 66 ("[A] plaintiff may establish a violation of Title VII by proving that discrimination based

Chopourian v. Catholic Healthcare West, et al.
Case No. 2:09-CV-02972-KJM-KJN
PLAINTIFF'S TRIAL BRIEF

Lawrance A. Bohm, Esq.
Gregory R. Davenport, Esq.
Erika M. Gaspar, Esq.

on sex has created a hostile or abusive work environment.")  *See also Harris v. Forklift Sys.* (1993) 510 U.S. 17, 21 ("When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Title VII is violated.")

The mere existence of a grievance procedure and a policy against discrimination, coupled with a complainant's failure to invoke that procedure, does not insulate an employer from liability under Title VII of the Civil Rights Act of 1964 (*42 USCS 2000e--2000e*-17) for sexual harassment of its employees by their supervisors.  *Meritor Savings Bank v. Vinson* (1986) 477 U.S. 57, 72.

"Applying general Title VII principles, an employer . . . is responsible for its acts and those of its agents and supervisory employees with respect to sexual harassment regardless of whether the specific acts complained of  were authorized or even forbidden by the employer and regardless of whether the employer knew or should have known of their occurrence.  *Meritor Savings Bank v. Vinson* (1986) 477 U.S. 57, 74 (*citing EEOC Guidelines on Discrimination Because of Sex,  Griggs v. Duke Power Co., 401 U.S. 424, 433-434 (1971)* (EEOC Guidelines on Employment Testing Procedures of 1966).

During Plaintiff's employment, she was subjected to unwanted sexual touching and comments.  Specifically, Plaintiff's buttocks was often slapped, she was pulled into the lap of several male coworkers against her wishes and touched about the waist in a sexually suggestive manner.  In addition, workplace banter and jokes were routinely inappropriate and sexually graphic.  Co-workers and independent contractors working in the Cardiac O.R. would make frequent and numerous remarks about her breasts, her sex life, their own sex life and the physical attractiveness of others in the department including patients.  Plaintiff's complaints about the sexually harassing character of the workplace were met with indifference and inaction by her

9

supervisors. One of the supervisors responsible for the workplace was involved in an extramarital affair with one of the individuals responsible for the sexual harassment of Plaintiff.

The sexually inappropriate conduct was a substantial factor in causing Ms. Chopourian emotional distress including increased anxiety, fear and humiliation.  Defendant knew or should have known about the sexual harassment due to other complaints of sexual harassment and comments made directly to the Vice-President of the Cardiac Surgery Department.

**C. Retaliation in Violation of Title VII**

Plaintiff asserts a statutory claim of retaliation under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3(a)).  Specifically, Plaintiff claims she was terminated in retaliation for her complaints of gender-based harassment in violation of 42 U.S.C. § 2000e-3(a):

42 U.S.C. 2000e-3(a) states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees …because [s]he has opposed any practice made an unlawful employment practice by this title [42 USCS §§ 2000e-2000e-17], or because [s]he has made a charge, …. under this title [42 USCS §§ 2000e-2000e-17].

During her employment, Ms. Chopourian complained about sexual harassment and sex discrimination within the Cardiac Surgery Department at Mercy Hospital.  Although Plaintiff's complaints about sexual harassment were not documented, Plaintiff did document her numerous complaints of gender discrimination in relation to be called a "stupid chick."  The evidence in this case supports the fact that Plaintiff Ani Chopourian refused to tolerate the sexual harassment she received in the workplace, repeatedly complained to her supervisors and coworkers about the conduct, and was subsequently retaliation against.

Ms. Chopourian received two write-ups – one for an incident that had happened months before, and another citing events which Ms. Chopourian disputed.  Ms. Chopourian informed the Director and Vice President of Cardiovascular Services that she felt she was being retaliated

Chopourian v. Catholic Healthcare West, et al.
Case No. 2:09-CV-02972-KJM-KJN
PLAINTIFF'S TRIAL BRIEF

Lawrance A. Bohm, Esq.
Gregory R. Davenport, Esq.
Erika M. Gaspar, Esq.

against by her immediate supervisors.   No action was taken.   According to Defendant, Ms. Chopourian was terminated on August 7, 2008 for failing to show up to do patient rounds even though it was not indicated on her schedule and she offered to come in when called. Plaintiff's protected complaints were a motivating factor for these write ups and termination.

Catholic Healthcare West then engaged in conduct which interfered with Plaintiff's efforts to find and hold new employment including but not limited to denying her clinical privileges Defendant's hospital facilities.

