JUDITH CLARK MARTIN, STATE BAR NO. 173557
DAVID L. DITORA, STATE BAR NO. 119252
**LA FOLLETTE, JOHNSON,**
**DE HAAS, FESLER & AMES**
655 University Avenue, Suite 119
Sacramento, California  95825
Phone:        (916) 563-3100
Facsimile:    (916) 565-3704
Email:        JCMartin@ljdfa.com
Email:        DDitora@ljdfa.com

Attorneys for Defendant,
CATHOLIC HEALTHCARE WEST dba
MERCY GENERAL HOSPITAL (erroneously
sued and served herein as CATHOLIC HEALTHCARE
WEST and MERCY GENERAL HOSPITAL)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANI CHOPOURIAN,<br><br>                    Plaintiff,<br><br>v.<br><br>CATHOLIC HEALTHCARE WEST,<br>MERCY GENERAL HOSPITAL, AND<br>DOES 1 through 20, inclusive,<br><br>                    Defendants. | CASE NO.  2:09-CV-02972-KJM-KJN<br><br>**DEFENDANT CATHOLIC HEALTHCARE WEST'S FURTHER BRIEFING ON THE ISSUE OF PLAINTIFF'S CLAIM OF ENTITLEMENT TO COMPENSATION FOR MEAL AND REST BREAKS** |

Plaintiff claims in her complaint that she was denied meal and rest breaks while working in the Cardiovascular Operating Room ("CVOR") at Mercy General Hospital ("Mercy").  She elaborates in her trial brief that said entitlement is based entirely on California Labor Code sections 226.7 and 512, as well as unspecified Industrial Welfare Commission Orders. Defendant asserts, and has asserted throughout this litigation, that plaintiff is *exempt* from such meal breaks. Plaintiff claims such exemption should have been pled as an affirmative defense, and that by not so pleading, defendant should be precluded from raising this issue at trial.  Defendant asserts it is not an affirmative defense to plaintiff's claim, but rather, plaintiff's claim is based on a statute

1  that *does not apply to her*.  Thus, plaintiff will not be able to meet *her* burden of proof to

2  entitlement to such meal and rest breaks.

### A.  The Industrial Welfare Commission ("IWC") Governs Employment in California

3
4      Whether plaintiff was entitled to her meal and rest periods is a question of law and does

5  not amount to an affirmative defense.  The Court need only look to the statutory authority cited

6  by *plaintiff* to reach this conclusion, discussed below.  The Court need not look to the case law

7  cited by plaintiff, though such case law is irrelevant and improperly relied upon by plaintiff.  For

8  example, *Murphy v. Kenneth Cole Productions* (2007) 40 Cal.4th 1094 involved a retail store

9  manager and the issue of whether a three year or one year statute of limitations applied to his

10 claim for damages arising from improper compensation for rest and meal periods and for overtime

11 wages.  It did not address the issue of whether the plaintiff was *exempt* from those meal and rest

12 periods.  Importantly, the Supreme Court recognized that the Industrial Welfare Commission

13 (IWC) is the state agency empowered to formulate wage orders governing employment in

14 California. (*Id.* at p. 1102, fn. 4, citing  *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14

15 Cal.4th 557, 561.) Although the Legislature defunded the IWC in 2004, its wage orders remain

16 in effect. (*Ibid.* citing *Huntington Memorial Hospital v. Superior Court* (2005) 131 Cal.App.4th

17 893.)

### B.  *Plaintiff* Has the Burden of Establishing That the Meal and Rest Break Provisions of the Appropriate IWC Orders as Referenced in the Labor Code Apply to Her, and Thus, the Exemption Is Not an Affirmative Defense

18
19
20     Plaintiff cites specifically to section 226.7 of the Labor Code as authority for her cause of

21 action for compensation for failure to provide rest and meal periods.  (See e.g. plaintiff's trial brief

22 at p. 7:4-9; Second Amended Complaint at ¶ 82.)  That section provides: "No employer shall

23 require any employee to work during any meal or rest period *mandated by an applicable order*

24 *of the Industrial Welfare Commission*."  (Lab. Code § 226.7, subd. (a) [Emphasis added].)  In

25 order for this statute to apply to plaintiff, she must establish that such periods were in fact

26 mandated by an applicable order of the IWC.  Plaintiff duly recognizes the authority of the IWC

27
28

**DEFENDANT CATHOLIC HEALTHCARE WEST'S FURTHER BRIEFING ON THE ISSUE OF PLAINTIFF'S CLAIM OF ENTITLEMENT TO COMPENSATION FOR MEAL AND REST BREAKS**
Case No.: 2:09-CV-02972-KJM-KJN

1   orders in this circumstance.  Indeed, plaintiff claims "Pursuant to IWC wage orders, employees

2   are entitled to an unpaid 30-minute, duty-free meal period after working for five hours and a paid

3   10-minute rest period per four hours of work."  (Plaintiff's Trial Brief at p. 7:13-14.)  Plaintiff

4   cites to no IWC order (which would be contained in the California Code of Regulations under

5   Title 8, Industrial Relations) which so states and which applies to her.  Rather, she chooses to

6   ignore the fact that the IWC has issued a wage order specifically exempting plaintiff from such

7   meal and rest periods.

8           There happens to be a specific IWC order that regulates "Wages, *Hours*, and Working

9   Conditions in *Professional*, Technical, Clerical, Mechanical, and similar Occupations."  (8 CCR

10   § 11040 [Emphasis added].)  Indeed, as will be shown below, this is the very order upon which

11   *plaintiff* relies when making her claim for compensation for the alleged denial of such rest and

12   meal periods.  The only problem is that the sections which plaintiff cites *do not apply to her* by

13   the very language of the initial sections of the order itself.  **Simple statutory construction**

14   **precludes plaintiff's claim for compensation for meal and rest breaks.**  For the convenience

15   of the Court, a full copy of 8 California Code of Regulations, Section 11040 is attached herewith

16   as Exhibit "A," and Mercy requests that the Court take judicial notice of this statutory authority.

