1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF CALIFORNIA

3                      ---O0O---

4       BEFORE THE HONORABLE KIMBERLY J. MUELLER, JUDGE

5

6    ANI CHOPOURIAN,

7          Plaintiff,

8    Vs.                          CASE NO. CIV. S-09-2972 KJM

9    CATHOLIC HEALTHCARE WEST,
     et al.,
10

11          Defendants.

12    _____/

13

14

15                      ---o0o---

16

17                  REPORTER'S TRANSCRIPT

18                JURY TRIAL PROCEEDINGS

19       MONDAY, FEBRUARY 27TH, 2012 – DAY THIRTEEN

20       TUESDAY, FEBRUARY 28TH, 2012 – DAY FOURTEEN

21      WEDNESDAY, FEBRUARY 29TH, 2012 – DAY FIFTEEN

22

23                      ---o0o---

24

25   Reported By:  CATHERINE E.F.BODENE, CSR. NO. 6926

```
 1                          APPEARANCES

 2                           ---o0o---

 3

 4    For the Plaintiff:

 5         BOHM LAW GROUP
           4600 NORTHGATE BLVD., SUITE 210
 6         SACRAMENTO, CALIFORNIA  95834

 7         BY:  LAWRANCE BOHM, ATTORNEY AT LAW

 8

 9         LAW OFFICE OF ERIKA M. GASPAR
           2121 Natomas Corssing Drive, Suite 200-399
10         Sacramento, California  95834

11         BY:  ERIKA M. GASPAR, ATTORNEY AT LAW

12
           LAW OFFICES OF GREGORY DAVENPORT
13         3031 West March Lane, Suite 334
           Stockton, CA  95219
14
           BY:  GREGORY DAVENPORT, ATTORNEY AT LAW
15

16    For the Defendants:

17         LAFOLLETTE, JOHNSON, DEHAAS, FESLER & AMES
           655 UNIVERSITY AVENUE, SUITE 119
18         SACRAMENTO, CALIFORNIA  95825-6746

19         BY:  JULIE CLARK MARTIN, ATTORNEY AT LAW

20         BY:  DAVID DITORA, ATTORNEY AT LAW

21

22

23                           ---o0o---

24

25
```

```
 1                      PROCEEDINGS INDEX

 2                         ---o0o---

 3

 4    PROCEEDINGS:                              PAGE

 5

 6       Jury Dismissed until Feb. 28th, 2012      1

 7       Jury Dismissed until Feb. 29th, 2012      4

 8       Jury Verdict - Feb. 29th, 2012            6

 9

10

11

12

13

14

15                         ---o0o---

16

17

18

19

20

21

22

23

24

25
```

1

1        SACRAMENTO, CALIFORNIA

2       MONDAY, FEBRUARY 27TH, 2012 – 4:30 P.M.

3              ---o0o---

4       THE CLERK:  Come to order.

5       Court is again in session.

6       THE CLERK:  Calling Civil Case 09-2972, Chopourian

7   versus Catholic Healthcare West.

8       THE COURT:  Can we proceed without the microphone?

9       I'll speak up.  Really all I'm going to do is call

10   the jury back in.  We haven't heard anything today except

11   that we do understand that their proposed schedule for

12   tomorrow is 8:30 to 1:15 because one juror has a doctor's

13   appointment.

14       So I'm going to call them in, excuse them, admonish

15   them and say that we'll be on call between 8:30 and 1:15

16   tomorrow.

17       MR. BOHM:  Yes, Your Honor.

18       THE COURT:  All right.

19       We'll note all counsel are present except

20   Mr. Davenport.  Miss Chopourian is present.  And Mr. Newhouse

21   also is present.

22       MR. BOHM:  Thank you, Your Honor.

23       THE COURT:  All right.

24       (Jury seated at 4:33 p.m.)

25       THE COURT:  Welcome back to the courtroom.  You may

2

1    be seated.

2         Welcome back to the courtroom, Ladies and Gentlemen

3    of the Jury.

4         As indicated, I just want to wish you a good evening

5    as you are ready to adjourn for the day.  I understand that

6    your scheduled for tomorrow is going to be between 8:30 and

7    1:15.

8         Is that correct?

9         All right.  So we'll be on call tomorrow during those

10   times if you have notes for us or anything to communicate to

11   us.

