# EXHIBIT A

1  RAYMOND A. CARDOZO, STATE BAR NO. 173263
   rcardozo@reedsmith.com
2  MARGARET A. GRIGNON, STATE BAR NO. 76621
   mgrignon@reedsmith.com
3  PAUL D. FOGEL, STATE BAR NO. 70859
   pfogel@reedsmith.com
4  REED SMITH LLP
   101 Second Street, Ste. 1800
5  San Francisco, CA 94105
   Telephone:    (415) 543-8700
6  Facsimile:    (415) 391-8269

7  JUDITH CLARK MARTIN, STATE BAR NO. 173557
   MARY E. "MOLLY" GREENE, STATE BAR NO. 186205
8  LA FOLLETTE, JOHNSON,
   DE HAAS, FESLER & AMES
9  655 University Avenue, Suite 119
   Sacramento, California 95825
10 Phone:        (916) 563-3100
   Facsimile:    (916) 565-3704
11 Email:        JCMartin@ljdfa.com
   Email:        RWestfall@ljdfa.com
12
   Attorneys for Defendant,
13 CATHOLIC HEALTHCARE WEST dba
   MERCY GENERAL HOSPITAL (erroneously
14 sued and served herein as CATHOLIC HEALTHCARE
   WEST and MERCY GENERAL HOSPITAL)
15

16                    UNITED STATES DISTRICT COURT
17
                      EASTERN DISTRICT OF CALIFORNIA
18

19 ANI CHOPOURIAN,                    )  CASE NO.  2:09-CV-02972-KJM-KJN
                                      )
20        Plaintiff,                  )  **DECLARATION OF RAYMOND A.**
                                      )  **CARDOZO AND APPENDIX IN SUPPORT**
21                                    )  **OF DEFENDANT'S MOTION FOR NEW**
                                      )  **TRIAL OR DAMAGES REMITTITUR AND**
22     v.                            )  **MOTION FOR PARTIAL JUDGMENT AS**
                                      )  **A MATTER OF LAW**
23 CATHOLIC HEALTHCARE WEST,          )
   MERCY GENERAL HOSPITAL, AND        )
24 DOES 1 through 20, inclusive,      )  **Date:  September 28, 2012**
                                      )  **Time: 11:00 a.m.**
25        Defendants.                 )  **Courtroom  3**
                                      )  **Honorable Kimberly J. Mueller**
26 ─────────────────────────────────  )

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

───────────────────────────────────────────────
DECL. OF RAYMOND A. CARDOZO AND APPENDIX  ISO DEFT'S POSTTRIAL MOTIONS
Case No. 2:09-CV-02972-KJM-KJN

I, Raymond A. Cardozo, declare as follows:

1.      I am an attorney with the law firm of Reed Smith LLP, one of the law firms representing defendant Catholic Healthcare West (CHW) in this matter.  If called as a witness, I could testify truthfully to the following facts:

2.      The Court entered judgment in this matter on April 30, 2012, following the jury's February 29, 2012 verdict.  CHW is filing motions for a new trial or damages remitittur and for partial judgment as a matter of law.  Those motions and supporting memoranda accompany this Declaration and Appendix.

3.      Attached to this Declaration are true and correct copies of all pages of the trial transcript and copies of all exhibits that CHW is citing in its memoranda in support of its posttrial motions.  A single, comprehensively-paginated transcript of the trial does not exist, so CHW has been required to furnish the court with "daily" transcripts, which CHW cites by date, e.g. "2/21RT 46" (page 46 of the transcript of the February 21, 2012 session).  The first page of the transcript for that day's proceedings precedes each group of transcript pages so the Court is aware of the date of that day's proceedings.

4.      We have inserted tabs to separate the transcript pages from each day's proceedings.  Thus, the following tabs correspond to the following dates of the proceedings

A.      Proceedings of  February 7, 2012

B.      Proceedings of  February 8, 2012

C.      Proceedings of February 9, 2012

D.      Proceedings of February 13, 2012

E.      Proceedings of February 14, 2012

F.      Proceedings of February 15, 2012

G.      Proceedings of February 16, 2012

H.      Proceedings of February 21, 2012

I.      Proceedings of February 22, 2012

J.      Morning Proceedings of February 23, 2012

– 1 –

K.     Afternoon Proceedings of February 23, 2012

L.     Proceedings of February 24, 2012


5.     Behind Tab M are copies of all exhibits cited in CHW's memoranda in support of its

posttrial motions.


I declare under penalty of perjury that the foregoing is true and that this Declaration was

executed in San Francisco, California, on May 29, 2012.


/s/ Raymond A. Cardozo
RAYMOND A. CARDOZO

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

— 2 —

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2012, I am electronically filing the **DECLARATION OF RAYMOND A. CARDOZO AND APPENDIX IN SUPPORT OF DEFENDANT'S MOTION FOR NEW TRIAL OR DAMAGES REMITTITUR AND MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW** with the Clerk of the Court of the United States District Court for the Eastern District of California by using the District's CM/ECF system.

All participants in this case are registered CM/ECF users and will be served by the District's CM/ECF system.

Dated:  May 29, 2012

By   /s/ Raymond A. Cardozo_____
Raymond A. Cardozo

# TAB M

RECEIVED

FEB 1 5 2008

# Employee Written Warning in lieu of Suspension

Name: Ani Chopourian
Department: CVOR

Date:       February 13, 2008
Job Title:  Physician Assistant

### Re: Inappropriate Workplace Behavior

On September 6, 2007, I met with you and conducted an investigative meeting regarding your behavior. The purpose was to assist you in meeting the standards of your job.

During the meeting, we discussed you requesting that another employee clock you in through the Ceridian time card system, you acknowledged that your behavior was against policy and that you made a "big mistake".

This notice is to document an Employee Written Warning in lieu of Suspension Notice issued to you as you remain in violation of Human Resources Policy # 268, entitled, *"Rules of Conduct"*. Although you will not serve time off for this suspension, this suspension carries the same weight as if you had served time off without pay.

It is the expectation of MGH that your behavior show immediate and sustained improvement. Any further occurrences of this nature may result in further corrective action up to and including termination.

Should you feel this corrective action is unjustified, you have seven (7) days to appeal it as described in Personnel Policy 254: Dispute Resolution Procedure.


Jean Scrafton
Clinical Coordinator, Cardiac OR

2/13/08
Date


Ani Chopourian
(signature denotes receipt only)

02/13/08
Date


cc: Personnel File


Exhibit 41                                                                    TAB M

**Andersen, Jim - MGH**

| | |
|---|---|
| **From:** | Dodge, Renee - MGH |
| **Sent:** | Thursday, July 03, 2008 6:02 PM |
| **To:** | Book, Bonnie - MGH; Frazier, Doris - MGH; Andersen, Jim - MGH; McCue, Tom - MGH |
| **Subject:** | physician assistant |

Hi Bonnie-
Jim has asked that you help me arrange and script an investigatory meeting on Ani Choporian. Ani, I and Jim discussed today her working relationship with one of the cardiac surgeons. Jim will be getting Tom involved with this over the next week.
On a separate note with her, we need to address an issue that happened Monday, June 30.

Ani came to work at 1100 her scheduled shift. She stated on arrival "I only had 2 hours of sleep last night". If you are scheduled to work at 1100, you are on call all night once the cases are done. Ani completed out her work day then went home around 2000. Approximately 2100, the cardiac team was called back to the OR for an emergency case from the cath lab. Ani called Jean at home to tell her that she was "too tired to work and you guys know that and should have got someone to take my call". She told Jean that she was calling in sick for the emergency and Jean told her that she couldn't do that. Jean called me at home at 2130 and relayed info to me and I totally supported Jean in her decision.
Ani came into work and all of the team was setting up the case. Per Colleen Weaver, Betty Devitt, Barb Moore, Anil Prasad, and Dr. Kaplon, Ani was not in the room helping the team. Some of the staff state that she was sleeping in the lounge. The staff stated that people in the room asked "where's Ani?" She had to be summoned to the room.
My discussion in HR today with Jim I brought this scenario up. She claims that she was standing outside the room and did not want to go into the room until the last minute since Dr. Kaplon was in there. Relayed to her my concern was that there was an unstable patient, ALL the players but her was pitching in to get the case going. I stated "you could have helped open the case or something and her words to Jim and I was "I am a PA and it is not my job to open instruments" I told her that I was very concerned that her actions were compromising patient care in an unstable state.

Bonnie-
We have on record a written in lue of suspension on her regarding her giving someone her name badge to swipe in while she drove around in the parking garage. The above is also a behavioral issue. Can you advise what my next steps should be?

Jim and Tom,
I was asked to touch base with Patti Dipinto to tell her that she would need to meet with HR regarding "a behavior issue with one of the surgeons and a colleague" as directed by Jim. Scott Harper had already left and will touch base with him next week.

*Renee Dodge, RN, MSN, CNOR*
Director of Cardiac Surgery
Mercy General Hospital
Telephone number: 453-4866
Pager: 523-0402
Fax: 453-4469

3/5/2010

000048

Exhibit 57                                        TAB M

## Employee Written Warning In Lieu of Termination Notice

Name:          Ani Chopourian                                                              **RECEIVED**
Department:     CVOR                          Date:        July 16, 2008
                                              Job Title:   Physician Assistant            **JUL 3 1 2008**

Re: Inappropriate Workplace Behavior/Unsatisfactory Performance                           **MGH HUMAN RESOURCES**

On July 11, 2008, I met with you and conducted an investigative meeting regarding your attendance. The purpose of the meeting was to discuss the incident described below, as well as provide you an opportunity to offer information for consideration and assist you in meeting the standards of your job.