### D.  Wrongful Termination In Retaliation For Protected Activities Of Health & Safety And Labor Code Provisions

Plaintiff claims the termination of her employment was motivated at least in part by her protected complaints under state law concerning the failure to provide meal and rest breaks (Labor Code §§ 226.7, 512) and the conditions of the work place and concerns about patient safety (Labor Code §§ 232.5, 1102.5, and Health and Safety Code §1278.5).  Such a termination would clearly involve important public policy identified within the Labor Code and Health and Safety Code sections cited above.  Plaintiff further complains that Catholic Healthcare West interference with efforts to find and hold new employment and/or denial of clinical privileging at Defendant's hospital facilities was motivated in part by her protected activities.

Plaintiff asserts non-statutory *Tameny* tort claims for wrongful termination in violation of public policy as retaliation for engaging in protected activity.   Plaintiff engaged in protected activities concerning terms and conditions of employment by CHW which violated the following public policies:   ● **Labor Code § 232.5** (protects disclosure about employer work conditions) ● **Labor Code § 6310** (protects oral or written complaints of unsafe work conditions or practices) ● **Labor Code § 1102.5** (protects employee refusal to violate state or federal law) ● **Health and Safety Code § 1278.5** (protects complaints patient care, services and hospital conditions).

The tort cause of action for wrongful termination in violation of public policy provides a

11

vehicle for recourse that otherwise would be unavailable under general rules of the at-will employment doctrine. First recognized by the California Supreme Court in *Tameny v. Atlantic Richfield* [96 Cal.App.4th 226] *Co.*, this public policy exception allows an employee to bring a tort cause of action against an employer who terminates an at-will employment on a ground that violates fundamental public policy. The exception is based on the principle that, although an employer may terminate an at-will employee for no reason, or any arbitrary or irrational reason, the employer has no power to terminate the employee for a reason contrary to the law or fundamental public policy. *Phillips v. St. Mary Regional Medical Center* (2002) 96 Cal.App.4th 218, 225-226.

### 1) Complaints About Failure to Provide Meal and Rest Breaks

The substance of the basis for the public policies are set forth below:

Labor Code § 232.5 states:

"No employer may do any of the following: … (c) Discharge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions.

Labor Code § 6310 states:

(a) Any employee who is discharged…. because the employee has made a bona fide oral or written complaint to … his or her employer, … of unsafe working conditions, or work practices, in his or her employment or place of employment, … shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer.

Labor Code § 1102.5 states:

(c) An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

Plaintiff's complaints about failure to get her meal breaks constitutes disclosures about working conditions or good faith complaints of unsafe working conditions under Labor Code §§

Chopourian v. Catholic Healthcare West, et al.
Case No. 2:09-CV-02972-KJM-KJN
PLAINTIFF'S TRIAL BRIEF

Lawrance A. Bohm, Esq.
Gregory R. Davenport, Esq.
Erika M. Gaspar, Esq.

232.5, 6310 and 1102.5.  *See Murphy v Kenneth Cole Productions* (2006) 40 Cal 4th 1094, 1113 ("Employees denied their rest and meal periods face greater risk of work-related accidents and increased stress, especially low-wage workers who often perform manual labor."). "Indeed, health and safety considerations (rather than purely economic injuries) are what motivated the IWC to adopt mandatory meal and rest periods in the first place." *Id.*   Meal and rest periods have long been viewed as part of the remedial worker protection framework. Concerned with the health and welfare of employees, the IWC issued wage orders mandating the provision of meal and rest periods in 1916 and 1932, respectively.  (citations omitted) *Murphy v Kenneth Cole Productions* (2006) 40 Cal 4th 1094, 1105.

Labor Code § 6310 may form the basis of a *Tameny* tort claim of wrongful termination in violation of public policy. *Hentzel v. Singer Co.* (1982) 138 Cal.App.3d 290, 298. *See also Freund v Nycomed Amersham* (2003) 347 F.3d 752, 758 ("Nycomed contends that § 6310 does not meet these requirements, particularly the requirement that it embody a "fundamental" public policy. We reject the contention because the California courts have long held to the contrary.")

Such complaints can be made to employers; it does not require a reporting to Division of Labor Enforcement or other agencies. *Hentzel v. Singer Company* (1982) 138 Cal. App. 3d 290, 299 *superceded by statute as stated in Fusco v. Sonoma County Jr. College Dist.* (N.D. Cal. Jan 29, 2010), 2010 U.S. Dist. LEXIS 7363.