17   This IWC order states, in relevant part:

18           This order shall apply to all persons employed in *professional*,
            technical, clerical, mechanical, and similar occupations whether paid

19           on a time, piece rate, commission, or other basis, except that:

20           (A) *Provisions of sections 3 through 12 shall not apply to persons*
            *employed in administrative, executive, or professional capacities.*

21

22   (8 CCR § 11040, subd. 1(A).)  The Order goes on to define who qualifies as a "professional," as

23   follows:

24           (3) Professional Exemption: A person employed in a professional
            capacity means any employee who meets all of the following

25           requirements:

26   ///

27           (a) **Who is licensed or certified by the State of California and is**
            **primarily engaged in the practice of one or more of the following**

28

**DEFENDANT CATHOLIC HEALTHCARE WEST'S FURTHER BRIEFING ON THE ISSUE OF PLAINTIFF'S**
**CLAIM OF ENTITLEMENT TO COMPENSATION FOR MEAL AND REST BREAKS**
Case No.: 2:09-CV-02972-KJM-KJN

**recognized professions**: law, **medicine**, dentistry, optometry, architecture, engineering, teaching, or accounting; *or*

(b) Who is primarily engaged in an occupation commonly recognized as a learned or artistic profession.... [For the purposes of this case, the *or* makes this section inapplicable, given that plaintiff was admittedly engaged in the practice of medicine as a Physician's Assistant, licensed in the State of California.]

(c) Who customarily and regularly exercises discretion and independent judgment in the performance of duties set forth in paragraphs (a) and (b).

(d) Who earns a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full time employment is defined in Labor Code Section 515(c) as 40 hours per week.

(e) [Extends subparagraph (d) even further under federal law provisions; unnecessary here given that plaintiff claims to have made more than $170,000 per year, far in excess of twice the minimum wage at 40 hours per week.]

(f) Notwithstanding the provisions of this subparagraph, pharmacists employed to engage in the practice of pharmacy, and registered nurses employed to engage in the practice of nursing, shall not be considered exempt professional employees, nor shall they be considered exempt from coverage for the purposes of this subparagraph unless they individually meet the criteria established for exemption as executive or administrative employees.

(g) Subparagraph (f) above shall not apply to the following advance practice nurses: ...[States a further exemption to the exemption applicable to advance practice nurses.]

(h) Except, as provided in subparagraph (i), an employee in the computer software field who is paid on an hourly basis shall be exempt, if all fo the following apply: ...[Provisions specifically applicable to computer software employees.]

(8 CCR § 11040, subd. 1(A)(3), (a) through (h).)  Additional definitions include:

2. Definitions

...

(O) "Professional, Technical, Clerical, Mechanical, and Similar Occupations" includes professional, semiprofessional, managerial, supervisorial, laboratory, research, technical, clerical, office work, and mechanical occupations. Said occupations shall include, but not be limited to, the following: ... medical and dental technicians and technologists; ... nurses; ... and other related occupations listed as

4

> professional, semiprofessional, technical, clerical, mechanical, and kindred occupations.

(*Id.* at subd. 2(O).)

In other words, this IWC order itself provides that various of its provisions would not apply to plaintiff. Interestingly, plaintiff claims that the "IWC orders" provide that "employees are entitled to an unpaid 30-minute, duty-free meal period after working for five hours and a paid 10-minute rest period per four hours of work." (Plaintiff's Trial Brief at p. 7:13-14.) Plaintiff does not cite to the specific IWC order which so states, because it is the very IWC Order contained in 8 CCR Section 11040 under the very provisions which the above initial subdivisions say *do not apply* to plaintiff. Section 11, which *does not apply* to professionals such as plaintiff, provides, in pertinent part:

> 11. Meal Periods
>
> (A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. Unless the employee is relieved of all duty during a 30 minutes meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(8 CCR § 11040, subd. 11(A).) Interestingly, this order also covers the famed "meal waiver" to which plaintiff has raised various objections. The statute illustrates that such waiver was not necessary, because this specific issue did not apply to Physician Assistants. Nevertheless, even if it did apply, plaintiff admits she signed the waiver, and that she never revoked it. Therefore, plaintiff should not be entitled to any additional compensation for her meal periods.

Section 12, which also *does not apply* to plaintiff, states, in pertinent part:

///

> 12. Rest Periods:

**DEFENDANT CATHOLIC HEALTHCARE WEST'S FURTHER BRIEFING ON THE ISSUE OF PLAINTIFF'S CLAIM OF ENTITLEMENT TO COMPENSATION FOR MEAL AND REST BREAKS**
Case No.: 2:09-CV-02972-KJM-KJN

> (A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(8 CCR § 11040, subd. 12(A).)  Again, this is among the sections of the IWC order which do not apply to professionals such as plaintiff, as a Physician Assistant.

Simple statutory construction means that plaintiff's claim for meal and rest periods simply cannot be maintained as a matter of law, not based on any affirmative defense, but based on the very statute upon which she relies as the basis for her claim. **It simply does not apply to her and so states in the opening paragraphs!**

**C.     If the Exemption Should Have Been Raised as an Affirmative Defense, Mercy Seeks Leave to Amend the Complaint, Which Should Liberally Be Construed to Conform to Proof**

The Court has power to permit a defendant to amend its answer, even at the time of trial, to conform to proof. (FRCP 15(a); *Williams v. Lampe* (7th Cir. 2005) 399 F.3d 867, 870.) This is generally liberally allowed, especially if there is no prejudice to the plaintiff. This "meal waiver" issue has been discussed extensively in discovery, and thus it should come as no surprise to plaintiff that defendant has intended to assert such as a defense. Moreover, it is a question of law whether or not plaintiff is entitled to rest and meal breaks under the statutes which form the basis of her claim. Plaintiff can hardly claim prejudice simply because she or her counsel did not fully understand the authority upon which they relied.

**D.     Conclusion**

Plaintiff claims she was entitled to meal and rest periods, and that the failure to provide them constitutes a basis for monetary recovery. She bases her alleged entitlement on the Labor Code, which specifically requires an underlying order from the IWC in order for the compensation provided in the Labor Code to be recovered. While plaintiff cites *generally* to an unidentified

DEFENDANT CATHOLIC HEALTHCARE WEST'S FURTHER BRIEFING ON THE ISSUE OF PLAINTIFF'S CLAIM OF ENTITLEMENT TO COMPENSATION FOR MEAL AND REST BREAKS
Case No.: 2:09-CV-02972-KJM-KJN

1 | IWC order, close inspection of the very order upon which plaintiff relies illustrates why defendant

2 | need not have asserted any affirmative defense regarding plaintiff's exemption from meal and rest

3 | periods. The exemption is provided in the express language of the very IWC order upon which

4 | plaintiff relies as the basis for her claim. Indeed, the opening provisions of that order clearly

5 | indicate the provisions which would not apply to plaintiff, and those include provisions for meal

6 | periods and rest breaks. Mercy requests that the Court take judicial notice of the IWC Order,

7 | attached hereto as Exhibit "A."