12        As we adjourn, again I know you can recite them for

13   yourself, but I want to remind you, as always, for the

14   importance of continuing to observe my admonitions outside

15   about no independent research of any kind, no talking with

16   anyone else, family members or friends about the case or your

17   deliberations, no thinking apart from discussions with your

18   fellow jurors about the ultimate conclusion of the case.  And

19   if anyone does approach you during the late afternoon or

20   evening, please let me know first thing in the morning by

21   giving a note through the security officer who will deliver

22   that to Miss Waldrop.

23        So you are excused for this afternoon, and we will be

24   on call tomorrow to see you, and if not before, at 1:15.

25        All right.  Thank you again for your service.

3

```
1              Have a good evening.
2              (Jury excused at 4:35 p.m.)
3              THE COURT:  Okay.  There you have it.  So we'll see
4    you tomorrow at 1:15, if not before.
5              MR. BOHM:  Thank you, Your Honor.
6              MS. MARTIN:  Thank you, Your Honor.
7              THE CLERK:  Court's in recess.
8              (Off the record at 4:36 p.m.)
9                          ---o0o---
10
11
12
13
14
15
16
17
18
19
20
21
22
23   ///
24   ///
25   ///
```

4

```
 1                     SACRAMENTO, CALIFORNIA

 2              TUESDAY, FEBRUARY 28TH, 2012 - 1:15 P.M.

 3                          ---o0o---

 4         THE CLERK:  Please, remain seated and come to order.

 5     Court is again in session.

 6         THE COURT:  All right.  No further notes so hopefully

 7     we haven't confused them more.  We will bring them back in.

 8         I understand their schedule tomorrow will be 8:30 to

 9     1:30.  So we'll confirm that with them and excuse them for

10     the day.

11         MS. MARTIN:  Thank you, Your Honor.

12         (Jury seated at 1:16 p.m.)

13         THE COURT:  Welcome back to the courtroom once again.

14         You may be seated, counsel.

15         We're back in my original courtroom, as you can tell.

16         So I understand that you are ready to be excused for

17     the day, and you plan to work tomorrow from 8:30 to 1:30 as

18     needed.  So we'll be on call tomorrow for that purpose.

19         We know you continue to work hard and we thank you

20     for that.

21         As always, please remember my admonitions not to

22     discuss the case with anybody outside of the jury room, not

23     to talk with family or friends about the case, not to do any

24     independent research, not to read anything about the case if

25     anything is being published.  And if anyone does approach
```

5

1    you, let me know first thing tomorrow morning.

2         You are excused for the day.  Have a good afternoon

3    and evening.  And we'll be on call as you need us tomorrow.

4         Thank you very much.  You are excused.

5         (Jury excused at 1:17 p.m.)

6         THE COURT:  You may be seated.

7         That's it except I'll tell you what Miss Waldrop just

8    told me.  I gather she heard, from the security officer, that

9    the jury, even though they're reserving until 1:30, they

10   don't think they'll need that amount of time.  So we'll let

11   you know when we hear.

12        MS. MARTIN:  Thank you, Your Honor.

13        MR. DITORA:  Thank you, Your Honor.

14        MR. BOHM:  Thank you, Your Honor.

15        THE CLERK:  Court is in recess.

16        (Off the record at 1:18 p.m.)

17                        ---o0o---

18

19

20

21

22

23   ///

24   ///

25   ///

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

6

```
1                     SACRAMENTO, CALIFORNIA

2              THURSDAY, FEBRUARY 29TH, 2012 - 9:05 A.M.

3                          ---o0o---

4          THE CLERK:  All rise.

5          Court is now in session.

6          The Honorable Kimberly J. Mueller, United States

7    District Court Judge, presiding.

8          Please, be seated.

9          THE CLERK:  Calling Civil Case 09-2972, Ani

10   Chopourian versus Catholic Healthcare West, et al.

11         Your Honor, this matter is on calendar for jury

12   trial.  It is Day Fifteen.

13         THE COURT:  All right.  We'll note that all counsel

14   is present, Miss Chopourian is present, Mr. Davenport is back

15   with us, and Mr. Newhouse is present with the defense team.

16         You have seen the note?

17         We received a jury note at 8:55 this morning saying

18   that they have reached a verdict.

19         So the court will call the jury in.  I'll ask the

20   foreperson, Mr. McLean for the envelope.  Miss Waldrop will

21   retrieve it.  I will just review the form to make certain it

22   is in order, and I will look specifically to make certain we

23   have Revised Verdict Form 2.

24         Assuming we do, then I will have Miss Waldrop read

25   the verdict in full.  She'll go through each question reading
```

7

1    the question and answer.