During the meeting, we discussed two incidents. The first occurred on June 30. You were on call after your regular shift that day. About an hour after leaving your regular shift, you were called back for a procedure on a decompensating patient being transferred from the Cath Lab. Initially you called your clinical coordinator and attempted to get her to find someone else to do the call. After being told there would be no switch, you reported to work and clocked in. You made the decision to lie down in the break room, and later you were standing outside the OR while the rest of the team prepared the room for emergency surgery. During the meeting, you stated that you told the nursing assistant, "Wake me up when the patient gets to OR". You further acknowledged standing outside the OR while the room was being prepped. You said that "there was nothing for a PA to do during that time".

The second incident occurred on July 8. You were scheduled for call at Mercy San Juan. There was no procedure scheduled at MSJ. Your requirement was to check the Mercy General call line to see if you were to report to MGH, which was the expectation of you that day. At 8:17, the team would find you. I called you at home. When I asked what was going on, you responded "F—" and hung up the phone. Once you arrived at work, you went to your assigned room. After removing the vein from the patient's leg, you did not follow the standard process to provide an opportunity for the MA to take a break and left the room. During the meeting, you acknowledged that you did not listen to the call schedule that day. You also stated that it is the MA's call to ask for break relief.

Your actions and behavior are in violation of Human Resources Policy 268, *"Rules of Conduct"*. Therefore this notice is to document an Employee Written Warning Notice In lieu of Termination being issued to you. Your inability to interact effectively with colleagues is negatively affecting the moral and harmony of the department. It is the expectation of MGH that your behavior and work performance show immediate and sustained improvement. Any further occurrences of this nature may result in further corrective action up to and including termination.

In addition to the above charges, the following past corrective action(s) as noted below, have been considered in this decision:

    *February 13, 2008*        *Written Warning In lieu of Suspension*        *Behavior*

Should you feel this corrective action is unjustified, you have seven (7) days to appeal it as described in Personnel Policy 254: Dispute Resolution Procedure.

*My signature is merely an acknowledgement of receiving this letter (content false) & NOT an acceptance of its content.*

Renée Dodge                                                   Date
Director, CVOR


Ani Chopourian                                               09/29/08
(signature denotes receipt only)                             Date

Exhibit No. **35**
Date: **7-20-11**
Witness: **Andersen**
Tom Lange, CSR 4689

cc: Employee Personnel File

000005

Exhibit 61                                                                    TAB M

## EMPLOYEE NOTICE OF TERMINATION OF EMPLOYMENT

Name: Ani Chopourian
Department:   CVOR

Date:         August 7, 2008
Job Title:      Physician Assistant

RE: Unsatisfactory Performance of Duties/Failure to Follow Work Instructions

This notice will document the investigative meeting that took place on August 4, 2008 regarding the issues described below. Although you were notified of the meeting, you refused to attend.

During the weekend of August 2-3, 2008 you were on call. Per the department on-call process, you should have come in on Sunday, August 3 to do rounds with patients. You did not come in. As a result, the physician assistant who was working in the OR had to leave surgery in order to complete the rounds.

Your actions are in violation of MHS Personnel Policy #268, entitled, *"Rules of Conduct"*.

In addition to the above, the following past corrective actions were considered in this decision:

| February 13, 2008 | Written Warning in lieu of Suspension | Behavior |
| July 11, 2008 | Written Warning in lieu of Termination | Peformance/Behavior |

Your employment is being terminated for the reasons outlined above. Your final paycheck is enclosed with this letter. Please return all Mercy General Hospital property including ID Badge, parking card, keys and other items or equipment to me immediately.

Should you feel this corrective action is unjustified, you have seven (7) days to appeal it as described in MHS Personnel Policy #264, entitled: *Dispute Resolution Procedure*.

Renea Dodge
Director, CVOR

8-7-08   1315
Date

Refused to sign
Ani Chopourian
(signature denotes receipt only)      cc: Personnel file

Date

Gladys Bekkar
GLadys Bekkar
Dir Periop Man se

8-7-08 1315 h

Δ π EXHIBIT  29
Deponent Frazier
7-15-11 Rptr. LGB
WWW.DEPOBOOK.COM

000004

Exhibit 70                                        TAB M



**Mercy**
A member of CHW

November 11, 2008

Ani Chopourian, PA-C
P.O. Box 189446
Sacramento CA 95818

Dear Ms. Chopourian

At their October 23, 2008 meeting, the Board of Directors upon the recommendation of the Mercy General Hospital Medical Executive Committee accepted your resignation of clinical privileges as an Employed Allied Health Professional effective immediately.

We appreciate your participation and service to Mercy General Hospital.  Best wishes in your future endeavors.

Sincerely,

Bruce Ermann MD
Chief of Staff

Mercy General Hospital
*Medical Staff Services*
4001 J Street
Sacramento, CA 95819
916.453.4828 telephone
916.453.4743 fax

mercysacramento.org

005286

Exhibit 82                                                    TAB M



**Mercy**
A member of CHW

December 15, 2008

Ani Chopourian, PA-C
P.O. Box 189446
Sacramento, CA 95818

Dear Ms. Chopourian:

At their October 23, 2008 meeting, the Board of Directors upon the recommendation of the
Mercy San Juan Medical Center Medical Executive Committee accepted your resignation
from the Allied Health Professional Staff effective August 7, 2008.

We appreciate your participation and service to Mercy San Juan Medical Center.  Best
wishes in your future endeavors.

Sincerely,

David L. Wolf, MD                                        Brian Ivie
Chief of Staff                                                Chief Executive Officer

/td

Mercy San Juan Medical Center                                            mercysanjuan.org
6501 Coyle Avenue
Carmichael, CA 95608
916.537.5000 telephone                                               005367

Exhibit 86                                                                    TAB M

JUN-17-2010 14:25 From:RAS CREDENTIALING

916 453 4743        Med Staff Office                    Med Staff Office                    13:54:54   10-01-2009        1/1



# Mercy
### A member of CHW

October 1, 2009

Credentialing
Radiological Assoc. of Sacto Medical Group
1500 Expo Parkway,
Sacramento, CA 95815

RE:  Ani Chopourian, PA-C
Facility:  Mercy General Hospital
Original Appointment Date:  02/22/2007
Resignation Date:  08/07/2008
Current Staff Status:  Inactive
Primary Specialty:  Cardiovascular Nurse Pract/PA

Dear Sir or Madam:

This letter is being sent to you in lieu of the form provided by your facility.

Please be assured that the staff member named above is currently, or if inactive, was meeting all the requirements of the staff category listed. Requirements include, but are not limited to, demonstrated competence and a minimum number of cases as indicated with acceptable results for the privileges requested. In addition, our facility is involved in an extensive peer review and quality improvement program and the staff member in question is complying or did comply with the standards of the program.

This communication is intended to aid in the evaluation of the qualifications, fitness, character, or insurability of a medical practitioner. Any other use of this communication is strictly prohibited.

If you have any further questions regarding this staff member, please feel free to contact the Medical Staff Office at (916) 453-4828.

Sincerely,

Medical Staff Services

Mercy General Hospital
*Medical Staff Services*
4001 'J' Street
Sacramento, CA 95819
916 453 4828 *Telephone*
916.453.4743 *Facsimile*

www.mercygeneral.org

RECEIVED
OCT 0 1 2009
BY: GKB

005010

Exhibit 88                                                                                    TAB M



**Mercy**
A member of CHW

June 8, 2010

*Confidential Peer Review Document*
*(Evidence Code Section 1157)*
*Via Regular and Certified Mail*

Ani Chopourian, PA-C
Radiological Associates of Sacramento
1500 Expo Parkway
Sacramento, CA  95815

**Re: Application for Appointment to AHP Staff and Clinical Privileges**

Dear Ms. Chopourian:

Thank you for your letters in response to concerns raised during the credentialing process.  The IPC appreciates the responses that you provided in writing and during your interview with them. After reviewing your application and discussing the issues noted above, the IPC forwarded your application and its concerns to the the Medical Executive Committee ("MEC").

This letter is to inform you that, following careful consideration of this matter,  the MEC of Mercy San Juan Medical Center has decided to recommend to the Sacramento Service Area Community Board ("Board") that your application for appointment to the Allied Health Professional staff and your request for clinical privileges be denied.

Basis for Recommendation

The basis for the MEC's decision includes a determination that you provided false information on your application form and other indications that you are not qualified to provide Physician Assistant services to the patients of Mercy San Juan Medical Center.

With respect to your application, you answered "No" to attestation question C, which asked whether your clinical privileges and/or employment had ever been denied or revoked for possible incompetence or improper professional conduct.  However, in processing your application, the Medical Staff Coordinator learned that Mercy General Hospital had taken such action against your employment and clinical privileges. Only after receiving a letter from the Medical Staff Office asking for an explanation did you acknowledge the action by Mercy General Hospital.

Despite your disagreement with Mercy General Hospital's action, you should have disclosed this information in initially completing your application. By your signature at the bottom of the attestation questions (and elsewhere in the application), you had declared that your answers had been true and correct and that you understood that omissions or misrepresentations in completing the attestation questions "may result in denial of your application."