Accordingly, Plaintiff is protected against retaliation for making complaints in good faith, even if they are ultimately found not to be unsafe.  *See Freund v Nycomed Amersham* (2003) 347 F.3d 752, 759 ("The public policy behind § 6310 is not merely to aid the reporting of actual safety violations, as Nycomed seems to assume; it is also to prevent retaliation against those who in good faith report working conditions they believe to be unsafe.")  *See also Cabesuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101, 109 ("We agree that

13

Chopourian v. Catholic Healthcare West, et al.
Case No. 2:09-CV-02972-KJM-KJN
PLAINTIFF'S TRIAL BRIEF

Lawrance A. Bohm, Esq.
Gregory R. Davenport, Esq.
Erika M. Gaspar, Esq.

an employee must be protected against discharge for a good faith complaint about working conditions which he believes to be unsafe."). As long as the employee makes the health or safety complaint in good faith, it does not matter for purposes of a wrongful termination action whether the complaint identifies an actual violation of other workplace safety statutes or regulations. *Freund v Nycomed Amersham* (2003) 347 F.3d 752, 759.

Plaintiff is protected from retaliation for reporting a suspected claim of statutory violation; it is not necessary that the conduct actually be unlawful. An employee's good faith but mistaken belief is protected from employer retaliation in the whistleblowing context. *Collier v. Superior Court* (1991) 228 Cal.App.3d 1117, 1125; *Barbosa v. IMPCO Technologies* (2009) 179 Cal.App.4th 1116, 1122-23.

Whistleblowing conduct is protected by anti-retaliatory provisions:

Labor Code § 1102.6 states:

> In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, <u>the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5</u>.

Accordingly, Plaintiff is protected from retaliation for good faith complaint about not being provided meal breaks, whether or not she correctly understood the law. *See Barbosa v. IMPCO Technologies* (2009) 179 Cal.App.4th 1116, 118 ("The public policy in favor of the employer's duty to pay overtime wages protects an employee from termination for making a good faith but mistaken claim to overtime.")

**2) Complaints About Conditions of the Work Place and Concerns About Patient Safety**

The substance of the basis for the public policies are set forth below:

Chopourian v. Catholic Healthcare West, et al.
Case No. 2:09-CV-02972-KJM-KJN
PLAINTIFF'S TRIAL BRIEF

Lawrance A. Bohm, Esq.
Gregory R. Davenport, Esq.
Erika M. Gaspar, Esq.

Health and Safety Code § 1278.5(b) states:

> (a)The Legislature finds and declares that whistleblower protections apply primarily to issues relating to the care, services, and conditions of a facility and are not intended to conflict with existing provisions in state and federal law relating to employee and employer relations.
>
> (b)(1) No health facility shall discriminate or retaliate, in any manner, against any patient, employee, member of the medical staff, or any other health care worker of the health facility because that person has done either of the following:
>
>> (A) Presented a grievance, complaint, or report to the facility, …or the medical staff of the facility, …
>
> (2) No entity that owns or operates a health facility, or which owns or operates any other health facility, shall discriminate or retaliate against any person because that person has taken any actions pursuant to this subdivision.
>
> (d)(1) There shall be a rebuttable presumption that discriminatory action was taken by the health facility, … in retaliation against an employee … if … the discriminatory action occurs within 120 days of the filing of the grievance or complaint by the employee, member of the medical staff or any other health care worker of the facility.

Plaintiff's complaints about patient safety included an express belief that CHW was violating applicable regulations and medicare compliance by failing to have an assistant surgeon present during operative cases.   Plaintiff also described the stressful and unprofessional environment where patients were needlessly subjected to additional operative procedures. Plaintiff complained about the risk to patient safety caused by an out of control surgeon and the culture which permitted the behavior to go unchanged.

Further, Plaintiff repeatedly complained about the fact that she and other Physician Assistants were not given lunch breaks. Plaintiff repeatedly requested that she be permitted lunch breaks for health reasons. Although lunch breaks could have been provided without compromising patient care, Defendant refused to take action to assure that employees got lunch breaks.  Plaintiff repeatedly indicated that the failure to provide a lunch break would cause her to feel dizzy and incapable of providing safe treatment for Plaintiffs.  Plaintiff's complaints about

15

Chopourian v. Catholic Healthcare West, et al.
Case No. 2:09-CV-02972-KJM-KJN
PLAINTIFF'S TRIAL BRIEF

Lawrance A. Bohm, Esq.
Gregory R. Davenport, Esq.
Erika M. Gaspar, Esq.

the failure to provide lunch breaks are well documented.