8 | Based on the statutory language, Mercy need not have asserted any "affirmative defense."

9 | *Plaintiff* bears the burden of establishing that the statutes upon which she relies actually apply to

10 | her. In this case, they plainly do not. Therefore, as this raises a purely legal issue, the Court

11 | should preclude plaintiff from arguing she was entitled to meal periods and rest breaks. At a

12 | minimum, Mercy should be allowed to offer evidence, consisting of the statutory scheme itself,

13 | that plaintiff was exempt from entitlement to any such breaks.

14 | Finally, as an alternative, if the Court determines that Mercy should have asserted this

15 | exemption as an affirmative defense, Mercy respectfully requests that the Court allow Mercy to

16 | amend its answer to conform to proof and allow evidence of plaintiff's exemption, in addition to

17 | the meal waiver form.

18 | Dated: January 31, 2012

LA FOLLETTE, JOHNSON,
DE HAAS, FESLER & AMES

20 | By:_____/s/ Judith Clark Martin_____
JUDITH CLARK MARTIN
DAVID L. DITORA
Attorneys for Defendant,
CATHOLIC HEALTHCARE WEST
dba MERCY GENERAL HOSPITAL
(erroneously sued and served herein as
CATHOLIC HEALTHCARE WEST
and MERCY GENERAL HOSPITAL)
655 University Avenue, Suite 119
Sacramento, CA 95825
(916) 563-3100
(916) 565-3704 Facsimile
Email: JCMartin@ljdfa.com
Email: DDitora@ljdfa.com

**DEFENDANT CATHOLIC HEALTHCARE WEST'S FURTHER BRIEFING ON THE ISSUE OF PLAINTIFF'S
CLAIM OF ENTITLEMENT TO COMPENSATION FOR MEAL AND REST BREAKS**
Case No.: 2:09-CV-02972-KJM-KJN

# EXHIBIT "A"

8 CCR § 11040

Cal. Admin. Code tit. 8, § 11040

Barclays Official California Code of Regulations Currentness
   Title 8. Industrial Relations
      Division 1. Department of Industrial Relations
         Chapter 5. Industrial Welfare Commission
            Group 2. Industry and Occupation Orders
               Article 4. Professional, Technical, Clerical, Mechanical, and Similar Occupations (Refs & Annos)
                  **➡§ 11040. Order Regulating Wages, Hours, and Working Conditions in Professional, Technical, Clerical, Mechanical, and Similar Occupations.**

1. Applicability of Order This order shall apply to all persons employed in professional, technical, clerical, mechanical, and similar occupations whether paid on a time, piece rate, commission, or other basis, except that:

(A) Provisions of sections 3 through 12 shall not apply to persons employed in administrative, executive, or professional capacities. The following requirements shall apply in determining whether an employee's duties meet the test to qualify for an exemption from those sections:

(1) Executive Exemption A person employed in an executive capacity means any employee:

(a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretion and independent judgment; and

(e) Who is primarily engaged in duties which meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.102, 541.104-111, and 541.115-16. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

(f) Such an employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

(2) Administrative Exemption A person employed in an administrative capacity means any employee:

(a) Whose duties and responsibilities involve either:

(I) The performance of office or non-manual work directly related to management policies or general business operations of his/her employer or his employer's customers; or

(II) The performance of functions in the administration of a school system, or educational establishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on therein; and

(b) Who customarily and regularly exercises discretion and independent judgment; and

(c) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined for purposes of this section); or

(d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; or

(e) Who executes under only general supervision special assignments and tasks; and

(f) Who is primarily engaged in duties that meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

(g) Such employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in California Labor Code Section 515(c) as 40 hours per week.

(3) Professional Exemption A person employed in a professional capacity means any employee who meets all of the following requirements:

(a) Who is licensed or certified by the State of California and is primarily engaged in the practice of one of the following recognized professions: law, medicine, dentistry, optometry, architecture, engineering, teaching, or accounting; or

(b) Who is primarily engaged in an occupation commonly recognized as a learned or artistic profession. For the purposes of this subsection, "learned or artistic profession" means an employee who is primarily engaged in the performance of:

(i) Work requiring knowledge of an advanced type in a field or science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, or work that is an essential part of or necessarily incident to any of the above work; or

(ii) Work that is original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training), and the result of which depends primarily on the invention, imagination, or talent of the employee or work that is an

essential part of or necessarily incident to any of the above work; and

(iii) Whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time.

(c) Who customarily and regularly exercises discretion and independent judgment in the performance of duties set forth in subparagraphs (a) and (b).

(d) Who earns a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

(e) Subparagraph (b) above is intended to be construed in accordance with the following provisions of federal law as they existed as of the date of this wage order: 29 C.F.R. Sections 541.207, 541.301(a)-(d), 541.302, 541.306, 541.307, 541.308, and 541.310.

(f) Notwithstanding the provisions of this subparagraph, pharmacists employed to engage in the practice of pharmacy, and registered nurses employed to engage in the practice of nursing, shall not be considered exempt professional employees, nor shall they be considered exempt from coverage for the purposes of this subparagraph unless they individually meet the criteria established for exemption as executive or administrative employees.

(g) Subparagraph (f) above shall not apply to the following advanced practice nurses:

(i) Certified nurse midwives who are primarily engaged in performing duties for which certification is required pursuant to Article 2.5 (commencing with Section 2746) of Chapter 6 of Division 2 of the Business and Professions Code.

(ii) Certified nurse anesthetists who are primarily engaged in performing duties for which certification is required pursuant to Article 7 (commencing with Section 2825) of Chapter 6 of Division 2 of the Business and Professions Code.

(iii) Certified nurse practitioners who are primarily engaged in performing duties for which certification is required pursuant to Article 8 (commencing with Section 2834) of Chapter 6 of Division 2 of the Business and Professions Code.