2            At that point, either party will have the chance --
3    or both parties will have the chance to ask the jury be
4    polled.  And if so, Miss Waldrop will poll the jury.

5            At that point I will excuse them.  And my standard
6    practice is to meet them in the jury room and give them just
7    basic certificates of appreciation.

8            I do this in every case.  It is the least we can do
9    because it is such an important responsibility that they're
10   fulfilling.  And then today, because I do have time, I will
11   invite anyone who is interested, without any pressure, to
12   just visit me in chambers.

13           I won't talk about the case, of course, but if they
14   have any questions about the Federal Courts generally I would
15   be prepared to answer those.

16           In my experience sometimes one or two jurors come,
17   sometimes the whole jury comes, sometimes no jurors come.

18           I would at that point, before I go back to chambers,
19   just check in here, but the Local Rules and the Federal Rules
20   would apply to any post-trial motions generally.  But I would
21   come back, and if you want to say anything on the record at
22   that point, I would allow you to do so.

23           Any questions about that procedure?

24           MR. BOHM:  The only thing, Your Honor, that I thought
25   of last night was before discharging the jury to the room to

8

1   speak to all of us or to you, if we could at least have the

2   opportunity for a sidebar in case there is any

3   inconsistencies in verdict amounts.

4        Sometimes it happens.  And if there is such an

5   inconsistency, it would be appropriate to have the jury

6   resolve the inconsistency.  And so that's why I bring that up

7   just so that the process allows in case such a thing happens.

8        THE COURT:  I'll entertain a request for a sidebar at

9   that point.

10       Anything else to say, Miss Martin, Mr. Ditora?

11       MS. MARTIN:  No, Your Honor.

12       MR. DITORA:  No, Your Honor.

13       THE COURT:  All right.  Let's bring the jury in then.

14       (Jury seated at 9:10 a.m.)

15       THE COURT:  You may be seated.

16       Welcome back, Ladies and Gentlemen of the Jury.

17       The court understands that you have reached unanimous

18   verdict, and so I'm going to ask Miss Waldrop to retrieve the

19   verdict from you Mr. McLean.

20       (Verdict retrieved and handed to court.)

21       THE COURT:  All right.  The verdict forms are in

22   order.  I'm going to ask Miss Waldrop now to read them into

23   the record so she will do that reading each question and

24   answer.

25       And the Revised Form 2 has been completed, the

9

1   Original Form 2 has not.  So she will read only the revised

2   form.

3           THE CLERK:  Ladies and Gentlemen of the Jury, listen

4   to your verdict as it will stand recorded.

5           In the matter of Ani Chopourian versus Catholic

6   Healthcare West, et al., Civil Case 09-2972:

7           Verdict 1:  Sexually Hostile Work Environment.

8           We the jury find as follows:

9           Was Ani Chopourian subjected to a sexually hostile

10  work environment?

11          Answer:  Yes.

12          If you're answer was no, have the foreperson sign and

13  date this form.  If the answer is yes, proceed to question

14  2.

15          Question 2:  If you answered yes to question 1, what

16  non-economic damages, if any, did Ani Chopourian sustain as a

17  result of Catholic Healthcare West's unlawful conduct?

18          Amount:  $10,000,000.

19          If you answered yes to question 1, do you find by a

20  preponderance of the evidence that Ani Chopourian is entitled

21  to punitive damages within the meaning of these instructions?

22          Answer:  Yes.

23          If you answered yes to question 3, what amount of

24  punitive damages do you award to Ani Chopourian?

25          Amount:  $31,250,000.

10

1      This is signed and dated by the foreperson February

2  29th, 2012.

3      Revised Verdict 2:  Retaliation.

4      We the jury find as follows:

5      Did Catholic Healthcare West retaliate against Ani

6  Chopourian for her involvement in protected activities by

7  terminating her, interfering with her efforts to find and

8  hold new employment and/or denying her privileges at one of

9  defendant's other hospital facilities?

10      Answer:  Yes.

11      If you answered no, have the foreperson sign and date

12  this form.  If you answered yes, proceed to question 2.

13      Question 2:  If you answered yes to question 1, would

14  Catholic Healthcare West have made the same decisions even if

15  plaintiff had not been involved in protected activities.

16      Answer:  No.

17      If you answered yes to question 1, what are Ani

18  Chopourian's economic losses, if any, for termination of

19  employment?