Mercy San Juan Medical Center
6501 Coyle Avenue
Carmichael, CA 95608
916.537.5000 *telephone*

mercysanjuan.org

005134

Exhibit 114                                                                 TAB M

Ani Chopourian, PA-C
June 08, 2010
Page 2 of 3

The denial of your application is also based upon information that you inappropriately utilized patient health information, requiring Mercy General Hospital to send notifications to 132 patients that a breach of their confidential information had occurred. As you acknowledged in your letter of May 19, 2010, you kept patient notes in your work locker and, upon termination from your employment, removed the patient information from the Hospital and , sometime thereafter, gave them to your attorney. Despite your acknowledgment that it was improper to retain this information and assurances that you will now maintain patient confidentiality, the MEC cannot disregard the fact that you breached the confidentiality rules of Mercy General Hospital and applicable laws.

The Medical Staff Rules and Regulations (Section XVIII.A), provide that an AHP must meet certain qualifications in order to be eligible for Clinical Privileges. This includes documenting experience, demonstrated ability, and judgment with sufficient adequacy to demonstrate that any patient treated by them "will receive care of the generally recognized professional level of quality and efficiency established by the Medical Staff and that they are qualified to exercise Clinical Privileges within the Hospital." AHPs are also required to demonstrate strict adherence to the "lawful ethics of their respective professions."

At its June meeting, the MEC thoroughly discussed your application, including the supplemental provided by you. The MEC determined that falsification of your application alone constituted sufficient grounds to deny your application for appointment. However, the MEC also found the other concerns with your application to be indicative that you do not meet the qualifications for Clinical Privileges eligibility at Mercy San Juan Medical Center

Right to Request a Review of the MEC's Recommendation

You have a right under the Medical Staff Rules and Regulations to challenge the MEC's recommendation by requesting a review. To exercise this right, you must file a written grievance (i.e., a letter objecting to the recommended action and requesting an interview) with the MEC within 15 days of receipt of this notification letter. Receipt for this purpose shall be deemed to be two days from the date of this letter. *Thus, your written request to my attention must be received by the Medical Staff Office no later than 4 p.m. on or before Wednesday June 23, 2010.* If you do not request a review or do not do so within 15 days of receiving this letter, you will be deemed to have waived any review rights with respect to the MEC's recommendation and the MEC's recommendation will be forwarded to the Community Board for final action.

If you do submit a grievance, the MEC, or its designee, shall conduct an interview. The purpose of the interview is to allow both you and the MEC the opportunity to discuss the situation and to produce evidence in support of their respective positions. At the direction of the MEC, you will be given an opportunity to submit information to the MEC, or its designee, prior to or at the time of the interview.

005135

Exhibit 114                                                                TAB M

Ani Chopourian, PA-C
June 08, 2010
Page 3 of 3

Please note that any meeting requested by you does not constitute a hearing under Article VII of the Medical Staff Bylaws, and the procedural rules therein do not apply.  For further information regarding the review process, please refer to the enclosed copy of Article XVIII of the Rules and Regulations. Should you require a copy of the entire Medical Staff Rules and Regulations, please contact the Medical Staff Office.

Thank you for your attention to this matter.

Sincerely,

John (Jack) Wood, DO, FACEP
Chief of Staff

Enclosure: Medical Staff Rules and Regulations, Article XVIII

005136

Exhibit 114                                                                 TAB M



**Mercy**

A member of CHW

June 18, 2010

Teri Kaufman, CPCS
Radiological Associates of Sacramento
1500 Expo Parkway
Sacramento, CA 95815

Re.
Facility:                          Ani Chopourian, PA
Original Appointment Date:         Mercy General Hospital
Resignation Date:                  2/22/2007
Current Staff Status:              8/7/2008
                                   Inactive/Employment Terminated

Dear Sir or Madam:

This letter is being sent to you to clarify our initial response to you dated 10/1/2009.

At the time of our 10/1/2009 response, we provided information that was based upon information in our database indicating that Ms. Choipourian had resigned as an AHP Staff member as she was no longer employed by Mercy General Hospital.

Upon Ms. Chopourian's application for AHP status for Mercy San Juan and Mercy General in March of 2010 we became aware that her previous employment with Mercy General had been terminated and not voluntarily relinquished.

If you have any further questions please feel free to contact the Medical Staff Office at 916/453-4823.

Sincerely,

Barbara Wheat, CPMSM
Senior Medical Staff Coordinator

G:\AHP\Ani Chopourian reference letter 6-17-10.doc

Mercy General Hospital
*Medical Staff Services*
4001 J Street
Sacramento, CA 95819
916.453.4828 *Telephone*
916.453.4743 *Facsimile*

mercysacramento.org

005003

Exhibit 115                                                    TAB M

Andersen, Jim - MGH

From:      Andersen, Jim - MGH
Sent:      Tuesday, June 17, 2008 8:48 AM
To:        Dodge, Renee - MGH
Subject:   RE: discussion with PA

We should probably address this head on as soon as possible. The fact that we are scheduling around the
alleged situation actually gives the appearance that we acknowledge an issue but aren't addressing it.

From: Dodge, Renee - MGH
Sent: Monday, June 16, 2008 4:51 PM
To: Andersen, Jim - MGH
Subject: FW: discussion with PA

Followup documentation:
Approached Ani today approximately 1145 and stated that I had discussed with you our conversation and that she
was to look at her schedule this week and tell me what day that she would be willing to go over to HR and speak
with myself and you. She stated that Jean told her that she would try to keep her out of Keplon's room and the
discussion today from Jean to her was that with the culture of this OR and the case load it would be very difficult
to honor that. It is now 1650 and no further discussion over it.

*Renee Dodge, R.N, MSN, CNOR*
Director of Cardiac Surgery
Mercy General Hospital
Telephone number: 453-4866
Pager: 523-0402
Fax: 453-4469

From: Dodge, Renee - MGH
Sent: Wednesday, June 11, 2008 3:43 PM
To: Andersen, Jim - MGH
Subject: RE: discussion with PA

I will speak to her on Friday since tomorrow I am off site to for an all day conference.

*Renee Dodge, R.N, MSN, CNOR*
Director of Cardiac Surgery
Mercy General Hospital
Telephone number: 453-4866
Pager: 523-0402
Fax: 453-4469

From: Andersen, Jim - MGH
Sent: Wednesday, June 11, 2008 3:39 PM
To: Dodge, Renee - MGH
Cc: Kirch, Cynthia - MGH
Subject: RE: discussion with PA

Hi Renae,

3/5/2010







Exhibit 261                                                                      TAB M

Page 2 of 2

That's fine, but you need to attend also to keep her story consistent.  When would be convenient for the both of you?

thanks

Jim

---

**From:** Dodge, Renee – MGH
**Sent:** Wednesday, June 11, 2008 3:00 PM
**To:** Andersen, Jim – MGH
**Subject:** discussion with PA

I had a discussion with Ani Chopourian today at approx. 1100. Below is a recap of the discussion.

I understand that you talked with Jean regarding Dr. Kaplon and how you perceive you are spoken to and treated in the room.

She moved up to the edge of her chair and began pointing her finger and me stating that "it is abusive behavior, I need to put an end to it, and I have been keeping a journal of everything he has said to me".

I asked her if she felt that his behavior was a result of "holding her accountable for her doing her job" and she felt no. I relayed the concern about her not wearing surgical loops and if this perpetuates his behavior. I continued to reiterate to her that this is an expectation of her job and it also reflects in last year's evaluation. She proceeded to say that she will go out on disability if she has to wear them and I stated that she knew this was an expectation of her job upon hire.

She stated that she left here last week so upset that she almost ran through the gate in the parking deck. (I know Jim.....don't say it....)

She stated that other nurses have had problems with Dr. Kaplon and I stated to her that yes he has however, they confronted him after the case and resolved their individuals errors.

I asked her why she felt that I needed to resolve this when she had not made attempts to resolve on her own with him and she could not answer it.

She has requested to speak to you.

*Renee Dodge, RN, MSN, CNOR*
Director of Cardiac Surgery
Mercy General Hospital
Telephone number: 453-4866
Pager: 523-0402
Fax: 453-4469

3/5/2010

000135

Exhibit 261                                                                TAB M

Page 1 of 1

**Andersen, Jim - MGH**

From:    Dodge, Renee - MGH
Sent:    Thursday, July 03, 2008 6:02 PM
To:      Book, Bonnie - MGH; Frazier, Dolte - MGH; Andersen, Jim - MGH; McCue, Tom - MGH
Subject: physician assistant

Hi Bonnie,
Jim has asked that you help me arrange and script an investigatory meeting on Ani Choperian. Ani, I and Jim discussed today her working relationship with one of the cardiac surgeons. Jim will be getting Tom involved with this over the next week.
On a separate note with her, we need to address an issue that happened Monday, June 30.

Ani came to work at 1100 her scheduled shift. She stated on arrival "I only had 2 hours of sleep last night. If you are scheduled to work at 1100, you are on call all night once the cases are done. Ani completed out her work day then went home around 2000. Approximately 2100, the cardiac team was called back to the OR for an emergency case from the cath lab. Ani called Jean at home to tell her that she was "too tired to work and you guys knew that Jean told her that she couldn't do that. Jean called me at home at 2130 and relayed info to me and I totally supported Jean in her decision.
Ani came into work and all of the team was setting up the case, Pat Colleen Weaver, Betty Davitt, Barb Moore, Ani Prasad, and Dr. Kaplan. Ani was not in the room helping the team. Some of the staff state that she was sleeping in the lounge. The staff stated that people in the room asked "where's Ani?" She had to be summoned to the room.
My discussion in HR today with Jim I brought this scenario up. She claims that she was standing outside the room and did not want to go into the room until the last minute since Dr. Kaplan was in OR. Relayed to her my concern was that there was an unstable patient, ALL the players but her was pitching in to get the case going. I stated "you could have helped open the case or something and her words to Jim and I was "I am a PA and it is not my job to open instruments! I told her that I was very concerned that her actions were compromising patient care in an unstable state.