Plaintiff's had numerous oral and written complaints about safety, patient safety and lunch break violations occurred within 90 days of her termination in an email between upper level management and human resources.   Upon completion of Plaintiff's case, a request to amend to conform to proof will be submitted to pursue this case directly health and safety code section 1278.5.   If granted, Defendant will have to prove a legitimate and independent basis for the termination of Plaintiff.

**E. Defamation**

Catholic Healthcare West harmed Plaintiff by making false negative statements concerning her work performance and professional abilities to her colleagues, current employer and prospective employers. Catholic Healthcare West's false negative statements were understood by to concern her work performance and professional abilities.  Catholic Healthcare West failed to use reasonable care to determine the truth or falsity of the statements.  Plaintiff seeks compensatory and punitive damages for the harm she incurred as a result of Catholic Healthcare West's conduct.

Catholic Healthcare West is not shielded by the fact that Plaintiff has been forced to repeat these defamatory statements during her job search.

> [T]he originator of the defamatory statement is liable for damages caused by the disclosure of the contents of the defamatory statement by the person defamed where such disclosure is the natural and probable consequence of the originator's actions. *McKinney v. County of Santa Clara* (1980) 110 Cal.App.3d 787, 796.

> "The rationale for making the originator of a defamatory statement liable for its foreseeable republication is the strong causal link between the actions of the originator and the damage caused by the republication. This causal link is no less strong where the foreseeable republication is made by the person defamed operating under a strong compulsion to republish the defamatory statement and the circumstances which create the strong compulsion are known to the originator of the defamatory statement at the time he communicates it to the person defamed." *McKinney v. County of Santa Clara* (1980) 110 Cal.App.3d 787, 797-98.

In the employment context, a plaintiff may have a strong compulsion to republish

16

Chopourian v. Catholic Healthcare West, et al.
Case No. 2:09-CV-02972-KJM-KJN
PLAINTIFF'S TRIAL BRIEF

Lawrance A. Bohm, Esq.
Gregory R. Davenport, Esq.
Erika M. Gaspar, Esq.

wrongful grounds for termination to prospective employers in order to explain away negative inferences that will be learned through investigation of the plaintiff's prior employment. *McKinney v. County of Santa Clara* (1980) 110 Cal.App.3d 787, 797-98.   As in *McKinney*, Plaintiff Chopourian was required as a practical matter to republish the alleged defamatory statements forming the basis for her termination when she applied for new jobs.  In *McKinney*, the court agreed that this situation did not constitute a voluntary republication.  *See McKinney v. County of Santa Clara* (1980) 110 Cal.App.3d 787, 793.

### F.  Interference with Prospective Economic Relations

Negligent interference with prospective economic advantage is established where (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.  *Venhaus v. Shultz* (2007) 155 Cal. App. 4th 1072, 1078.

The conduct of Defendant that is independently wrongful does not have to be intentional or willful. *See Venhaus v. Shultz* (2007) 155 Cal. App. 4th 1072, 1079-80 ("While the trial court and Shultz are correct that a defendant incurs liability for interfering with another's prospective economic advantage only if the defendant's conduct was independently wrongful, we have been directed to no California authority, and have found none, for the trial court's conclusion that the wrongful conduct must be intentional or willful. The defendant's conduct must "fall outside the

17

Chopourian v. Catholic Healthcare West, et al.
Case No. 2:09-CV-02972-KJM-KJN
PLAINTIFF'S TRIAL BRIEF

Lawrance A. Bohm, Esq.
Gregory R. Davenport, Esq.
Erika M. Gaspar, Esq.

boundaries of fair competition", but negligent misconduct or the violation of a statutory obligation suffice. The approved CACI No. 2204 does not indicate otherwise and, in fact, indicates that either a misrepresentation or "violation of statute" is sufficient.")

### G. Intentional Infliction of Emotional Distress

A prima facie case for intentional infliction of emotional distress requires Plaintiff to establish (1) Defendant's conduct was outrageous, (2) intention by Defendant to cause or reckless disregard of the probability of causing emotional distress, (3) Plaintiff suffered severe emotional suffering and (4) Defendant's conduct was actual and proximate cause of the emotional distress. *Agarwal v. Johnson (*1979) 25 Cal.3d 932, 946; *Cole v. Fair Oaks Fire Protection District* (1987) *43 Cal. 3d 148,* 155 fn. 7. Termination of an employee based on animus cannot be considered a normal part of the employment relationship and violates a fundamental policy.   *Cabesuela v. Browning-Ferris Industries of California, Inc*. (1998) 68 Cal.App.4th 101, 112-113.