(iv) Nothing in this subparagraph shall exempt the occupations set forth in clauses (i), (ii), and (iii) from meeting the requirements of subsection 1(A)(3)(a)-(d) above.

(h) Except, as provided in subparagraph (i), an employee in the computer software field who is paid on an hourly basis shall be exempt, if all of the following apply:

(i) The employee is primarily engaged in work that is intellectual or creative and that requires the exercise of discretion and independent judgment.

(ii) The employee is primarily engaged in duties that consist of one or more of the following:

- The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications.

- The design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications.

- The documentation, testing, creation, or modification of computer programs related to the design of software or hardware for computer operating systems.

(iii) The employee is highly skilled and is proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming, and software engineering. A job title shall not be determinative of the applicability of this exemption.

(iv) The employee's hourly rate of pay is not less than forty-two dollars and sixty four cents ($42.64). The Division of Labor Statistics and Research shall adjust this pay rate on October 1 of each year to be effective on January 1 of the following year by an amount equal to the percentage increase in the California Consumer Price Index for Urban Wage Earners and Clerical Workers.

(i) The exemption provided in subparagraph (h) does not apply to an employee if any of the following apply:

(i) The employee is a trainee or employee in an entry-level position who is learning to become proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming, and software engineering.

(ii) The employee is in a computer-related occupation but has not attained the level of skill and expertise necessary to work independently and without close supervision.

(iii) The employee is engaged in the operation of computers or in the manufacture, repair, or maintenance of computer hardware and related equipment.

(iv) The employee is an engineer, drafter, machinist, or other professional whose work is highly dependent upon or facilitated by the use of computers and computer software programs and who is skilled in computer-aided design software, including CAD/CAM, but who is not in a computer systems analysis or programming occupation.

(v) The employee is a writer engaged in writing material, including box labels, product descriptions, documentation, promotional material, setup and installation instructions, and other similar written information, either for print or for on screen media or who writes or provides content material intended to be read by customers, subscribers, or visitors to computer-related media such as the World Wide Web or CD-ROMs.

(vi) The employee is engaged in any of the activities set forth in subparagraph (h) for the purpose of creating imagery for effects used in the motion picture, television, or theatrical industry.

(B) Except as provided in Sections 1, 2, 4, 10, and 20, the provisions of this order shall not apply to any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district.

(C) The provisions of this order shall not apply to outside salespersons.

(D) The provisions of this order shall not apply to any individual who is the parent, spouse, child, or legally adopted child of the employer.

(E) The provisions of this order shall not apply to any individual participating in a national service program, such as AmeriCorps, carried out using assistance provided under Section 12571 of Title 42 of the United States Code. (See Stats. 2000, ch. 365, amending Labor Code Section 1171.)

2. Definitions

(A) An "alternative workweek schedule" means any regularly scheduled workweek requiring an

employee to work more than eight (8) hours in a 24-hour period.

(B) "Commission" means the Industrial Welfare Commission of the State of California.

(C) "Division" means the Division of Labor Standards Enforcement of the State of California.

(D) "Emergency" means an unpredictable or unavoidable occurrence at unscheduled intervals requiring immediate action.

(E) "Employ" means to engage, suffer, or permit to work.

(F) "Employee" means any person employed by an employer.

(G) "Employees in the health care industry" means any of the following:

(1) Employees in the health care industry providing patient care; or

(2) Employees in the health care industry working in a clinical or medical department, including pharmacists dispensing prescriptions in any practice setting; or

(3) Employees in the health care industry working primarily or regularly as a member of a patient care delivery team; or

(4) Licensed veterinarians, registered veterinary technicians and unregistered animal health technicians providing patient care.

(H) "Employer" means any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person.

(I) "Health care emergency" consists of an unpredictable or unavoidable occurrence at unscheduled intervals relating to healthcare delivery, requiring immediate action.

(J) "Health care industry" is defined as hospitals, skilled nursing facilities, intermediate care and residential care facilities, convalescent care institutions, home health agencies, clinics operating 24 hours per day, and clinics performing surgery, urgent care, radiology, anesthesiology, pathology, neurology or dialysis.

(K) "Hours worked" means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so. Within the health care industry, the term "hours worked" means the time during which an employee is suffered or permitted to work for the employer, whether or not required to do so, as interpreted in accordance with the provisions of the Fair Labor Standards Act.

(L) "Minor" means, for the purpose of this order, any person under the age of 18 years.

(M) "Outside salesperson" means any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities.

(N) "Primarily" as used in Section 1, Applicability, means more than one-half the employee's work time.

(O) "Professional, Technical, Clerical, Mechanical, and Similar Occupations" includes professional, semiprofessional, managerial, supervisorial, laboratory, research, technical, clerical, office work, and mechanical occupations. Said occupations shall include, but not be

limited to, the following: accountants; agents; appraisers; artists; attendants; audio-visual technicians; bookkeepers; bundlers; billposters; canvassers; carriers; cashiers; checkers; clerks; collectors; communications and sound technicians; compilers; copy holders; copy readers; copy writers; computer programmers and operators; demonstrators and display representatives; dispatchers; distributors; door-keepers; drafters; elevator operators; estimators; editors; graphic arts technicians; guards; guides; hosts; inspectors; installers; instructors; interviewers; investigators; librarians; laboratory workers; machine operators; mechanics; mailers; messengers; medical and dental technicians and technologists; models; nurses; packagers; photographers; porters and cleaners; process servers; printers; proof readers; salespersons and sales agents; secretaries; sign erectors; sign painters; social workers; solicitors; statisticians; stenographers; teachers; telephone, radio-telephone, telegraph and call-out operators; tellers; ticket agents; tracers; typists; vehicle operators; x-ray technicians; their assistants and other related occupations listed as professional, semiprofessional, technical, clerical, mechanical, and kindred occupations.

(P) "Shift" means designated hours of work by an employee, with a designated beginning time and quitting time.

(Q) "Split shift" means a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods.

(R) "Teaching" means, for the purpose of Section 1 of this order, the profession of teaching under a certificate from the Commission for Teacher Preparation and Licensing or teaching in an accredited college or university.

(S) "Wages" includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation.

(T) "Workday" and "day" mean any consecutive 24-hour period beginning at the same time each calendar day.

(U) "Workweek" and "week" mean any seven (7) consecutive days, starting with the same calendar day each week. "Workweek" is a fixed and regularly recurring period of 168 hours, seven (7) consecutive 24-hour periods.