20      Past Lost Wages:  Amount:  $549,360.

21      Future Lost Wages:  Amount:  $3,181,128.

22      If you answered yes to question 1, what are Ani

23  Chopourian's economic losses, if any, for interference with

24  efforts to find and hold new employment and/or denial of

25  privileges at one of the defendant's other hospital

11

1    facilities?

2          Past Lost Wages:  Amount.  $549,360.

3          Future Lost Wages:  Amount:  $3,181,128.

4          If you answered yes to question 1, did Ani Chopourian

5    suffer any non-economic losses?

6          Answer:  Yes.

7          If you answered yes to question 5, what is that mount

8    of Ani Chopourian's non-economic losses?

9          Amount:  $5,000,000.

10         If you answered yes to question 1, do you find by a

11   preponderance of the evidence that Ani Chopourian is entitled

12   to punitive damages?

13         Answer:  Yes.

14         If you answered yes to question 7, what punitive

15   damages do you award to Ani Chopourian?

16         Amount:  $6,250,000.

17         This is signed and dated by the foreperson February

18   29th, 2012.

19         Verdict 3:  Wrongful Termination In Violation Of

20   Public Policy.

21         We the jury find as follows:

22         Did Catholic Healthcare West terminate Ani Chopourian

23   because of her complaints about hostile work environment,

24   sexual discrimination, patient safety, employee safety and/or

25   the failure to receive meal and rest breaks?

12

1          Answer:  Yes.

2          If you're answer is no to question 1, have the

3  foreperson sign and date this form.  If you're answer is yes,

4  proceed to question 2.

5          Question 2:  If you answered yes to question 1, what

6  economic damages, if any, did Ani Chopourian sustain as the

7  result of Catholic Healthcare West's unlawful conduct?

8          Past Lost Wages:  $549,360.

9          Future Lost Wages:  $3,181,128.

10          If you answered yes to question 1, what non-economic

11  damages, if any, did Ani Chopourian sustain as the result of

12  Catholic Healthcare West's unlawful conduct?

13          Amount:  $8,000,000.

14          If you answered yes to question 1, do you find by

15  clear and convincing evidence that Ani Chopourian is entitled

16  to punitive damages?

17          Answer:  Yes.

18          If you answered yes to question 4, what amount of

19  punitive damages do you award to Ani Chopourian?

20          Amount:  $31,250,000.

21          This is signed and dated by the foreperson February

22  29th, 2012.

23          Verdict 4:  Retaliation For Reports Regarding Patient

24  Safety.

25          Did Catholic Healthcare West terminate Ani Chopourian

13

1  because of her complaints about patient safety?

2          Answer:  Yes.

3          If your answer to question 1 is no, have the

4  foreperson sign and date this form.  If the answer is yes,

5  proceed to question 2.

6          Question 2:  If you answered yes to question 1, what

7  economic damages, if any, did Ani Chopourian sustain as the

8  result of Catholic Healthcare West's unlawful conduct?

9          Past Lost Wages:  $549,360.

10          Future Lost Wages:  $3,181,128.

11          If you answered yes to question 1, what non-economic

12  damages, if any, did Ani Chopourian sustain as the result of

13  Catholic Healthcare West's unlawful conduct?

14          Amount:  $2,000,000.

15          If you answered yes to question 1, do you find by

16  clear and convincing evidence that Ani Chopourian is entitled

17  to punitive damages?

18          Answer:  Yes.

19          If you answered yes to question 4, what amount of

20  punitive damages do you award to Ani Chopourian?

21          Amount:  $31,250,000.

22          This is signed and dated by the foreperson February,

23  29th, 2012.

24          Verdict 5:  Intentional Interference With Prospective

25  Economic Advantage.

14

1      We the jury find as follows:

2      Did Catholic Healthcare West interfere with Ani

3  Chopourian's economic relationship with RAS?

4      Answer:  Yes.

5      If your answer to question 1 is no, have the

6  foreperson sign and date this form.  If your answer is yes,

7  proceed to question 2.

8      Question 2:  What economic damages, if any, did Ani

9  Chopourian sustain as a result of Catholic Healthcare West's

10  unlawful conduct?

11      Past Lost Wages:  Amount:  $549,360.

12      Future Lost Wages:  Amount:  $3,181,128.

13      If you answered yes to question 1, what non-economic

14  damages, if any, did Ani Chopourian sustain as a result of

15  Catholic Healthcare West's unlawful conduct?

16      Amount:  $8,000,000.

17      If you answered yes to question 1, do you find by

18  clear and convincing evidence that Ani Chopourian is entitled

19  to punitive damages?