Bonnie,
We have on record a written in lieu of suspension on her regarding her giving someone her name badge to swipe in while she drove around in the parking garage. The above is also a behavioral issue. Can you advise what my next steps should be?

Jim and Tom,
I was able to touch base with Patti DiPinto to tell her that she would need to meet with HR regarding "a behavior issue with one of the surgeons and a colleague" as directed by Jim. Scott Harper had already left and will touch base with him next week.

*Renee Dodge, R.N., MSN, C.NOR*
Director of Cardiac Surgery
Mercy General Hospital
Telephone number: 453-4868
Pager: 523-0402
Fax: 453-4469

3/5/2010



PLAINTIFF'S EXHIBIT

CASE NO. 2:09-CV-02972

EXHIBIT NO. 157

000048

Exhibit 261                                                          TAB M

## Employee Written Warning in Lieu of Termination Notice

| | | | |
|---|---|---|---|
| Name: | Ani Chopourian | Date: | July 15, 2008 |
| Department: | CVOR | Job Title: | Physician Assistant |

RECEIVED
JUL 3 1 2008
MGH HUMAN RESOURCES

Re: Inappropriate Workplace Behavior/Unsatisfactory Performance

On July 11, 2008, I met with you and conducted an investigative meeting regarding your attendance. The purpose of the meeting was to discuss the incident described below, as well as provide you an opportunity to offer information for consideration and assist you in meeting the standards of your job.

During the meeting, we discussed two incidents. The first occurred on June 30. You were on call after your regular shift that day. About an hour after leaving your regular shift, you were called back for a procedure on a decompensating patient being transferred from the Cath Lab. Initially you called your clinical coordinator and attempted to get her to take the call. After being told there would be no switch, you reported to work and clocked in. You made the decision to lie down in the break room, and later you were standing outside the OR while the rest of the team prepared the room for emergency surgery. During the meeting, you stated that you told the nursing assistant, "Wake me up when the patient gets to OR." You further acknowledged standing outside the OR while the room was being prepped. You said that there was nothing for a PA to do during that time.

The second incident occurred on July 8. You were scheduled for call at Mercy San Juan. There was no procedure scheduled at MSJ. Your requirement was to check the Mercy General. There was an expectation of you that day. You did not report to MGH, which was the expectation of you that day. At 8:17, the team in the OR where you were assigned requested that we find you. I called you at home. When I asked what was going on, you responded "F—" and hung up the phone. Once you arrived at work, you went to your assigned room. After removing the vein from the patient's leg, you did not follow the standard process to provide an opportunity for the MA to take a break and left the room. During the meeting, you acknowledged that you did not listen to the call schedule that day. You also stated that it is the MA's call to ask for break relief.

Your actions and behavior are in violation of Human Resources Policy 268, "Rules of Conduct". Therefore this notice is to document an Employee Written Warning Notice in lieu of Termination being issued to you. Your inability to interact effectively with colleagues is negatively affecting the moral and harmony of the department. It is the expectation of MGH that your behavior and work performance show immediate and sustained improvement. Any further occurrences of this nature may result in further corrective action up to and including termination.

In addition to the above charges, the following past corrective action(s) as noted below, have been considered in this decision.

| | | |
|---|---|---|
| February 13, 2008 | Written Warning in Lieu of Suspension | Behavior |

Should you feel this corrective action is unjustified, you have seven (7) days to appeal it as described in Personnel Policy 254: Dispute Resolution Procedure.

*My signature is merely an acknowledgement of receiving this letter (content/issue) & NOT an acceptance of its content.*

| | |
|---|---|
| Renée Dodge | Date |
| Director, CVOR | |

| | |
|---|---|
| Ani Chopourian | Date   09/23/09 |
| (signature denotes receipt only) | |

cc: Employee Personnel File

Exhibit No. 35
Date: 11-28-11
Witness: Andersen
Tom Laigo, CSR 449

PLAINTIFF'S EXHIBIT
CASE NO. 2:09-cv-MGH
EXHIBIT NO. 61

000005



Exhibit 261                                        TAB M

Page 1 of 1

**Andersen, Jim - MGH**

From:    Dodge, Renee - MGH
Sent:    Friday, July 18, 2008 4:03 PM
To:      Andersen, Jim - MGH; Book, Bonnie - MGH; Frazier, Doris - MGH; Kirch, Cynthia - MGH
Subject: Anil

7-17-08 1340
Called Anil into office. Door shut and no interruptions occurred. Provided her with the Written Warning on Lieu of
Termination Notice. She refused to sign it or read it. Stated "I want to read it at home and I will provide to you a
written response and I will not have it back to you for about one week". Requested Jim Andersen's email address
again to send him as she states her "journal".
Some comments made to me during the 15 minute meeting:
  • "How can you go home at night and feel good about how this department treats people"
  • "I talked to Anil again myself and he told you I wasn't sleeping. I know what you asked him because I
    asked him again myself"
      ○ Intimidating a nursing aide??
      ○ Was she not to discuss this with anyone?
      ○ I relayed to her that she couldn't have known what my conversation was with any one in the room
        because she was not there for my conversations
      ○ She in fact did disclose in the investigational meeting that she had her head down on the table
        resting and now she is stating that she wasn't

  • "Jean is purposefully setting my up." Staff told me she was." Anil stated "she is purposefully being nice to me
    to set me up". Advised her that she was getting off track and the events in this write up had nothing to do
    with Jean.
  • Stated that "going to HR for this event was not right" and I should have just asked her about what
    happened before going to HR". Relayed to her that HR was guiding me through the process and that it
    was necessary for them to be involved.

I have the original notice and Jean and I have signed it and will bring it to you next week.

*Renee Dodge, RN, MSN, CNOR*
Director of Cardiac Surgery
Mercy General Hospital
Telephone number: 453-4666
Pager: 523-0402
Fax: 453-4469





000133

PLAINTIFF'S
EXHIBIT
CASE
NO. 2:09-CV-02972
EXHIBIT
NO. 162

3/5/2010

Exhibit 261                                                    TAB M

Page 1 of 1

**Andersen, Jim - MGH**

From: Dodge, Renee - MGH
Sent: Tuesday, July 22, 2008 8:30 AM
To: Book, Bonnie - MGH; Andersen, Jim - MGH; McCue, Tom - MGH; Frazier, Doile - MGH
Subject: Ani

Dr. Siechman approached me this morning. Yesterday at approximately 1130 Ani left her room when the vein was out and went to lunch. The proximal grafts were done and Dr. Mark Taylor (assistant MD) summoned Ani back into the room. As was noted to the PA's; it is not the PA's call when to relieve in the room, the assisting surgeons and/or surgeons make the call when they want relieved).

The word back into the room was that Ani stated "I am only 10 minutes into my lunch and I get 30 minutes". This was relayed to Jean and she approached Ani. Ani stated "It is the law that I get my lunch and I want my lunch at noon". Jean proceeded to inform Ani that "her meal waiver pays her for lunch, we are not obligated to give her a lunch by a certain time nor by noon, and that her lunch needs to be taken to meet the needs of the department". Ani proceeded to say that since we were following the rules, she was going to hold us to them" (really not sure what she meant by this). She did go to the room after Jean spoke with her.

Mark Taylor left the room and the room was unrepresented by an assistant or PA until Ani got into the room.

Dr. Siechman approached me this morning at approximately 0730 to relay the above to me and I told him that we were in the process of dealing with this.

Now what????????
Renee

3/3/2010



000046

Exhibit 261                                                TAB M

Page 1 of 1

**Andersen, Jim - MGH**

From: Dodge, Renee - MGH
Sent: Thursday, July 24, 2008 4:18 PM
To: Frazier, Doris - MGH; Book, Bonnie - MGH; Andersen, Jim - MGH; Kirch, Cynthia - MGH; McCue, Tom - MGH
Subject: An! update

Update 7-24-08 at approximately 1230

Marife Yu in charge today. Six cases originally scheduled and Dr. Dein cancelled one. So Marife rearranged the PA assignments and appropriately placed them in afternoon cases as their call coverage indicated, the assignments were changed to accommodate An!'s request once again. The only times she is placed in there is when the call schedule indicates that that is the room she should be in. Two PA's have approached me today and "are getting tired of this".

An! approached me in the hall way and stated "what are you doing about me going into Dr. Kaplon's room. You promised me that you would not put me in there". And immediately corrected and stated that I never stated that I would promise but what was said to her in HR was that we would continue to make attempts to accommodate her request for the time being but that there would me days that it would not be feasible.

She proceeded to again go off onto her tangents in regards to the environment of the department, other staff past problems with Kaplon, keeping her log updated, and how her last written in lieu of termination "there were a bunch of lies written in it". I tried to direct her to only discuss her concerns.

I proceeded to point out to her that she consistently diverts down another path and not focusing on one specific issue. She again brings up past "dirty laundry" amongst other staff and it is very difficult to keep her on track. I told her that I felt that she was attempting to intimate me and I was not comfortable having any conversations with her without HR. She proceeded to tell me that I was not "acting humane" to her (which perplexes me) and I proceeded to tell her that I resent her telling me that.

She also stated to me that she is entitled to her lunch as the law states and her "consultant" has told her that. Explained the meal waiver, etc. and she disagrees with it. This afternoon she made copies of her past time cards and faxed them to 733-6658 which after research is a Seward Chang MD (internal medicine). I alerted Jodi Laurson of this in order that she be prepared.