There is liability for conduct "exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress. (See Prosser, Law of Torts (4th ed. 1971) p. 54.) *Cole v. Fair Oaks Fire Protection District* (1987) *43 Cal. 3d 148,* 155 fn. 7.

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm:' [Rest.2d Torts, §46(1); see Comment "d." to §46]

In *Gantt v. Sentry Insurance (1992) 1 Cal. 4th 1083, 1100 [4 Cal. Rptr. 2d 874, 824 P.2d 680]* (overruled on another point in *Green v. Ralee Engineering Co. (1998) 19 Cal. 4th 66, 80, fn. 6 [78 Cal. Rptr. 2d 16, 960 P.2d 1046]*), the high court clarified its earlier decisions by holding that [HN18] when an employer's decision to discharge an employee results from an animus that

18

Chopourian v. Catholic Healthcare West, et al.
Case No. 2:09-CV-02972-KJM-KJN
PLAINTIFF'S TRIAL BRIEF

Lawrance A. Bohm, Esq.
Gregory R. Davenport, Esq.
Erika M. Gaspar, Esq.

violates the fundamental policy, such misconduct cannot be considered a normal part of the employment relationship. Thus, where, as here, a plaintiff's emotional distress claim is premised upon his employer's violation of a fundamental public policy of this state, such misconduct lies outside of the exclusive remedy provisions of the Labor Code.  *Cabesuela v. Browning-Ferris Industries of California, Inc*. (1998) 68 Cal.App.4th 101, 112-113.

## V.  DAMAGES

Plaintiff seeks lost wages and benefits past and future. Plaintiff seeks monetary damages for non-economic harm including emotional distress. Plaintiff seeks recovery of costs and attorney's fees. Plaintiff also seeks civil penalties and interest on any amount awarded.  Plaintiff seeks punitive damages in an amount according to proof.

### A.  Failure to Provide Adequate Meal and Rest Periods (Premium Wages)

Plaintiff seeks an additional hour of pay at her regular rate of compensation for each day she was denied an off-duty meal break, and one hour of pay at her regular rate of compensation for each day she was denied a rest break.

Plaintiff also seeks wait time penalties (up to 30 days) for Defendant's failure to pay her wages due at the time of her termination. (See Labor Code section 203, *Mamika v. Barca* (1998) 68 Cal.App.4th 487, 493. ("The targeted wrong is the delay in payment, a wrong that continues so long as payment is not made. A proper reading of *section 203* mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days.")

### B.  Title VII Hostile Work Environment Based on Gender (42 U.S.C. § 2000e)

Plaintiff seeks emotional distress damages resulting from the hostile work environment sexual harassment she was forced to endure.  Plaintiff also seeks punitive damages.

### C.  Termination/Defamation

19

Chopourian v. Catholic Healthcare West, et al.
Case No. 2:09-CV-02972-KJM-KJN
PLAINTIFF'S TRIAL BRIEF

Lawrance A. Bohm, Esq.
Gregory R. Davenport, Esq.
Erika M. Gaspar, Esq.

1        Plaintiff seeks compensatory damages economic and emotional distress damages

2   resulting from the retaliatory termination.  Specifically, Plaintiff's seeks past lost wages from the

3   date of Plaintiff's termination, August 5, 2008 to the date of trial, excluding earnings from RAS.

4   Plaintiff also seeks compensation for future lost wages and benefits.  Plaintiff does not expect

5   that she will be able to work again in her field as a Physician Assistant because of the retaliatory

6

7   and defamatory actions taken by Defendant.  Plaintiff also seeks punitive damages.

8   **VI.**   **ATTORNEYS' FEES/COSTS:**

9        If successful at trial, Plaintiff seeks attorney fees and costs pursuant to state and federal

10  laws including Civil Procedures § 1021.5, Labor Code § 218.5, Labor Code §§ 2698 and 2699,

11

12  and Title VII, 42 U.S.C. § 2000e-5(k). Plaintiff will seek attorney fees consistent with Local Rule

13  54-293.

14

15  Dated:  January 17, 2012          By:     /s/ Lawrance A. Bohm

16                                            LAWRANCE A. BOHM
                                              GREGORY R. DAVENPORT
17                                            ERIKA M. GASPAR

18                                            Attorneys For Plaintiff
                                              ANI CHOPOURIAN
19

20

21

22

23

24

25

26

27

28

Chopourian v. Catholic Healthcare West, et al.                                    Lawrance A. Bohm, Esq.
Case No. 2:09-CV-02972-KJM-KJN                                                    Gregory R. Davenport, Esq.
PLAINTIFF'S TRIAL BRIEF                                                           Erika M. Gaspar, Esq.