3. Hours and Days of Work

   (A) Daily Overtime-General Provisions

      (1) The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 1/2) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than:

         (a) One and one-half (1 1/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and

         (b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

(c) The overtime rate of compensation required to be paid to a nonexempt full-time salaried employee shall be computed by using the employee's regular hourly salary as one-fortieth (1/40) of the employee's weekly salary.

(B) Alternative Workweek Schedules

(1) No employer shall be deemed to have violated the daily overtime provisions by instituting, pursuant to the election procedures set forth in this wage order, a regularly scheduled alternative workweek schedule of not more than ten (10) hours per day within a 40 hour workweek without the payment of an overtime rate of compensation. All work performed in any workday beyond the schedule established by the agreement up to 12 hours a day or beyond 40 hours per week shall be paid at one and one-half (1 1/2) times the employee's regular rate of pay. All work performed in excess of 12 hours per day and any work in excess of eight (8) hours on those days worked beyond the regularly scheduled number of workdays established by the alternative workweek agreement shall be paid at double the employee's regular rate of pay. Any alternative workweek agreement adopted pursuant to this section shall provide for not less than four (4) hours of work in any shift. Nothing in this section shall prohibit an employer, at the request of the employee, to substitute one day of work for another day of the same length in the shift provided by the alternative workweek agreement on an occasional basis to meet the personal needs of the employee without the payment of overtime. No hours paid at either one and one-half (1 1/2) or double the regular rate of pay shall be included in determining when 40 hours have been worked for the purpose of computing overtime compensation.

(2) If an employer, whose employees have adopted an alternative workweek agreement permitted by this order requires an employee to work fewer hours than those that are regularly scheduled by the agreement, the employer shall pay the employee overtime compensation at a rate of one and one-half (1 1/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours, and double the employee's regular rate of pay for all hours worked in excess of 12 hours for the day the employee is required to work the reduced hours.

(3) An employer shall not reduce an employee's regular rate of hourly pay as a result of the adoption, repeal or nullification of an alternative workweek schedule.

(4) An employer shall explore any available reasonable alternative means of accommodating the religious belief or observance of an affected employee that conflicts with an adopted alternative workweek schedule, in the manner provided by subdivision (j) of Section 12940 of the Government Code.

(5) An employer shall make a reasonable effort to find a work schedule not to exceed eight (8) hours in a workday, in order to accommodate any affected employee who was eligible to vote in an election authorized by this section and who is unable to work the alternative workweek schedule established as the result of that election.

(6) An employer shall be permitted, but not required, to provide a work schedule not to exceed eight (8) hours in a workday to accommodate any employee who is hired after the date of the election and who is unable to work the alternative workweek schedule established by the election.

(7) Arrangements adopted in a secret ballot election held pursuant to this order prior to 1998, or under the rules in effect prior to 1998, and before the performance of the work, shall remain valid after July 1, 2000 provided that the results of the election are reported by the employer to the Division of Labor Statistics and Research by January 1, 2001, in accordance with the requirements of section (C) below (Election Procedures). If an employee was voluntarily working an alternative workweek schedule of not more than ten (10) hours a day as of July 1, 1999, that alternative workweek schedule was based on an individual agreement made after January 1, 1998 between the employee and employer, and the employee

submitted, and the employer approved, a written request on or before May 30, 2000 to continue the agreement, the employee may continue to work that alternative workweek schedule without payment of an overtime rate of compensation for the hours provided in the agreement. The employee may revoke his/her voluntary authorization to continue such a schedule with 30 days written notice to the employer. New arrangements can only be entered into pursuant to the provisions of this section. Notwithstanding the foregoing, if a health care industry employer implemented a reduced rate for 12-hour shift employees in the last quarter of 1999 and desires to re-implement a flexible work arrangement that includes 12-hour shifts at straight time for the same work unit, the employer must pay a base rate to each affected employee in the work unit that is no less than that employee's base rate in 1999 immediately prior to the date of the rate reduction.

(8) Notwithstanding the above provisions regarding alternative workweek schedules, no employer of employees in the health care industry shall be deemed to have violated the daily overtime provisions by instituting, pursuant to the election procedures set forth in this wage order a regularly scheduled alternative workweek schedule that includes work days exceeding ten (10) hours but not more than 12 hours within a 40 hour workweek without the payment of overtime compensation, provided that:

   (a) An employee who works beyond 12 hours in a workday shall be compensated at double the employee's regular rate of pay for all hours in excess of 12;

   (b) An employee who works in excess of 40 hours in a workweek shall be compensated at one and one-half (1 1/2) times the employee's regular rate of pay for all hours over 40 hours in the workweek;

   (c) Any alternative workweek agreement adopted pursuant to this section shall provide for not less than four (4) hours of work in any shift;

   (d) The same overtime standards shall apply to employees who are temporarily assigned to a work unit covered by this subsection;

   (e) Any employer who instituted an alternative workweek schedule pursuant to this subsection shall make a reasonable effort to find another work assignment for any employee who participated in a valid election prior to 1998 pursuant to the provisions of Wage Orders 4 and 5 and who is unable to work the alternative workweek schedule established;

   (f) An employer engaged in the operation of a licensed hospital or in providing personnel for the operation of a licensed hospital who institutes, pursuant to a valid order of the Commission, a regularly scheduled alternative workweek that includes no more than three (3) 12-hour workdays, shall make a reasonable effort to find another work assignment for any employee who participated in the vote which authorized the schedule and is unable to work the 12-hour shifts. An employer shall not be required to offer a different work assignment to an employee if such a work assignment is not available or if the employee was hired after the adoption of the 12 hour, three (3) day alternative workweek schedule.

(9) No employee assigned to work a 12-hour shift established pursuant to this order shall be required to work more than 12-hours in any 24-hour period unless the Chief Nursing Officer or authorized executive declares that:

   (a) A "health care emergency", as defined above, exists in this order; and

   (b) All reasonable steps have been taken to provide required staffing; and

   (c) Considering overall operational status needs, continued overtime is necessary to provide required staffing.

(10) Provided further that no employee shall be required to work more than 16 hours in a 24 hour period unless by voluntary mutual agreement of the employee and the employer, and no employee shall work more than 24 consecutive hours until said employee receives not less than eight (8) consecutive hours off duty immediately following the twenty-four consecutive hours of work.