20      Answer:  Yes.

21      If you answered yes to question 4, what amount of

22  punitive damages do you award to Ani Chopourian?

23      Amount:  $6,250,000.

24      This is signed and date by the foreperson February,

25  29th, 2012.

15

1          Verdict 6:  Defamation.

2          We the jury find as follows:

3          Did Catholic Healthcare West defame Ani Chopourian by

4     making false negative statements about her work performance

5     and professional ability to other employees, perspective

6     employers, and/or a medical privileging committee?

7          Answer:  Yes.

8          If you answered no to question 1, have your

9     foreperson sign and date this form.  If you answered yes,

10    proceed to question 2.

11         Question 2:  What amount of damages did Ani

12    Chopourian sustain as a result of Catholic Healthcare West's

13    unlawful conduct?

14         Amount:  $6,000,000.

15         If you answered yes to question 1, do you find by

16    clear and convincing evidence that Ani Chopourian is entitled

17    to punitive damages?

18         Answer:  Yes.

19         If you answered yes to question 3, what amount of

20    punitive damages do you award to Ani Chopourian?

21         Amount:  $18,750,000.

22         This is signed and dated by the foreperson February,

23    29th, 2012.

24         Verdict 7:  Meal And Rest Breaks.

25         We the jury find as follows:

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
(916) 446-6360

16

1          Meal Breaks:

2          Was Ani Chopourian exempt from the requirement that

3    she receive meal breaks?

4          Answer:  No.

5          If you answered yes to question 1, please go to

6    question 4.  If you answered no, please go to question 2.

7          Question 2:  Did Ani Chopourian work for more than

8    five hours per day without an uninterrupted 30 minute meal

9    break, without waiving her right to such a break, at any time

10   during her employment at Catholic Healthcare West?

11         Answer:  Yes.

12         If you answered no to question 2, go to question 4.

13   If you answered yes, go to question 3.

14         Question 3:  How many days did Ani Chopourian work

15   without an uninterrupted meal break for which she was not

16   paid?

17         Answer:  368.

18         Please proceed to question 4.

19         REST BREAKS.

20         Question 4:  Did Ani Chopourian work for any

21   four-hour period without receiving a ten-minute rest break

22   without waiving her right to such a break at any time during

23   her employment at Catholic Healthcare West?

24         Answer:  Yes.

25         If you answered yes to question 4, go to question 5.

17

1      Question 5:  How many days did Ani Chopourian work

2  without getting a ten-minute break for each four-hour period

3  and for which she was not paid?

4      Answer:  200.

5      If you answered yes to either question 2 or question

6  4, please answer question 6.

7      Question 6:  Was Catholic Healthcare West's failure

8  to provide meal and/or rest breaks willful?

9      Answer:  Yes.

10      This was signed and dated by the foreperson February

11  29th, 2012.

12      THE COURT:  All right.

13      That concludes the reading of the verdict.

14      Ladies and Gentlemen of the Jury, the parties now

15  have the right to have you polled, which means having each

16  one of you asked if that is, in fact, your verdict.

17      I'm going to ask the parties now if they would like

18  the jury polled.

19      Mr. Bohm?

20      MR. BOHM:  No, Your Honor.

21      THE COURT:  Miss Martin?

22      MS. MARTIN:  Yes, please, Your Honor.  Thank you.

23      THE COURT:  All right.  Miss Waldrop, could you

24  please poll the jury.

25      THE CLERK:  Yes, Your Honor.

18

1          As I call your name, please answer "yes" or "no" to

2     the following question:

3          Is the verdict as read your verdict?

4          Miss Victoria McGregor?

5          JUROR MCGREGOR:  Yes.

6          THE CLERK:  Miss Cathleen Dinubilo?

7          JUROR DINUBILO:  Yes.

8          THE CLERK:  Miss Beverly Plummer?

9          JUROR PLUMMER:  Yes.

10          THE CLERK:  Laurie Hinshaw?

11          JUROR HINSHAW:  Yes.

12          THE CLERK:  Miss Barbara Stryker?

13          JUROR STRYKER:  Yes.

14          THE CLERK:  Miss Juanita Zeller?

15          JUROR ZELLER:  Yes.

16          THE CLERK:  Miss Wendy Stokes?

17          JUROR STOKES:  Yes.

18          THE CLERK:  And Mr. Jesse McLean?

19          JUROR MCLEAN:  Yes.

20          THE CLERK:  All "yes" responses, Your Honor.

21          THE COURT:  All right.  Thank you.

22          Now let me ask if either of the parties have anything

23     they would like to raise with the court at sidebar.