I ended the conversation by telling that there needs to be an end point to this. She stated "no you need to deal with Kaplon". I informed her that the moment she came to me over a month ago with this concern, we met with HR. Her assignment at that time was to collect "her log entries" and submit to Jim Anderson by July 14. This has not happened yet. She needs to provide the requested information.

She was given her written last Friday the 18th and refused to sign that as well and stated that she needed a week to submit a letter regarding this. She to date has not done this as well.

Stay tuned, she will end up going into his room this evening so I am sure I will have an update tomorrow for all to read.

Renee Dodge RN, MSN, CNOR
Director of Cardiac Surgery MGH
Telephone 453-4988
Pager 523-0402

3/5/2010





PLAINTIFF'S EXHIBIT

CASE NO. 2:09-CV-02972

EXHIBIT NO. 61

EXHIBIT 10
WIT: Dodge
DATE 6/16/11
PATRICIA CHAPIN

000049

Exhibit 261                                                                    TAB M

Page 1 of 2

Andersen, Jim - MGH

From:     Andersen, Jim - MGH
Sent:     Tuesday, August 12, 2008 7:31 AM
To:       Dodge, Renee - MGH
Cc:       Book, Bonnie - MGH
Subject:  RE: documentation log for Ani

How is the atmosphere now that she is gone?

From: Dodge, Renee - MGH
Sent: Tuesday, August 05, 2008 12:22 PM
To: Book, Bonnie - MGH; Andersen, Jim - MGH; McCue, Tom - MGH; Kirch, Cynthia - MGH; Frazier, Doris - MGH
Subject: documentation log for Ani

8-01-08
Approached Ani to give her positive feedback. Told her that Dr. Keplon complimented her on her performance on 7-25-08 and when relayed to her she forcefully said "what is that suppose to mean?" I told her that I was trying to give her some positive feedback since she had not received any lately. She stated pointing her finger at me "this is just a ploy". I stated "Ani, every time I have a conversation with you I have to request you to refrain from pointing your finger at me". I also continued to tell her that the nurses that evening as well complimented her helpfulness and teamwork. I then proceeded to inform her that effective Monday August 4 we would no longer be making scheduling accommodations for her. I told her that we would be arranging a meeting next week for Keplon, herself, myself and HR and she stated "no way, I told you that I am never going over there without representation and I need at least one month to one and a half months to get my representation". She had anger in her voice and a sense of panic. I told her that this conversation was ending due to her escalation and she clocked out and left work.

8-03-08
Review Scott Harper's account.

8-04-08
1240 I approached Ani at scrub sink and stated that at 1315 we would be having an investigatory meeting in HR at 1315. She stated again, " I have told you that I will never go over to HR without a representative". I informed her that the investigatory meeting would occur at 1315 with or without her, Jean Scralton and myself had investigatory meeting with Bonnie as planned.
Approached Ani at approximately 1400 and informed her that the investigatory meeting took place, corrective action with potential termination is being determined and if she had anything that she wanted to add to HR she had until the end of the working day to submit to Bonnie. She stated "I can't possibly get a letter together and get it Federally Expressed by today". Told her that she if she wanted to tell HR her interpretation of Sunday she needed to do it by the end of the day. She stated "do whatever you guys need to do".
She changed her clothes and came back into her office and posed the question "do I need to come in tomorrow or am I terminated? I was having another conversation with Charee Hanes (previous CVOR employee who now works in main OR) and at that time very sternly said "Jean, I've asked you a question" and Jean responded Ani, "I'm sorry I did not know you were talking to me". Jean proceeded to tell her "yes you need to come to work tomorrow because no corrective action had been determined".
She walked out of the department with Charee Hanes and the two of them went into the stairwell for approximately 10 minutes. I went into main OR and seeked out Charee. My conversation with her was as follows: Charee, I am sorry that you had to witness that and I am aware that you had a conversation with Ani in the stairwell and I am asking you to keep this confidential". She stated that she would.

8-5-08
She approached Jean this morning and questioned "green" cutline on her schedule and Jean explained it to mean that "you come in early". Evidently Patty has been doing this to the schedule for quite a long time, Ani

3/5/2010

000044

PLAINTIFF'S EXHIBIT

CASE
NO.

EXHIBIT
NO.

Exhibit 261

TAB M

Page 2 of 2

seems to not remember that. Ani had to go to Safari today and Jean stated that she had overlooked that so Ani's interpretation is that Jean did this on purpose. Ani attended Safari and reported to work afterwards.

Renee Dodge RN, MSN, CNOR
Director of Cardiac Surgery MGH
Telephone 453-4988
Pager 523-0402

3/5/2010

000045

Exhibit 261

TAB M

# MERCY HEALTHCARE SACRAMENTO

## CRITERIA-BASED PERFORMANCE APPRAISAL



| Employee: | Rater: |
|---|---|
| Ani Chopourian | Renee Dodge/Jean Scratton |
| Title: | Title: |
| CV Surgery Physician Assistant | Director/Clinical Coordinator |
| Department: | Evaluation Date: |
| Cardiac Surgery | 8/08 |
| Facility: | Appraisal Period: |
| Mercy General Hospital | 08/07-08/08 |

### Type of Evaluation

☐ Orientation Period    X Annual    ☐ Special

## STANDARDS

Ratings for each standard will include the extent to which the employee behaves in a manner which exemplifies and promotes the Mission and Philosophy of Mercy Healthcare Sacramento.

Performance Rating Definitions:

Exceeds Expectations:    Excels beyond position expectations and contributes far beyond the scope of normal duties.

Meets Expectations:    Consistently meets and occasionally exceeds position expectations.

Does Not Meet Expectations:    Does not meet position expectations, significant improvement required.

A rating above or below a 2.0 in any performance expectations must be substantiated in the comments section.   An employee receiving an overall rating of Does Not Meet Expectations will not be eligible for an increase.



PLAINTIFF'S EXHIBIT
CASE NO. 2:M-CV-0?????
EXHIBIT NO. 156
000007

Exhibit 261

TAB M

## PERFORMANCE STANDARD I

**Relates with others in a positive manner so that maximum job results are produced.**

Ratings for each principal accountability include extent to which the employee behaves in a manner
which exemplifies and promotes the Mission and Philosophy of the Sisters of Mercy of Auburn.

Scoring:   1 = Does Not Meet Expectation   2 = Meets Expectation   3 = Exceeds Expectation

Weight Factor __.20_____

| PERFORMANCE EXPECTATIONS | SCORE |
|---|---|
| Demonstrates effective oral and written communication skills by practicing active listening and responding appropriately to questions or written communications. | 1 |
| Helps to maintain morale of all employees by always greeting them in a courteous and respectful manner, responding to them with empathy and positive interpersonal skills. | 2 |
| Treats every person contacted at Mercy with respect, compassion and hospitality, regardless of race, ethnicity, or sociological background. | 2 |
| Promotes positive morale of all employees, visitors and vendors by treating each person with respect and compassion. | 2 |
| Consistently promotes the provision of quality project planning by effectively communicating with other employees. | 2 |
| TOTAL POINTS | 9 |
| NUMBER OF APPLICABLE EXPECTATIONS | 5 |
| AVERAGE RATING  (DIVIDE TOTAL POINTS BY NUMBER OF EXPECTATIONS) | 1.8 |

**COMMENTS:** Ani, you continue to be an avid patient advocate always putting your patient first and at times strongly question the decisions made on plan of care. You continue to react defensively when confronted or questioned by the surgeons and management, which then escalates and creates an uncomfortable working environment for all. When having discussions with management, you often have to be advised to lower your voice, refrain from finger pointing, attempting to intimidate, and redirecting back to the issue being discussed. Your area of improvement continues to be in developing your ability to effectively turn defensive situations into professional relationships and handle situations without raising antagonism or hostility. Effective communication is an integral part to establishing positive working relationships. Last year it was recommended that "you consider communication in the workplace class to assist you in your goal" and this was not completed. It is a requirement for you to attend at least one communication last by October 31, 2008. You need to improve in this area to be truly effective in the unit.

000008

Exhibit 261

TAB M

## PERFORMANCE STANDARD II

**Assists the facility in achieving a safe, efficient, and effective working environment.**

Ratings for each principal accountability include extent to which the employee behaves in a manner which exemplifies and promotes the Mission and Philosophy of the Sisters of Mercy of Auburn.

Scoring:   1 = Does Not Meet Expectation   2 = Meets Expectation   3 = Exceeds Expectation

Weight Factor ___.15_____

| PERFORMANCE EXPECATIONS | SCORE |
|---|---|
| Is aware of and complies with facility and departmental safety and security policies, procedures and practices. | 2 |
| Is aware of and complies with facility and departmental quality assurance practices and protocols. | 2 |
| Is aware of and complies with Mercy Healthcare Sacramento Personnel Policies and Procedures. | 2 |
| Is aware of and complies with the Mercy Healthcare Sacramento Administrative procedures. | 1 |
| Actively participates in Safety Faires on an annual basis. | 2 |
| Responds to fire/disaster drills according to established policy. | 2 |
| | |
| | |
| TOTAL POINTS | 11 |
| NUMBER OF APPLICABLE EXPECTATIONS | 6 |
| AVERAGE RATING  (DIVIDE TOTAL POINTS BY NUMBER OF EXPECTATIONS) | 1.83 |

COMMENTS: Ani, you meet the organizational requirements for safety and legal/regulatory standards but as stated in last year's evaluation "in order to exceed in this standard, you will need to provide education/in-service or participate in a safety/legal/ or QI process in the upcoming year" and this was not completed. Let us know if you need any help with this.