(11) Notwithstanding subsection (B)(9) above, an employee may be required to work up to 13 hours in any 24 hour period if the employee scheduled to relieve the subject employee does not report for duty as scheduled and does not inform the employer more than two (2) hours in advance of that scheduled shift that he/she will not be appearing for duty as scheduled.

(C) Election Procedures

Election procedures for the adoption and repeal of alternative workweek schedules require the following:

(1) Each proposal for an alternative workweek schedule shall be in the form of a written agreement proposed by the employer. The proposed agreement must designate a regularly scheduled alternative workweek in which the specified number of work days and work hours are regularly recurring. The actual days worked within that alternative workweek schedule need not be specified. The employer may propose a single work schedule that would become the standard schedule for workers in the work unit, or a menu of work schedule options, from which each employee in the unit would be entitled to choose. If the employer proposes a menu of work schedule options, the employee may, with the approval of the employer, move from one menu option to another.

(2) In order to be valid, the proposed alternative workweek schedule must be adopted in a secret ballot election, before the performance of work, by at least a two-thirds (2/3) vote of the affected employees in the work unit. The election shall be held during regular working hours at the employees' work site. For purposes of this subsection, "affected employees in the work unit" may include all employees in a readily identifiable work unit, such as a division, a department, a job classification, a shift, a separate physical location, or a recognized subdivision of any such work unit. A work unit may consist of an individual employee as long as the criteria for an identifiable work unit in this subsection are met.

(3) Prior to the secret ballot vote, any employer who proposed to institute an alternative workweek schedule shall have made a disclosure in writing to the affected employees, including the effects of the proposed arrangement on the employees' wages, hours, and benefits. Such a disclosure shall include meeting(s), duly noticed, held at least 14 days prior to voting, for the specific purpose of discussing the effects of the alternative workweek schedule. An employer shall provide that disclosure in a non-English language, as well as in English, if at least five (5) percent of the affected employees primarily speak that non-English language. The employer shall mail the written disclosure to employees who do not attend the meeting. Failure to comply with this paragraph shall make the election null and void.

(4) Any election to establish or repeal an alternative workweek schedule shall be held at the work site of the affected employees. The employer shall bear the costs of conducting any election held pursuant to this section. Upon a complaint by an affected employee, and after an investigation by the labor commissioner, the labor commissioner may require the employer to select a neutral third party to conduct the election.

(5) Any type of alternative workweek schedule that is authorized by the Labor Code may be repealed by the affected employees. Upon a petition of one-third (1/3) of the affected employees, a new secret ballot election shall be held and a two-thirds (2/3) vote of the affected employees shall be required to reverse the alternative workweek schedule. The election to repeal the alternative workweek schedule shall be held not more than 30 days after the petition is submitted to the employer, except that the election shall be held not less than 12 months after the date that the same group of employees voted in an election held to adopt

or repeal an alternative workweek schedule. However, where an alternative workweek schedule was adopted between October 1, 1999 and October 1, 2000, a new secret ballot election to repeal the alternative workweek schedule shall not be subject to the 12 month interval between elections. The election shall take place during regular working hours at the employees' work site. If the alternative workweek schedule is revoked, the employer shall comply within 60 days. Upon proper showing of undue hardship, the Division of Labor Standards Enforcement may grant an extension of time for compliance.

(6) Only secret ballots may be cast by affected employees in the work unit at any election held pursuant to this section. The results of any election conducted pursuant to this section shall be reported by the employer to the Division of Labor Statistics and Research within 30 days after the results are final, and the report of election results shall be a public document. The report shall include the final tally of the vote, the size of the unit, and the nature of the business of the employer.

(7) Employees affected by a change in the work hours resulting from the adoption of an alternative workweek schedule may not be required to work those new work hours for at least 30 days after the announcement of the final results of the election.

(8) Employers shall not intimidate or coerce employees to vote either in support of or in opposition to a proposed alternative workweek. No employees shall be discharged or discriminated against for expressing opinions concerning the alternative workweek election or for opposing or supporting its adoption or repeal. However, nothing in this section shall prohibit an employer from expressing his/her position concerning that alternative workweek to the affected employees. A violation of this paragraph shall be subject to Labor Code Section 98 et seq.

(D) The provisions of subsections (A), (B) and (C) above shall not apply to any employee whose earnings exceed one and one-half (1 1/2) times the minimum wage if more than half of that employee's compensation represents commissions.

(E) One and one-half (1 1/2) times a minor's regular rate of pay shall be paid for all work over 40 hours in any workweek except minors 16 or 17 years old who are not required by law to attend school and may therefore be employed for the same hours as an adult are subject to subsection (A) or (B) and (C) above.

(VIOLATIONS OF CHILD LABOR LAWS are subject to civil penalties of from $500 to $10,000 as well as to criminal penalties. Refer to California Labor Code Sections 1285 to 1312 and 1390 to 1399 for additional restrictions on the employment of minors and for descriptions of criminal and civil penalties for violation of the child labor laws. Employers should ask school districts about any required work permits.)

(F) An employee may be employed on seven (7) workdays in one workweek when the total hours of employment during such workweek do not exceed 30 and the total hours of employment in any one workday thereof do not exceed six (6).

(G) If a meal period occurs on a shift beginning or ending at or between the hours of 10 p.m. and 6 a.m., facilities shall be available for securing hot food and drink or for heating food or drink, and a suitable sheltered place shall be provided in which to consume such food or drink.

(H) The provisions of Labor Code Sections 551 and 552 regarding one (1) day's rest in seven (7) shall not be construed to prevent an accumulation of days of rest when the nature of the employment reasonably requires the employee to work seven (7) or more consecutive days; provided, however, that in each calendar month, the employee shall receive the equivalent of one (1) day's rest in seven (7).

(I) Except as provided in subsections (E), (H) and (L), this section shall not apply to any employee covered by a valid collective bargaining agreement if the agreement expressly

provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

(J) Notwithstanding subsection (I) above, where the employer and a labor organization representing employees of the employer have entered into a valid collective bargaining agreement pertaining to the hours of work of the employees, the requirement regarding the equivalent of one (1) day's rest in seven (7) (see subsection (H) above) shall apply, unless the agreement expressly provides otherwise.