24          Mr. Bohm?

25          MR. BOHM:  No, thank you, Your Honor.

19

1          THE COURT:  Miss Martin?

2          MS. MARTIN:  Not at this time, Your Honor.  We are

3    reserving.

4          THE COURT:  All right.  All right.  Ladies and

5    Gentlemen of the Jury, with that then your duties to this

6    court are discharged.

7          I am going to excuse you from the courtroom one last

8    time, and as I do that, let me tell you a couple of things.

9          One is that the admonitions that I have given you

10   throughout the trial now are lifted.  You may talk about the

11   case.  And in particular, if any of the attorneys approach

12   you, it's entirely up to you, but you may discuss with them

13   your deliberations, your sense of the case.  Again, it is

14   entirely up to you.

15         As you go to the jury room, I would like to ask you

16   to wait just a few moments.  I have a standard certificate of

17   appreciation.  It is the least the court can do to

18   memorialize your service to this court.  So if you can wait

19   just a few moments, I'll come and deliver that to you.

20         And then I will also let you know, it is up to you,

21   if any of you want to come see my chambers, visit briefly,

22   again it is your choice, but if you would like to do that

23   once I greet you in the jury room, you're welcome to do that.

24         I will not talk with you about the case, but if you

25   have general questions about the court or, again, want to see

20

1  my chambers, you are welcomed, and Miss Waldrop can led you.

2        So with that, Ladies and Gentlemen of the Jury, thank

3  you so much for your diligent service.  I'll see you in the

4  jury room in a few moments.

5        (Jury excused at 9:26 a.m.)

6        THE COURT:  All right.  I'll be right back.  I'm just

7  going to deliver the certificates.

8        (Off the record at 9:27 a.m.)

9        (Back on the record at 9:32 a.m.)

10        THE CLERK:  Please, remain seated.

11        Come to order.  Court is again in session.

12        THE COURT:  All right.

13        Just for the record I thanked the jury.  There are

14  three that want to visit my chambers.

15        In terms of -- I just ask them in terms of

16  convenience and comfort is there anything more we could have

17  done better.  Just so you know, they said that we can take

18  the garbage out more often and keep the toilet paper stocked

19  So we'll take note of that for the future.

20        But the juries seem to like this schedule, the 8:30

21  to 1:30, the half day.  So that's why I asked that question.

22        I'm not going to enter judgment.  There's some issues

23  that the court needs to decide.  So at this point I will

24  entertain motions on a schedule prescribed by the federal

25  rules.

21

1          MR. BOHM:  Right away I can say that it would be

2    helpful to the plaintiff if we could get an extension of time

3    for the costs and fee motions for the relative claims.

4          THE COURT:  You should work to reach stipulations.

5    If you're not able to, you may make ex-party requests.

6          MS. MARTIN:  We will bringing a 50(b) motion, Your

7    Honor.  The usual --

8          THE COURT:  No.  I'm prepared for that.

9          MS. MARTIN:  I know that is no big surprise to the

10   court.

11         THE COURT:  You can file those, and then I'll let you

12   know if I need argument on them.

13         MS. MARTIN:  Thank you very much.

14         THE COURT:  You are now excused.

15         MR. BOHM:  Are we done with court for today?

16         THE COURT:  You are excused.

17         MS. MARTIN:  Thank you.

18         MR. BOHM:  Thank you.

19         (Off the record at 9:34 a.m.)

20                         ---o0o---

21

22

23

24

25

```
 1                    REPORTER'S CERTIFICATE

 2                         ---o0o---

 3
     STATE OF CALIFORNIA  )
 4   COUNTY OF SACRAMENTO )

 5

 6
             I certify that the foregoing is a correct transcript
 7
     from the record of proceedings in the above-entitled matter.
 8

 9

10               IN WITNESS WHEREOF, I subscribe this
     certificate at Sacramento, California.
11

12

13      /S/_Catherine E.F. Bodene_____
             CATHERINE E.F. BODENE, CSR NO. 6926
14           Official United States District Court Reporter

15

16

17

18

19

20

21

22

23

24

25
```