000009

Exhibit 261                                                              TAB M

## PERFORMANCE STANDARD III

### Efficiently performs duties expected of the position.

Ratings for each principal accountability include extent to which the employee behaves in a manner which exemplifies and promotes the Mission and Philosophy of the Sisters of Mercy of Auburn.

Scoring:  1 = Does Not Meet Expectation  2 = Meets Expectation  3 = Exceeds Expectation

Weight Factor __.35____

| % of Time | PERFORMANCE EXPECTATIONS | SCORE |
|---|---|---|
| 60% | Performs the following technical skills competently:<br>a. Demonstrates knowledge of sterile technique in surgical setting<br>b. First assist in chest<br>b. Foley catheter placement<br>o. Venipunctures<br>d. Arterial punctures<br>e. Arterial line placement<br>f. Harvesting veins from leg<br>g. Harvesting saphenous vein by endoscopic approach<br>h. Harvesting radial artery | 2 |
| 20% | Facilitates communication with CV surgeons and cardiologists regarding significant change in patient condition. Performs daily rounds as requested and documents assessments, evaluations, recommendations, consultations and other pertinent information in the patient's medical records.<br><br>Initiate laboratory and radiology orders, and transmit orders for medication at the direction of the sponsoring physician.<br><br>Removal of chest tubes, pacing wires, catheters and suture/staples.<br><br>Perform wound dressings, debridement, suture and care of superficial wounds under direction of supervising physician. | 2 |
| 5% | Collaborates with CVOR staff, educator, manager in the OR setting. Collaborates with the nursing staff, educators; CV care coordinator, case managers in caring for the cardiovascular patients. | 2 |
| 5% | Assists with CVOR procedures with no physician complaints | 1 |
| 5% | Develops policies/procedures for new equipment and/or procedures within 2-6 weeks of obtaining equipment | 2 |
| 5% | Oversees preventative and corrective maintenance on instruments and other equipment used as assigned—documented in department records | N/A |
| | TOTAL POINTS | 9 |
| | NUMBER OF APPLICABLE EXPECTATIONS | 5 |
| | AVERAGE RATING (DIVIDE TOTAL POINTS BY NUMBER OF EXPECTATIONS) | 1.8 |

COMMENTS: Ani, Physician evaluations were consistent, giving you a meets expectations and one surgeon gave you 3 exceeds expectation (clinical knowledge, clinical judgment, and technical proficiency (as well as another surgeon) but made the following comments "note trouble with her coworkers at times of scheduling and OR availability at times and suggested that you attempt to integrate your schedule

000010

Exhibit 261                                                                    TAB M

better with coworkers". One surgeon stated "somewhat lacks enthusiasm at times but there to help me". We have had discussions with you Ahl to wear your loops during vein harvesting and it was disclosed to you what surgeons this is imperative to. It is again an expectation that you will wear loops for harvesting and repairs especially for the surgeons discussed with you. This will be addressed formally if this is not consistently carried out effective immediately. Good job learning endoscopic and radial artery harvesting. Strive for totally endoscopic. It is an expectation that you learn to clock in on "C2" correctly by September 30, 2008. It is your responsibility to identify who you want to teach you this, take whatever notes you need to take to accurately clock in whether you are at MSJ or MGH. Comments such as "you need to laminate this form and get it to MSJ, or I want you to teach me when no one is around" will not be accepted from this point on.

000011

Exhibit 261                                                    TAB M

## PERFORMANCE STANDARD IV

Assumes responsibility for continuing education and professional development and contributes to the professional growth of others.

Ratings for each principal accountability will include extent to which the employee behaves in a manner which exemplifies and promotes the Mission and Philosophy of the Sisters of Mercy of Auburn.

Scoring:  1 = Does Not Meet Expectation   2 = Meets Expectation   3 = Exceeds Expectation

Weight Factor ___.10_____

| PERFORMANCE EXPECTATIONS | SCORE |
|---|---|
| Keeps informed of current departmental practices or changes by regularly attending staff meetings. | 1 |
| Participates in continuing education related to profession. | 3 |
| Actively participates in committees, sharing status of activities with co-workers/managers on a monthly basis. | 1 |
| Ensures unscheduled absences/Tardiness do not exceed department/facility guidelines. | 2 |
| Observes the department/facility dress and grooming standards and consistently wears name badge. | 2 |
| Provides proper notification of absence or tardiness within established guidelines. | 1 |
| | |
| TOTAL POINTS | 10 |
| NUMBER OF EXPECTATIONS | 6 |
| AVERAGE RATING (DIVIDE TOTAL POINTS BY NUMBER OF EXPECTATIONS) | 1.66 |

COMMENTS: Ani, You have adhered to the attendance policy by calling in only once this past year. Good work. Thank you for refraining from wearing your dangling earrings Ani in order to be in AORN compliance and hospital compliant. You received a written warning in lieu of suspension in regards to having someone else clock you in. A written in lieu of termination was given to you on 7-16-08 in regards to inappropriate workplace behavior/unsatisfactory performance. To maintain a "2" in the "keeping informed of current departmental practices or changes by regularly attending staff meetings" you need to help orchestrate and attend at least 4 PA inservices over the next year to discuss specialty updates.

000012

Exhibit 261

TAB M

## PERFORMANCE STANDARD V

**Solves actual or potential problems by demonstrating Initiative, Innovativeness and good judgment.**

Ratings for each principal accountability include extent to which the employee behaves in a manner which exemplifies and promotes the Mission and Philosophy of the Sisters of Mercy of Auburn.

Scoring:   1 = Does Not Meet Expectation   2 = Meets Expectation   3 = Exceeds Expectation

Weight Factor ___.20_____

| PERFORMANCE EXPECTATIONS | SCORE |
|---|---|
| Maximizes use of all facility resources, including supplies, own time, and time of others. | 1 |
| Performs duties in an independent manner with little or no need for direct supervision. | 1 |
| Recognizes and performs duties which need to be performed although not directly assigned and regularly assists others. | 1 |
| Seeks methods to improve current facility practices by identifying problems and proposing viable solutions to supervisor. | 2 |
| | |
| TOTAL POINTS | 5 |
| NUMBER OF EXPECATIONS | 4 |
| AVERAGE RATING  (DIVIDE TOTAL POINTS BY NUMBER OF EXPECTATIONS) | 1.25 |

COMMENTS: Ani, very nice improvement over the past month regarding your responsibilities in the room ie. Asking if you can take a break, being cognizant of your break times. It is an expectation from this point on that this is "your norm". You have stated that the PA's work with little direction but it is often noticed that you require more direction than your colleagues when it comes to relieving each other for lunches and/or to go home. You frequently have to be summoned back into the room instead of taking the initiative to relieve the assisting surgeon.

000013

Exhibit 261                                                                 TAB M

| Department Expectations: (Employees must receive a yes in each expectation to receive an evaluation of "meets expectations" or above) | | |
|---|---|---|
| • Demonstrates Adherence to the Standards of Conduct | | YES X NO ☐ |
| • Completes and turns in Standards of Conduct acknowledgment card. | | YES X NO ☐ |
| • Fulfills compliance educational requirements as directed by the Compliance Department or department management. | | YES X NO ☐ |
| • Completes divisional and department new hire orientation | | YES X NO ☐ |
| • Completes PPD screening process within the required time frame(s) | | YES X NO ☐ |
| • Participates in and completes ongoing staff competency assessment. | | YES X NO ☐ |
| • Participates and completes the service excellence program as scheduled. | | YES X NO ☐ |

## SUMMARY OF PERFORMANCE

| RATING CALCULATION | | | |
|---|---|---|---|
| STANDARDS | AVG. RATING | WEIGHT FACTOR | SCORE |
| STANDARD I | 1.8 | x .20 | = 0.36 |
| STANDARD II | 1.83 | x .15 | = 0.27 |
| STANDARD III | 2 | x .35 | = 0.7 |
| STANDARD IV | 1.66 | x .10 | = .16 |
| STANDARD V | 1.25 | x .20 | = .25 |
| TOTAL | | 1.00 | 1.74 |

| OVERALL LEVEL OF PERFORMANCE | | |
|---|---|---|
| TOTAL SCORE | PERFORMANCE | |
| 2.50 – 3.00 | EXCEEDS EXPECTATIONS | |
| 1.75 – 2.49 | MEETS EXPECTATIONS | |
| 1.00 – 1.74 | DOES NOT MEET EXPECTATIONS | X |

000014

Exhibit 261                                        TAB M

## GOALS AND ACCOMPLISHMENTS

Training Needs: Lower Leg Endoscopic Harvesting

_____

_____

_____

_____

Goals: 1. Strive to shorten endoscopic harvest times, 2. Strive for totally endoscopic harvesting of the saphaneous vein, 3) Enroll and complete a communication course within the first quarter (by December 2008) and implement newly learned communication strategies, 4) Orchestrate and attend at least 4 PA inservices over the next year to discuss process improvements within your specialty.

_____

_____

_____

_____

Supervisor Comments:

*As was translated from MGH prior to evaluation using gown*

_____

_____

_____

_____

Employee Comments:

_____

_____

_____

_____

Signatures:

| Employee | Date |
|---|---|
| *(signature)* | 8-15-08 |

| Evaluator | Date |
|---|---|
| *(signature)* | 8/21/08 |

Manager/Administrative Representative                          Date

*(signature)*

000015

Exhibit 261                                                              TAB M

RECEIVED

FEB 1 5 2008

# Employee Written Warning in lieu of Suspension

Name: Ani Chopourian
Department: CVOR

Date:       February 13, 2008
Job Title:  Physician Assistant

**Re:  Inappropriate Workplace Behavior**

On September 6, 2007, I met with you and conducted an investigative meeting regarding your behavior.  The purpose was to assist you in meeting the standards of your job.