(K) The provisions of this section are not applicable to employees whose hours of service are regulated by:

　　(1) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers; or

　　(2) Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200 and following sections, regulating hours of drivers.

(L) No employee shall be terminated or otherwise disciplined for refusing to work more than 72 hours in any workweek, except in an emergency as defined in Section 2(D).

(M) If an employer approves a written request of an employee to make up work time that is or would be lost as a result of a personal obligation of the employee, the hours of that makeup work time, if performed in the same workweek in which the work time was lost, may not be counted toward computing the total number of hours worked in a day for purposes of the overtime requirements, except for hours in excess of 11 hours of work in one (1) day or 40 hours of work in one (1) workweek. If an employee knows in advance that he/she will be requesting makeup time for a personal obligation that will recur at a fixed time over a succession of weeks, the employee may request to make up work time for up to four (4) weeks in advance; provided, however, that the makeup work must be performed in the same week that the work time was lost. An employee shall provide a signed written request for each occasion that the employee makes a request to make up work time pursuant to this subsection. While an employer may inform an employee of this makeup time option, the employer is prohibited from encouraging or otherwise soliciting an employee to request the employer's approval to take personal time off and make up the work hours within the same workweek pursuant to this subsection.

4. Minimum Wages

(A) Every employer shall pay to each employee wages not less than six dollars and twenty-five cents ($6.25) per hour for all hours worked, effective January 1, 2001, and not less than six dollars and seventy-five cents ($6.75) per hour for all hours worked, effective January 1, 2002, except:

LEARNERS: Employees during their first one 160 hours of employment in occupations in which they have no previous similar or related experience, may be paid not less than 85 percent of the minimum wage rounded to the nearest nickel.

(B) Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

(C) When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment.

(D) The provisions of this section shall not apply to apprentices regularly indentured under the State Division of Apprenticeship Standards.

5. Reporting Time Pay

(A) Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage.

(B) If an employee is required to report for work a second time in any one workday and is furnished less than two (2) hours of work on the second reporting, said employee shall be paid for two (2) hours at the employee's regular rate of pay, which shall not be less than the minimum wage.

(C) The foregoing reporting time pay provisions are not applicable when:

(1) Operations cannot commence or continue due to threats to employees or property; or when recommended by civil authorities; or

(2) Public utilities fail to supply electricity, water, or gas, or there is a failure in the public utilities, or sewer system; or

(3) The interruption of work is caused by an Act of God or other cause not within the employer's control.

(D) This section shall not apply to an employee on paid standby status who is called to perform assigned work at a time other than the employee's scheduled reporting time.

6. Licenses for Disabled Workers

(A) A license may be issued by the Division authorizing employment of a person whose earning capacity is impaired by physical disability or mental deficiency at less than the minimum wage. Such licenses shall be granted only upon joint application of employer and employee and employee's representative if any.

(B) A special license may be issued to a nonprofit organization such as a sheltered workshop or rehabilitation facility fixing special minimum rates to enable the employment of such persons without requiring individual licenses of such employees.

(C) All such licenses and special licenses shall be renewed on a yearly basis or more frequently at the discretion of the Division. (See California Labor Code, Sections 1191 and 1191.5)

7. Records

(A) Every employer shall keep accurate information with respect to each employee including the following:

(1) Full name, home address, occupation and social security number.

(2) Birth date, if under 18 years, and designation as a minor.

(3) Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded.

(4) Total wages paid each payroll period, including value of board, lodging, or other

compensation actually furnished to the employee.

(5) Total hours worked in the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request.

(6) When a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided to employees. An accurate production record shall be maintained by the employer.

(B) Every employer shall semimonthly or at the time of each payment of wages furnish each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item.

(C) All required records shall be in the English language and in ink or other indelible form, properly dated, showing month, day and year, and shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. An employee's records shall be available for inspection by the employee upon reasonable request.

(D) Clocks shall be provided in all major work areas or within reasonable distance thereto insofar as practicable.

## 8. Cash Shortage and Breakage

No employer shall make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee.

## 9. Uniforms and Equipment

(A) When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer. The term "uniform" includes wearing apparel and accessories of distinctive design or color. NOTE': This section shall not apply to protective apparel regulated by the Occupational Safety and Health Standards Board.

(B) When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft. This subsection (B) shall not apply to apprentices regularly indentured under the State Division of Apprenticeship Standards. NOTE': This section shall not apply to protective equipment and safety devices on tools regulated by the Occupational Safety and Health Standards Board.

(C) A reasonable deposit may be required as security for the return of the items furnished by the employer under provisions of subsections (A) and (B) of this section upon issuance of a receipt to the employee for such deposit. Such deposits shall be made pursuant to Section 400 and following of the Labor Code or an employer with the prior written authorization of the employee may deduct from the employee's last check the cost of an item furnished pursuant to (A) and (B) above in the event said item is not returned. No deduction shall be made at any time for normal wear and tear. All items furnished by the employer shall be returned by the employee upon completion of the job.

## 10. Meals and Lodging

(A) "Meal" means an adequate, well-balanced serving of a variety of wholesome, nutritious foods.

(B) "Lodging" means living accommodations available to the employee for full-time occupancy which are adequate, decent, and sanitary according to usual and customary standards. Employees shall not be required to share a bed.

(C) Meals or lodging may not be credited against the minimum wage without a voluntary written agreement between the employer and the employee. When credit for meals or lodging is used to meet part of the employer's minimum wage obligation, the amounts so credited may not be more than the following:

| Effective Dates:<br>Lodging: | January 1, 2001 | January 1, 2002 |
|---|---|---|
| Room occupied alone | $29.10 per week | $31.75 per week |
| Room shared | $24.25 per week | $26.20 per week |
| Apartment-two thirds (2/3) of the ordinary rental value, and in no event more than | $352.90 per month | $381.20 per month |
| Where a couple are both employed by the employer, two-thirds (2/3) of the ordinary rental value, and in no event more than | $522.10 per month | $563.90 per month |
| Meals: | | |
| Breakfast | $2.25 | $2.45 |
| Lunch | $3.10 | $3.35 |
| Dinner | $4.15 | $4.50 |

(D) Meals evaluated as part of the minimum wage must be bona fide meals consistent with the employee's work shift. Deductions shall not be made for meals not received or lodging not used.