During the meeting, we discussed you requesting that another employee clock you in through the Ceridian time card system, you acknowledged that your behavior was against policy and that you made a "big mistake".

This notice is to document an Employee Written Warning in lieu of Suspension Notice issued to you as you remain in violation of Human Resources Policy # 268, entitled, *"Rules of Conduct".*  Although you will not serve time off for this suspension, this suspension carries the same weight as if you had served time off without pay.

It is the expectation of MGH that your behavior show immediate and sustained improvement. Any further occurrences of this nature may result in further corrective action up to and including termination.

Should you feel this corrective action is unjustified, you have seven (7) days to appeal it as described in Personnel Policy 254: Dispute Resolution Procedure.


Jean Scrafton
Clinical Coordinator, Cardiac OR

2/13/08
Date


Ani Chopourian
(signature denotes receipt only)

02/13/08
Date


cc: *Personnel File*

000160
A-000160
TAB M

I have had an opportunity to review the provisions of the above referenced documents, which may pertain to my status or practice;

E.  I acknowledge and agree that:

(1)  I authorize Mercy and its representatives to seek information pertaining to my professional qualifications from persons or entities who may have information bearing on my professional competence, character, judgment and ethical qualifications including, but not limited to, hospitals, medical staffs, medical groups, managed care organizations, professional associations, training programs, professional liability insurance companies, and licensing or certification authorities in jurisdictions in which I have trained, resided, or practiced, for the present and continuing evaluation of my professional training, experience, character, conduct, and judgment;

(2)  To the fullest extent provided by California and federal law, I hereby release, extend immunity to and agree that there shall be no monetary liability on the part of, and no cause of action for damages shall arise against, Mercy or any representative of Mercy for its or their acts performed in connection with seeking information regarding, or evaluating my application for appointment or reappointment to AHP status, my request for Clinical Privileges, or my credentials and qualifications;

(3)  To the fullest extent permitted by California and federal law, I hereby release from any liability and extend immunity to all individuals and organizations who provide information, including otherwise privileged or confidential information, to Mercy or Mercy representatives concerning my professional competence, ethics, character, judgment, physical and mental health, emotional stability, ability to work collaboratively with others and other qualifications for appointment, or continued appointment, to AHP status and to exercise Clinical Privileges.

(4)  I authorize Mercy and Mercy representatives to release, and hereby extend to them immunity to the fullest extent permitted by law as a result of releasing, information regarding my application to, performance in, or exercise of Clinical Privileges associated with, AHP status, to any other hospital, medical group, managed care organization, professional society, training program, professional association, professional liability insurance company, or licensing authority.

F.  If granted AHP status and/or Clinical Privileges, to maintain an ethical practice which will include:

(1)  Refraining from unlawful fee splitting or other inducements related to patient referral;

(2)  Refraining from any activity, which may result in exclusion from, or sanction by, any federal health care programs;

(3)  Providing for continuous care of my patients;

(4)  Seeking consultation or supervision as required by my license, certificate, or Clinical Privileges, or as otherwise appropriate in the best interests of patient care;

MAR 3 - 2010

CENTRAL VERIFICATION UNIT

Initials

P-00014
Allied Health Professional
Agreements and Consents
Page 2 of 3 11/29/06

005041

TAB M

RECEIVED

MAR 3 – 2010

CENTRAL VERIFICATION UNIT

# Time Gap Explanations for
# Ani Chopourian, PA-C

1.) **9/99 – 05/00 I was on the East coast studying for boards.  I was also preparing to return to the west coast. Once I passed the boards I started my search for a physician assistant position.**
2.) **06/06- 08/06 Took time off while waiting for new job to start.**
3.) **09/08- 08/09 I took time off for personal reasons**

**Thank you,**


**Ani Chopourian, PA-C**

Q-000103

005143

TAB M

Case 2:09-cv-02972-KJM-KJN   Document 334-8   Filed 05/29/12   Page 4 of 12

**APPLICATION FOR APPOINTMENT TO THE**
**ALLIED HEALTH PROFESSIONAL SERVICE AUTHORIZATION**

RECEIVED

MAR 3 – 2010

CENTRAL VERIFICATION UNIT

Applicant's Name: _Ani Chapousian, PA-C_
Please Type or Print

Medical Staff Office use only: ID# _6481_

Date of receipt of Application*

*It is the applicant's responsibility to produce adequate and complete information in a timely fashion. An application which remains incomplete after 120 days will be deemed to have withdrawn.

The undersigned hereby applies for Allied Health Professional Status and/or Clinical Privileges (check one or more Catholic Healthcare West facilities desired). Please indicate the Mercy facility where you plan to **primarily practice.** A non-refundable application fee of $200 dollars is required for each facility.

Please indicate the Catholic Healthcare West facility of _primary_ practice.

_Mercy San Juan Medical Center_

Scope of Practice: _GYN Oncology_

Anticipated start date: _____

I hereby make application to:

☐ Mercy Hospital of Folsom
1650 Creekside Drive
Folsom, CA 95630
(916) 983-7461

☒ Mercy San Juan Medical Center
6501 Coyle Avenue
Carmichael, CA 95608
(916) 537-5210

☐ Methodist Hospital of Sacramento
7500 Hospital Drive
Sacramento, CA 95823
(916) 423-6190

☒ Mercy General Hospital
4001 J Street
Sacramento, CA 95819
(916) 453-4828

☐ Woodland Healthcare
1325 Cottonwood Street
Woodland, CA 95695
(530) 669-5310

☐ Mercy Medical Group
(A service of CHW Medical Foundation)
3000 Q Street
Sacramento, CA 95816
(916) 733-3333

Please return your original completed application packet and application fee to: (Fax copies will not be accepted)

Central Verification Unit
4001 J Street
Sacramento, CA 95819
(916) 736-8090

Q-000117

005157

TAB M

## ATTESTATION QUESTIONS

**Please answer the following questions "yes" or "no." If your answer to questions A through N is "yes" or if your answer to O is "no," please provide full details on separate sheet.**

| | |
|---|---|
| A. Has your license to practice medicine in any jurisdiction, your Drug Enforcement Administration (DEA) registration or any applicable narcotic registration in any jurisdiction ever been denied, limited, restricted, suspended, revoked, not renewed, or subject to probationary conditions, or have you voluntarily or involuntarily relinquished any such license or registration or voluntarily or involuntarily accepted any such actions or conditions, or have you been fined or received a letter of reprimand or is such action pending? | Yes   No |
| B. Have you ever been charged, suspended, fined, disciplined, or otherwise sanctioned, subjected to probationary conditions, restricted or excluded, or have you voluntarily or involuntarily relinquished eligibility to provide services, accepted conditions on your eligibility to provide services, for reasons relating to possible incompetence or improper professional conduct, or breach of contract or program conditions, by Medicare, Medicaid, or any public program, or is any such action pending? | Yes   No |
| C. Have your clinical privileges, membership, contractual participation or employment by any medical organization (e.g., hospital medical staff, medical group, independent practice association (IPA), health plan, health maintenance organization (HMO), preferred provider organization (PPO), private payer (including those that contract with public programs), medical society, professional association, medical school faculty position or other health delivery entity or system), every been denied, suspended, restricted, reduced, subject to probationary conditions, revoked or not renewed for possible incompetence, improper professional conduct or breach of contract, or is any such action pending? | Yes   No |
| D. Have you ever (1) voluntarily or involuntarily withdrawn a request for membership or clinical privileges, (ii) voluntarily or involuntarily relinquished membership and/or clinical privileges, (iii) allowed such membership or clinical privileges to expire, or (iv) resigned from any medical organization (e.g., hospital medical staff, medical group, independent practice association (IPA), health plan, health maintenance organization (HMO) preferred provider organization (PPO), medical society, professional association, medical school faculty position or other health delivery entity or system) while under investigation for possible incompetence or improper professional conduct, or breach of conduct, or in return for such an investigation not being conducted or is any such action pending? | Yes   No |
| E. Have you ever (1) terminated contractual participation or employment with any medical organization (e.g., hospital medical staff, medical group, independent practice association (IPA), health plan, health maintenance organization (HMO), preferred provider organization (PPO), medical society, professional association, medical school faculty position or other health delivery entity or system), or (ii) allowed such contract or employment to expire, while under investigation for possible incompetence or improper professional conduct, or in return for such an investigation not being conducted, or is any such action pending? | Yes   No |
| F. Have you ever received a disciplinary action in the form of a written letter of reprimand, admonition, warning or censure regarding either your clinical performance as a practitioner or your professional behavior or conduct towards patients, families, staff, colleagues or other participants in the health care treatment environment? | Yes   No |
| G. Have you every surrendered, voluntarily withdrawn, or been requested or compelled to relinquish your status as a student in good standing in any internship, residency, fellowship, preceptorship, or other clinical education Program? | Yes   No |
| H. Has your membership or fellowship in any local, county, state, regional, national, or international professional organization ever been revoked, denied, reduced, limited, subjected to probationary conditions, or not renewed, or is any such action pending? | Yes   No |
| I. Have you been denied certification/recertification by a specialty board, or has your eligibility, certification or recertification status changed (other than changing from eligible to certified)? | Yes   No |
| J. Have you ever been arrested, charged or convicted of any felony or misdemeanor, regardless of how long ago? Including but not limited to substance related charges, DUI, Wet Reckless, or other charges related to impairment? If yes, include letter of explanation. | Yes   No |
| K. Do you presently use any drugs illegally? | Yes   No |
| L. Have any professional liability (malpractice) claims been made against you, including while in the military, if applicable. Have you been named in any malpractice action, have you reported any malpractice claims to your insurance carrier, or have you received any letters of intent? If yes, #Claims (open, closed, pending) _____ Complete attached Addendum B for each claim. | Yes   No |
| **For Reappointment Applicants:  Within the proceeding two (2) year time frame.** | |
| M. Have any judgments been entered against you, or settlements been agreed to by you within the last seven (7) years, professional liability cases, or are there any filed and served professional liability lawsuits/arbitrations against you pending? | Yes   No |

Q-000125
GSSACC Approved: 1/9/08

Page 8 of 11

MAR 3 - 2010

005165

CENTRAL VERIFICATION UNIT

TAB M


Mercy Healthcare Sacramento
CHW

Mercy San Juan Medical Center
*Medical Staff Services*
6501 Coyle Ave
Carmichael CA 95608
Ph: (916) 537-5210
FAX: (916) 536-3033

May 13, 2010

Ani Chopourian, PA-C
Radiological Associates of Sacramento
1500 Expo Parkway
Sacramento, CA 95815

Dear Ms. Chopourian:

I am in receipt of your application for appointment to the Allied Health Professional staff of Mercy San Juan Medical Center.