(E) If, as a condition of employment, the employee must live at the place of employment or occupy quarters owned or under the control of the employer, then the employer may not charge rent in excess of the values listed herein.

11. Meal Periods

(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(B) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

(C) In all places of employment where employees are required to eat on the premises, a suitable place for that purpose shall be designated.

(D) Notwithstanding any other provision of this order, employees in the health care industry who work shifts in excess of eight (8) total hours in a workday may voluntarily waive their right to one of their two meal periods. In order to be valid, any such waiver must be documented in a written agreement that is voluntarily signed by both the employee and the employer. The employee may

revoke the waiver at any time by providing the employer at least one (1) day's written notice. The employee shall be fully compensated for all working time, including any on-the-job meal period, while such a waiver is in effect.

12. Rest Periods

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

13. Change Rooms and Resting Facilities

(A) Employers shall provide suitable lockers, closets, or equivalent for the safekeeping of employees' outer clothing during working hours, and when required, for their work clothing during non-working hours. When the occupation requires a change of clothing, change rooms or equivalent space shall be provided in order that employees may change their clothing in reasonable privacy and comfort. These rooms or spaces may be adjacent to but shall be separate from toilet rooms and shall be kept clean. NOTE': This section shall not apply to change rooms and storage facilities regulated by the Occupational Safety and Health Standards Board.

(B) Suitable resting facilities shall be provided in an area separate from the toilet rooms and shall be available to employees during work hours.

14. Seats

(A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.

(B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties.

15. Temperature

(A) The temperature maintained in each work area shall provide reasonable comfort consistent with industry-wide standards for the nature of the process and the work performed.

(B) If excessive heat or humidity is created by the work process, the employer shall take all feasible means to reduce such excessive heat or humidity to a degree providing reasonable comfort. Where the nature of the employment requires a temperature of less than 60°F., a heated room shall be provided to which employees may retire for warmth, and such room shall be maintained at not less than 68°.

(C) A temperature of not less than 68° shall be maintained in the toilet rooms, resting rooms, and change rooms during hours of use.

(D) Federal and State energy guidelines shall prevail over any conflicting provision of this section.

16. Elevators

Adequate elevator, escalator or similar service consistent with industry-wide standards for the nature of the process and the work performed shall be provided when employees are employed four floors or more above or below ground level.

17. Exemptions

If, in the opinion of the Division after due investigation, it is found that the enforcement of any provision contained in Section 7, Records; Section 12, Rest Periods; Section 13, Change Rooms and Resting Facilities; Section 14, Seats; Section 15, Temperature; or Section 16, Elevators, would not materially affect the welfare or comfort of employees and would work an undue hardship on the employer, exemption may be made at the discretion of the Division. Such exemptions shall be in writing to be effective and may be revoked after reasonable notice is given in writing. Application for exemption shall be made by the employer or by the employee and/or the employee's representative to the Division in writing. A copy of the application shall be posted at the place of employment at the time the application is filed with the Division.

18. Filing Reports (See California Labor Code, Section 1174(a))

19. Inspection (See California Labor Code, Section 1174)

20. Penalties (See California Labor Code, Section 1199)

   (A) In addition to any other civil penalties provided by law, any employer or any other person acting on behalf of the employer who violates, or causes to be violated, the provisions of this order, shall be subject to the civil penalty of:

      (1) Initial Violation - $50.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to the amount which is sufficient to recover unpaid wages.

      (2) Subsequent Violations - $100.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to an amount which is sufficient to recover unpaid wages.

      (3) The affected employee shall receive payment of all wages recovered.

   (B) The labor commissioner may also issue citations pursuant to California Labor Code Section 1197.1 for non-payment of wages for overtime work in violation of this order.

21. Separability

If the application of any provision of this order, or any section, subsection, subdivision, sentence, clause, phrase, word, or portion of this order should be held invalid or unconstitutional or unauthorized or prohibited by statute, the remaining provisions thereof shall not be affected thereby, but shall continue to be given full force and effect as if the part so held invalid or unconstitutional had not been included herein.

22. Posting of Order

Every employer shall keep a copy of this order posted in an area frequented by employees where it may be easily read during the workday. Where the location of work or other conditions make this impractical, every employer shall keep a copy of this order and make it available to every employee upon request.

   Note: Authority cited: Section 1173, Labor Code; and California Constitution, Article XIV, Section 1. Reference: Sections 1182 and 1184, Labor Code.

HISTORY

1. Amendment filed 4-22-88; operative 7-1-88 (Register 88, No. 19.)

2. Repealer of subsection 4(3) filed 1-11-89; operative 1-11-89 (Register 89, No. 4).

3. Amendment of subsections 1 and 3 filed 2-28-89; operative 7-1-89 (Register 89, No. 10).

4. Change without regulatory effect pursuant to section 100, title 1, California Code of Regulations repealing subsection 8 (last sentence only) filed 4-24-89 (Register 89, No. 17).

5. Editorial correction of printing errors (Register 91, No. 32).

6. Amendment of subsections 2.(H) and 2.(K), new subsections 3.(J)-(K) and 11.(C) filed 8-5-93; operative 8-21-93. Submitted to OAL for printing only pursuant to Labor Code section 1185 (Register 93, No. 32).

7. Change without regulatory effect amending subsection 3(J) filed 9-21-93 pursuant to title 1, section 100, California Code of Regulations (Register 93, No. 39).

8. Amendment of subsection 4.(A) filed 9-19-96; operative 10-1-96. Submitted to OAL for printing only (Register 96, No. 38).

9. Amendment of subsection 4.(A) filed 1-14-97; operative 3-1-97. Submitted to OAL for printing only (Register 97, No. 3).

10. Amendment of parenthetical information below article heading and amendment of section filed 7-31-97; operative 1-1-98. Submitted to OAL for printing only pursuant to Labor Code section 1185 (Register 97, No. 31).

11. Repealer and new section filed 2-22-2002; operative 1-1-2001. Supplemental filing providing parenthetical information below article heading filed 4-15-2002. Submitted to OAL for printing only pursuant to Labor Code section 517 (Register 2002, No. 16).

8 CCR § 11040, 8 CA ADC § 11040

This database is current through 1/13/12 Register 2012, No. 2

END OF DOCUMENT

(c) 2012 Thomson Reuters. No Claim to Orig. US Gov. Works