I would like to take this opportunity to invite you to the Interdisciplinary Practices Committee meeting for a formal interview with the committee. The meeting is scheduled for Thursday, May 20, 2010 at 12:00 pm in Conference Room 4. You are scheduled for: <u>1:20 pm</u>

I am sorry for the short notice. If you are unable to attend, please note that the next meeting is not scheduled until mid-July.

Please let me know, at your earliest convenience, regarding your intention to attend the interview. I look forward to meeting you on May 20, 2010. Should you have any questions, please feel free to contact me at 916-536-3026.

Sincerely,

*Dana S. McSwain*

Dana McSwain CPCS
Medical Staff Services

Q-000230

TAB M
005270

May 17, 2010

Dear Dana McSwain:

I am writing in response to your request for an explanation regarding "C" on the questionnaire that I filled out. I appreciate the opportunity to respond to your concern.

I initially struggled with how to answer this question. I was told that my termination at Mercy was because I did not show up for a day in which the Hospital said I was on call for floor coverage. However, the schedule I was given on the Friday before the weekend did not indicate floor coverage. I did check the PM call recording the night before per protocol as I was scheduled to be on call on that Sunday. The recording did not indicate floor coverage. The floor coverage was added after I left Friday and I was never informed.

So although I was told that this is why I was terminated, I do not believe that this was the reason that I was terminated. I do not believe I was terminated for unprofessional conduct or any issue about my competence as specified by the question in "C". All of my evaluations while at Mercy were satisfactory. I believe that I was terminated in response to concerns I had raised several times. As you know, this termination and the reasons behind it are the subject of a lawsuit.

When I looked at the question, I knew that the "expressed reason" for my termination would prompt me to answer yes to this question. However, I do not believe that this was the actual reason I was terminated, thus answering no seemed right as I was not incompetent nor did I engage in unprofessional conduct or breach of contract.

I can understand that it could appear I was being disingenuous by answering no, but given the circumstances in which I was terminated and what followed after termination, and the advice I got, and of course the need to work, I answered no.

1

Q-000234

005274

TAB M

Dr. Allen Morris, the chief of Cardiac surgery, expressed disagreement at the actions of Mercy General Hospital. I know he would attest to my competency, responsibility and my professional conduct.

I have a great working relationship with Dr. Kevin Elliott. His office staff, the OR staff, the floor nurses enjoy working with me and I with them. Kevin has commented repeatedly on my excellent skills and thanked me for the caring touch I bring to his patients and practice. I have never been insubordinate nor failed to show up for work. We have a good rapport with one another and work comfortably.

Per your request, I will change the answer to a yes with this letter as clarification. If the information above is not sufficient, please contact me and let me know what additional information you need. I am happy to provide it.

Per Victoria's phone inquiry last week neither I nor Dr. Elliott are ACLS certified at present. I would be happy to certify.

Sincerely,

Ani Chopourian

This document you received is two pages total.

Date and time Received  5|17|10  1²⁰ pm

Receiving individual's name printed and title

Dana McSwain

Individual's signature

Dana S McSwain

2

Q-000235

005275

TAB M



## Mercy
A member of CHW

Mercy San Juan Medical Center
*Medical Staff Services*
6501 Coyle Ave
Carmichael CA 95608
Ph: (916) 537-5210
FAX: (916) 536-3033

May 18, 2010

*Confidential Peer Review Document*
*(Evidence Code Section 1157)*

### *Via: E-mail*

Ani Chopourian, PA-C
Radiological Associates of Sacramento
1500 Expo Parkway
Sacramento, CA 95815

Re:     **Request for Supplemental Information**

Dear Ms. Chopourian:

The purpose of this letter is to advise you regarding the status of your application for privileges at Mercy San Juan Medical Center.  Recently, the Committee on Interdisciplinary Practice ("Committee") has been made aware of allegations that, during your employment at Mercy General Hospital, you inappropriately utilized patient health information.

In light of these allegations, the Committee requires additional information to make a sound recommendation with regard to your application for privileges.  Therefore, please provide the Committee with the following:

1.     Any correspondence between you and Mercy General Hospital regarding allegations that you inappropriately utilized Mercy General Hospital patient health information.

2.     Any documentation in your possession concerning allegations that you inappropriately utilized Mercy General Hospital patient health information.

In addition to the above-noted information, please provide the Committee with a written explanation addressing the allegations that you inappropriately utilized Mercy General Hospital patient health information.

Your written explanation, along with copies of the requested correspondence and documentation, must be received by the Medical Staff Services Office <u>no later than 4:00 p.m., on Wednesday June 2, 2010</u>.  In the event that these materials are not received by the Medical Staff Office by Wednesday June 2, 2010, your application will be deemed incomplete and voluntarily withdrawn.

Thank you for your prompt attention to this important matter and for your interest in Mercy San Juan Medical Center.

Sincerely,

*Hunter Greene, MD*

Hunter Greene, MD
Chair, Committee on Interdisciplinary Practice

Q-000236

005276

TAB M

May 19, 2010

Hunter Green, MD
Chair, Committee on Interdisciplinary Practice
Mercy San Juan Medical Center
6501 Coyle Avenue
Carmichael, CA. 95608

RE: Request for Supplemental Information

Dear Dr. Green:

I received your letter yesterday 5/18/2010 from Victoria. I am responding to your inquiry.

During the latter part of my employment at Mercy, I kept a record of which cases I operated on because I felt at risk because my concerns were ignored. I spoke about my concerns repeatedly to the supervisor at the time who is no longer supervising. I wrote incident reports stating my concerns. No one addressed the issues.

I started keeping records because on occasions in one surgeon's room, I was asked to do things that were harmful to the patient. I was trained at Yale University, a medical institution that instilled medical ethics and appropriate medical care delivery. I kept these notes in my locker at work during my employment. I did not remove them from the hospital. I did not discuss them with anyone.

I removed the notes and took them home when I was terminated. I kept the records in a locked cabinet at home. I never disclosed the patient information to anyone but my attorney as part of discovery. Never did I keep the information with malice in mind but rather, I felt vulnerable and felt my license would be at risk.

I understand that it was improper to create a record with patient information. In retrospect, I realize there were better ways to keep an accurate record.

Q-000237

005277

TAB M

In response to paragraphs numbered 1. and 2. in your May 18 letter, I do not have any such correspondence or documentation in my possession.

Currently, working with one surgeon, Dr. Kevin Elliott, my situation is very different. As you already know, he is easy to talk to and communicate with. He is a great patient advocate, an excellent surgeon and I am very comfortable working with him. He is approachable and I can address any concerns and he is always willing to give me his feedback. I respect him greatly. I learn from him and we have a very comfortable working relationship with one another.

I hope my explanation will allay your concerns. I assure you that I will maintain patient confidentiality, and will comply with all hospital rules and protocols. I will carry out my duties in accordance with the highest standards of the medical profession. I respectfully request that the hospital grant me privileges.

Sincerely,


Ani Chopourian

This document you received is two pages total.

Date and time Received _____

Receiving individual's name printed and title


_____

Individual's signature


_____

2

Q-000238

005278   //

TAB M

Case 2:09-cv-02972-KJM-KJN   Document 334-8   Filed 05/29/12   Page 12 of 12

**KAISER PERMANENTE®**

Kaiser Permanente Medical Care Program
Valley Service Area

Monday, February 09, 2009

Ani Chopourian
P.O Box 189446
Sacramento, CA 95818

Dear Ani,

This letter is in regards to your job application with Kaiser Permanente, for the position of Physician Assistant I.

As stated in your offer letter dated December 1, 2008, final confirmation of the job offer is contingent upon successful completion of specific pre-employment requirements.

Because you were unable to meet the requirements for credentialing, you did not satisfy the pre-employment requirements necessary for employment with Kaiser Permanente. Therefore, we are notifying you that your conditional offer of employment has been rescinded.

If you have any questions regarding this matter, you may contact me at

Yours truly,

Clint Dickson

Expert Recruitment Consultant

(510) 381-1828

Recruitment Services
3240 Arden Way
Sacramento, California 95825
(916) 486-5125

08329-43 (REV. 2-00)

001649

W1-00748
TAB M